IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 4:26-CR-00016-FL-RN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>JAMES B. COMEY JR.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

    A.    Mr. Comey Serves For Decades As A Government Official.................... 2

    B.    As A Private Citizen, Mr. Comey Criticizes President Trump's Conduct In Office, While President Trump Responds With Vitriol.......... 4

    C.    President Trump Begins His Second Term And Retaliates Against Mr. Comey ........................................................................................... 7

        1.    Mr. Comey's Instagram post and the President's response .......... 8

        2.    The Government obtains a defective indictment of Mr. Comey in the Eastern District of Virginia ................................. 10

    D.    Following Dismissal Of The Eastern District Of Virginia Indictment, The Government Pursues Another Flawed Indictment Of Mr. Comey....................................................................................... 14

ARGUMENT...................................................................................................... 18

    I.    THE GOVERNMENT HAS VINDICTIVELY PROSECUTED MR. COMEY IN VIOLATION OF THE DUE PROCESS CLAUSE AND THE FIRST AMENDMENT ................................................................ 18

    A.    The Constitution Prohibits Vindictive Prosecutions.............................. 19

    B.    Objective Evidence Establishes That The Government Vindictively Prosecuted Mr. Comey....................................................................... 20

        1.    The President harbors genuine animus toward Mr. Comey, including because of Mr. Comey's protected speech .................. 20

        2.    Mr. Comey would not have been prosecuted but for President Trump's animus ........................................................ 24

        3.    At minimum, the objective evidence establishes a realistic likelihood that the charge was vindictive.................................... 27

    II.    THE GOVERNMENT HAS SELECTIVELY PROSECUTED MR. COMEY, IN VIOLATION OF EQUAL PROTECTION PRINCIPLES............ 32

    A.    The Constitution Prohibits The Government From Selectively Prosecuting A Defendant For Arbitrary Reasons, Including For His Protected Speech................................................................................. 32

    B.    President Trump Has Directly Admitted That The Government Is Prosecuting Mr. Comey For An Impermissible Discriminatory Purpose................................................................................................ 33

i

C.    In Any Event, Clear Evidence Establishes That The Government Is Selectively Prosecuting Mr. Comey For Impermissible Reasons............ 34

1.    The Government has declined to prosecute similarly situated individuals ........................................................................ 34

2.    The Government's prosecution of Mr. Comey is invidious and in bad faith................................................................................ 38

III.    THE PROPER REMEDY IS DISMISSAL WITH PREJUDICE....................... 38

IV.    AT MINIMUM, DISCOVERY AND A HEARING ARE WARRANTED, AS THERE IS A REALISTIC LIKELIHOOD OF VINDICTIVENESS AND SELECTIVENESS................................................................................ 39

CONCLUSION................................................................................................................ 40

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berger v. United States*,
295 U.S. 78 (1935)..................................................................................................21

*Blackledge v. Perry*,
417 U.S. 21 (1974)..................................................................................................28

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)............................................................................................19, 24

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)................................................................................................33

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998).......................................................................................21, 22, 23

*Fulton Cnty. Bd. of Registration & Elections v. United States*,
2026 WL 1959461 (N.D. Ga. July 7, 2026) ..............................................................31

*Goodfellas, Inc. v. Dunkel*,
2016 WL 6599977 (M.D. Pa. Nov. 8, 2016) .........................................................33, 38

*In re Grand Jury Subpoenas*,
2026 WL 1783899 (D. Minn. June 22, 2026) ...........................................................31

*In re Grand Jury Subpoenas*,
823 F. Supp. 3d 1 (D.D.C. 2026) ...........................................................................31

*Hartman v. Moore*,
547 U.S. 250 (2006)............................................................................................21, 22

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)................................................................................................21

*Purze v. Vill. of Winthrop Harbor*,
286 F.3d 452 (7th Cir. 2002) ..................................................................................37

*Snyder v. Phelps*,
562 U.S. 443 (2011)................................................................................................22

*Texas v. Johnson*,
491 U.S. 397 (1989)................................................................................................20

*Trump v. IRS*,
2026 WL 2015525 (S.D. Fla. July 13, 2026)..............................................................24

Case 4:26-cr-00016-FL-RN    Document 36    Filed 07/28/26    Page 4 of 54

*United States v. Abrego Garcia*,
802 F. Supp. 3d 1055 (M.D. Tenn. 2025)........................................................... *passim*

*United States v. Abrego Garcia*,
2026 WL 1454303 (M.D. Tenn. May 22, 2026)..........................................30, 31, 32

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989) ....................................................................23, 24

*United States v. Armstrong*,
517 U.S. 456 (1996)................................................................................. *passim*

*United States v. Avenatti*,
433 F. Supp. 3d 552 (S.D.N.Y. 2020).................................................................22

*United States v. Ball*,
18 F.4th 445 (4th Cir. 2021) ......................................................................19, 27

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) ..........................................................................39

*United States v. Carey*,
816 F. Supp. 3d 129 (D.D.C. 2026)...................................................................28

*United States v. Comey*,
810 F. Supp. 3d 768 (E.D. Va. 2025) ................................................................14

*United States v. Falk*,
479 F.2d 616 (7th Cir. 1973) ............................................................................38

*United States v. Goodson*,
204 F.3d 508 (4th Cir. 2000) ............................................................................39

*United States v. Goodwin*,
457 U.S. 368 (1982)..........................................................................20, 21, 40

*United States v. Greene*,
697 F.2d 1229 (5th Cir. 1983) ......................................................................26, 38

*United States v. Hasting*,
461 U.S. 499 (1983)..........................................................................................39

*United States v. Hastings*,
126 F.3d 310 (4th Cir. 1997) ............................................................................33

*United States v. LaDeau,*
  734 F.3d 561 (6th Cir. 2013) ........................................................................27, 28, 29

*United States v. Meyer,*
  810 F.2d 1242 (D.C. Cir. 1987) .............................................................................30

*United States v. Monsoor,*
  77 F.3d 1031 (7th Cir. 1996) .................................................................................23

*United States v. Olvis,*
  97 F.3d 739 (4th Cir. 1996) ...............................................................32, 33, 34, 38

*United States v. P.H.E., Inc.,*
  965 F.2d 848 (10th Cir. 1992) ..........................................................................28, 30

*United States v. Robison,*
  644 F.2d 1270 (9th Cir. 1981) ...............................................................................27

*United States v. Sanders,*
  211 F.3d 711 (2d Cir. 2000).............................................................................19, 23

*United States v. Torquato,*
  602 F.2d 564 (3d Cir. 1979)...........................................................................32, 33, 38

*United States v. Venable,*
  666 F.3d 893 (4th Cir. 2012) .........................................................................37, 38, 40

*United States v. Villa,*
  70 F.4th 704 (4th Cir. 2023) ............................................................................29, 30

*United States v. Williams,*
  504 U.S. 36 (1992)...................................................................................................39

*United States v. Wilson,*
  262 F.3d 305 (4th Cir. 2001) ...................................................................... *passim*

*Vill. of Willowbrook v. Olech,*
  528 U.S. 562 (2000)................................................................................................32

*Wade v. United States,*
  504 U.S. 181 (1992)................................................................................................21

*Wayte v. United States,*
  470 U.S. 598 (1985)..........................................................................................33, 38

**Constitution, Statutes, Regulations, and Rules**

U.S. Const. amend. I ................................................................................................ *passim*

U.S. Const. amend. V ..................................................................................................18, 19

18 U.S.C.
§ 871(a) ...............................................................................................................17
§ 875(c) ...............................................................................................................17

28 U.S.C. § 546 ................................................................................................................14

28 C.F.R. § 0.85 .................................................................................................................3

**Miscellaneous Government Documents**

159 Cong. Rec. S6004 (July 29, 2013) ..............................................................................3

John O. Brennan, 2009 Daily Comp. Pres. Doc. 201800534 (Aug. 15, 2018) ................6

Memorandum on Closing Arctic Haze Investigation (Sep. 8, 2017) .................................3

*White House Daily Briefing*, C-SPAN (July 23, 2018) ....................................................6

**News Reports and Other Media**

92NY, *James Comey in Conversation with Nicole Wallace* (YouTube, Dec. 10,
2018) ................................................................................................................................6

Adam Edelman, *Trump Says He Didn't Fire Comey 'Because of Russia,'*
*Contradicting Past Statements*, NBC News (May 31, 2018) .......................................3

Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial*
*Experience*, N.Y. Times (Sep. 22, 2025) ..................................................................12

Amanda Macias, *Trump and GOP Rep. Gosar suggest Joint Chiefs boss Mark*
*Milley deserves death*, CNBC (Sep. 25, 2023) .........................................................37

Ben Penn, *Top Comey Prosecutor Parroted Trump on Way to Targeting His Foe*,
Bloomberg Law (Apr. 30, 2026).................................................................................13

Brooke Singman, *FBI Launches Criminal Investigation of John Brennan, James*
*Comey: DOJ Sources*, FOX News (July 8, 2025) ....................................................10

Carol Leonnig & Fallon Gallagher, *'Seashells' Case was on Back Burner Until Bondi Fired as AG, say sources*, MS Now (Apr. 30, 2026) ........................................16

Charlie Savage & Alan Feuer, *U.S. Installs a Trump Loyalist to Lead 'Grand Conspiracy' Case Into Trump Foes*, N.Y. Times (Apr. 18, 2026) ..........................................16

Daniel Jativa, *Comey says Trump a bigger threat than Russia*, Wash. Exam'r (Apr. 12, 2019).....................................................................................................6

Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*, N.Y. Times (May 3, 2026)........................................................34

Devlin Barrett, *How the Drive to Find a Conspiracy Against Trump Rocked the Justice Department*, N.Y. Times (June 8, 2026).....................................................10

DOJ, *Acting AG Blanche Announces Federal Grand Jury Indicts Former FBI Director for Threats to Harm POTUS* (YouTube, Apr. 29, 2026) ..........................................17

Donald J. Trump (@realDonaldTrump)
Truth Social (May 24, 2026; 08:01 ET)...................................................................18
Truth Social (Sep. 26, 2025; 18:40 ET)...................................................................13
Truth Social (Sep. 25, 2025; 19:24 ET)...................................................................13
Truth Social (Sep. 20, 2025; 18:44 ET)...................................................................12
Truth Social (July 10, 2025; 09:13 ET) ...................................................................11
Truth Social (May 24, 2024; 17:57 ET)....................................................................7
Truth Social (May 17, 2025; 08:34 ET)....................................................................9
X (May 11, 2026; 21:21 ET)...................................................................................18
X (Sep. 15, 2020; 12:42 ET) ...................................................................................7
X (Sep. 10, 2020; 08:51 ET) ...................................................................................7
X (May 25, 2020; 21:07 ET) ...................................................................................7
X (Apr. 30, 2020; 08:07 ET) ...................................................................................7
X (Apr. 27, 2018; 06:26 ET)....................................................................................5
X (Apr. 20, 2018; 06:34 ET)....................................................................................5
X (Apr. 13, 2018; 08:17 ET)....................................................................................5
X (Apr. 13, 2018; 08:01 ET)....................................................................................5

Donie O'Sullivan, *Republican congressman posts video depicting violence against Ocasio-Cortez and Biden*, CNN (Nov. 10, 2021) ..........................................36

Erica Orden, *Maurene Comey, daughter of James Comey and prosecutor of Jeffrey Epstein, is fired*, Politico (July 16, 2025)....................................................11

FBI Dir. Kash Patel (@FBIDirectorKash), X (May 15, 2025; 23:01 ET).....................................8

Glenn Thrush, et al., *Inside the Trump Administration's Push to Prosecute James Comey*, N.Y. Times (Sep. 27, 2025) ...................................................................................11

Glenn Thrush et al., *Todd Blanche Targets Trump's Enemies Amid Jockeying to Lead Justice Dept.*, N.Y. Times (Apr. 24, 2026) ...................................................15

Glenn Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sep. 19, 2025) ..........................................11

Jack Posobiec (@JackPosobiec), X (Jan. 29, 2022; 23:23 ET) .......................................35

James B. Comey, *If Trump-style justice becomes the norm, nobody is safe*, Wash. Post (Aug. 25, 2020) .....................................................................................................6

James Comey (@Comey)
Instagram (May 15, 2025)......................................................................................8
Instagram (Oct. 10, 2024) .....................................................................................7
X (Aug. 23, 2024; 9:49 ET) ..................................................................................7
X (Oct. 20, 2018; 12:52 ET) .................................................................................5
X (July 16, 2018; 17:06 ET) .................................................................................5

Jennifer Bowers Bahney, *Trump Says 'I Don't Know' If There's Any Evidence Against Top Dem He Wants to Indict*, Yahoo News (Apr. 13, 2026)......................15

John H. Durham, Report on Matters Related to Intelligence Activities and Investigations Arising out of the 2016 Presidential Election (May 12, 2023).......................3, 4

Josephine Harvey, *Kash Patel Rages at James Comey Over Cryptic Trump Post*, Daily Beast (May 29, 2025)...........................................................................................10

Katelyn Caralle, *Top White House officials encouraged potential Bondi replacement to make case to Trump for AG job: Sources*, Fox News (Apr. 11, 2026) .........................................................................................................................15

Katherine Faulders et al., *Ex-special counsel John Durham undercut case against James Comey in Interview with prosecutors: Sources*, ABC News (Oct. 6, 2025) .........................................................................................................................11

Laura Jarrett & Ryan J. Reilly, *Todd Blanche Says Americans Should be 'Happy' Trump is Deeply Involved in DOJ*, NBC News (Apr. 14, 2026) ..............................15

Matthew Choi, *Trump campaign lawyer says former cybersecurity chief should be 'shot,'* Politico (Nov. 30, 2020) .....................................................................................35

Case 4:26-cr-00016-FL-RN    Document 36    Filed 07/28/26    Page 9 of 54

Meet the Press, *Acting AG Todd Blanche Says Comey Indictment Looks Beyond 'A Single Instagram Post,'* NBC News (May 3, 2026) ............................................................17

Melissa Quinn, *Paul Gosar re-shares controversial video after House censure,* CBS News (Nov. 18, 2021) ............................................................36

Michael S. Schmidt, *Trump Wanted I.R.S. Investigations of Foes, Top Aide Says,* N.Y. Times (Nov. 13, 2022) ............................................................5

Monica Alba et al., *As Comey is indicted, Trump is said to be happy with acting Attorney General Blanche,* NBC News (Apr. 29, 2026) ............................................................15

MSNBC, *Comey: Trump is Coming for the FBI, DOJ* (YouTube, May 22, 2024), ......................7

Nick Koutsobinas, *Patel: FBI Under Comey Covered for Hillary Clinton,* NewsMax (May 18, 2025) ............................................................9

Paul Sperry, *Russiagate Prosecutor Calls Audible on 'Grand Conspiracy,'* WFMZ (June 25, 2026) ............................................................16

Perry Stein, *DOJ sees fallout after push to prosecute former FBI director James Comey,* Wash. Post (May 9, 2026) ............................................................29

PowerfulJRE, *Joe Rogan Experience #2334: Kash Patel,* at 28:55-29:30 (YouTube, June 6, 2025) ............................................................10

*Read the Transcript: President Donald Trump Interviewed by NBC News' 'Meet the Press' Moderator Kristen Welker,* NBC News (June 7, 2026) ............................................................17

Remarks Prior to a Working Lunch With African Leaders and an Exchange With Reporters, 2009 Daily Comp. Pres. Doc. 202500757 (July 9, 2025) ............................................................10

Roll Call, *Interview: Bret Baier of Fox News Interviews Donald Trump in Abu Dhabi - May 16, 2025* ............................................................9

Ryan J. Riley et al., *James Comey indicted over seashell photo that officials say threatened Trump,* NBC News (Apr. 28, 2026) ............................................................8

Sadie Gurman et al., *Trump Blasted Federal Prosecutors at White House Event, Calling Them Weak,* Wall St. J. (Jan. 13, 2026) ............................................................14

Salvador Rizzo, *Trump advisor named interim U.S. attorney in key Virginia office,* Wash. Post (Sep. 22, 2025) ............................................................12

*Kash Patel Reveals FBI, DOJ Executing 'Multiple' Options on James Comey*,
   Newsweek (Nov. 29, 2025) ...................................................................................................14

*Transcript: James Comey's interview with ABC News chief anchor George
   Stephanopoulos*, ABC News: World News Now (Apr. 15, 2018)............................................4

*Twitter bans a Steve Bannon account after he says Anthony Fauci and
   Christopher Wray should be beheaded*, CBS News (Nov. 6, 2020)........................................36

# INTRODUCTION

The First Amendment forbids the government from retaliating against individuals for their protected speech. And established due process and equal protection principles bar government officials from using criminal process to exact retribution against their perceived personal and political enemies. The indictment in this case violates those constitutional rules.

In May 2025, Mr. Comey posted a picture on Instagram of seashells on a beach arranged in a pattern of "86 47"—a familiar slogan used to oppose President Trump. The following day, President Trump announced on television that Mr. Comey's post "meant assassination," and he made clear his desire that the Department of Justice (DOJ) bring criminal charges, stating that Mr. Comey did not deserve leniency because he was a "dirty cop." That same day, the Secret Service knowingly conducted illegal electronic surveillance of Mr. Comey at the request of a high-level DOJ official and instituted a new policy, effective immediately, to treat the phrase "8647" as coded language for threatening the President. Ultimately, the DOJ secured an indictment alleging that the social-media post constituted a true threat to kill or harm the President.

This is the second indictment that the DOJ has obtained against Mr. Comey in less than a year—both at President Trump's direction. In September 2025, President Trump ordered the DOJ to prosecute Mr. Comey for unspecified crimes. A White House aide improperly installed as U.S. Attorney swiftly executed that directive, securing an indictment in the Eastern District of Virginia. Yet because that indictment was fatally defective, a district court quickly dismissed it. The President thereafter fired the Attorney General.

At that point, Acting Attorney General Blanche, who was seeking a permanent appointment as Attorney General, redoubled the government's efforts to prosecute Mr. Comey— this time in the Eastern District of North Carolina. The government had initially investigated Mr.

1

Comey's seashells post, but that investigation appeared to be going nowhere until Mr. Blanche and U.S. Attorney Ellis Boyle reinvigorated it. The ensuing indictment is not based on a good-faith application of the law to the facts; instead, it effectuates a yearslong campaign by the President to use the criminal process to punish Mr. Comey for his protected speech and because of the President's deep-seated animosity.

The indictment must be dismissed under two bedrock legal doctrines. First, the government instigated this prosecution based on Mr. Comey's protected speech and to vindicate the President's animus towards Mr. Comey, in violation of First Amendment and due process principles. Second, the government engaged in selective prosecution, in violation of equal protection principles. Dismissal of federal criminal charges under these doctrines has historically been rare. That is because for decades the DOJ's independence and integrity have guarded against the use of the criminal process to punish enemies or settle political scores. The prosecutions of Mr. Comey mark a sharp break from that tradition. Ample objective evidence—much of which comes directly from government officials' own public statements and admissions—establishes that the President's animus toward Mr. Comey led to this vindictive and selective prosecution.

The proper remedy for the government's constitutional violations is a dismissal with prejudice. But at the very least, the Court should allow for discovery and an evidentiary hearing into the government's decision-making process. And it should require the government to present objective evidence justifying this prosecution.

## STATEMENT OF FACTS

### A.      Mr. Comey Serves For Decades As A Government Official

Mr. Comey devoted much of his career to government service before becoming a private citizen who speaks out on political issues. From 1987 to 2005, he spent all but three years serving

2

at the DOJ: first as an Assistant United States Attorney, then as United States Attorney, and later as Deputy Attorney General under President George W. Bush. President Barack Obama subsequently nominated Mr. Comey to serve as Director of the Federal Bureau of Investigation (FBI). The Senate confirmed him by a vote of 93 to 1. 159 Cong. Rec. S6004 (July 29, 2013).

As FBI Director, Mr. Comey oversaw the FBI's daily operations, including investigations into national security threats and federal crimes involving terrorism, fraud, political corruption, gang violence, and cybercrimes. *See* 28 C.F.R. § 0.85. Among the many investigations Mr. Comey supervised was "Crossfire Hurricane," a counterintelligence investigation into alleged links between President Trump's 2016 campaign and the Russian government.

On May 9, 2017, President Trump fired Mr. Comey as FBI Director, saying that "this [] thing with Trump and Russia is a made up story." Adam Edelman, *Trump Says He Didn't Fire Comey 'Because of Russia,' Contradicting Past Statements*, NBC News (May 31, 2018), https://perma.cc/6AYS-NBHL. Thereafter, the DOJ and FBI investigated whether Mr. Comey had committed wrongdoing during his tenure as FBI Director, and all investigations concluded with no charges against him. In August 2017, the DOJ and FBI initiated "Arctic Haze," an investigation into whether Mr. Comey had illegally disclosed classified information to the media through Daniel Richman, a Columbia Law School professor and former FBI Special Government Employee. *See* Memorandum on Closing Arctic Haze Investigation -057 (Sep. 8, 2017), https://perma.cc/HZN7-B5QN. The government ultimately concluded that there was not "sufficient evidence to criminally charge any person, including Comey or Richman." *Id.* at -065.

Additionally, in March 2019, Attorney General William Barr appointed John Durham as Special Counsel to review the FBI's and DOJ's handling of investigations into alleged connections between President Trump's 2016 campaign and the Russian government. *See* John H. Durham,

3

Report on Matters Related to Intelligence Activities and Investigations Arising out of the 2016 Presidential Election (May 12, 2023), https://perma.cc/AB9S-BUFE. As part of the investigation, Special Counsel Durham scrutinized whether the FBI had mishandled the Crossfire Hurricane investigation. *See id.* at 46-68. Although the final "Durham Report" offered critiques of the FBI's investigative standards, it did not find that Mr. Comey or any other senior FBI personnel violated any federal criminal statutes. *See id.* at 17-18.

### B. As A Private Citizen, Mr. Comey Criticizes President Trump's Conduct In Office, While President Trump Responds With Vitriol

As a private citizen, Mr. Comey has vigorously and prominently exercised his First Amendment right to criticize President Trump. In response, President Trump has repeatedly attacked and threatened Mr. Comey. That pattern began soon after Mr. Comey's May 2017 termination as FBI Director and has continued up until the indictment in this case.[1]

In April 2018, news accounts highlighted the upcoming publication of Mr. Comey's book, *A Higher Loyalty*. On April 15, ABC News released portions of an interview with Mr. Comey in which he compared President Trump to a New York mafia boss, calling him "untethered to truth," "unethical," and "morally unfit to be President." *Transcript: James Comey's interview with ABC News chief anchor George Stephanopoulos*, ABC News: World News Now (Apr. 15, 2018), https://perma.cc/6PZM-2ZEW. Mr. Comey also described President Trump as "[a] person who sees moral equivalence in Charlottesville, who talks about and treats women like they're pieces of meat, and who lies constantly about matters big and small." *Id.*

That same month, President Trump posted numerous tweets displaying his personal animus toward Mr. Comey. He called Mr. Comey "a proven LEAKER & LIAR" and "a weak and

---

[1] Exhibit A to this memorandum summarizes public statements made by Mr. Comey, President Trump, Acting Attorney General Blanche, and FBI Director Patel.

untruthful slime ball," and stated that Mr. Comey "should be prosecuted." Donald J. Trump (@realDonaldTrump), X (Apr. 13, 2018; 08:01 ET), https://perma.cc/ND2J-QMUQ; Donald J. Trump, X (Apr. 13, 2018; 08:17 ET), https://perma.cc/KP3N-SM25. Five days after ABC released the interview with Mr. Comey, President Trump expressed frustration that "Shadey [sic] James Comey can Leak and Lie and make lots of money from a third rate book (that should never have been written)." Donald J. Trump, X (Apr. 20, 2018; 06:34 ET), https://perma.cc/SP56-KQAA. A week later, President Trump accused Mr. Comey of "illegally leak[ing] CLASSIFIED INFORMATION" and stated that Mr. Comey was "either very sick or very dumb." Donald J. Trump, X (Apr. 27, 2018; 06:26 ET), https://perma.cc/BR25-WP3A.

Later that year, Mr. Comey spoke out against President Trump's conduct in office. For instance, after President Trump credited Vladimir Putin's denials of Russian election interference, Mr. Comey tweeted: "This was the day an American president stood on foreign soil next to a murderous lying thug and refused to back his own country." James Comey (@Comey), X (July 16, 2018; 17:06 ET), https://perma.cc/BBU6-9UCZ. And shortly before the 2018 midterm elections, Mr. Comey posted a tweet maintaining that "[t]he United States should be a shining light for the world, modeling a democracy that values truth" and that "Trump" is "dimming that light." James Comey, X (Oct. 20, 2018; 12:52 ET), https://perma.cc/QMF7-NABY.

Around this time, President Trump began exploring the possibility of using his official powers to retaliate against Mr. Comey. General John F. Kelly, President Trump's former Chief of Staff, has publicly stated that President Trump expressed a desire to deploy the FBI, DOJ, and Internal Revenue Service (IRS) against his critics, including Mr. Comey. Michael S. Schmidt, *Trump Wanted I.R.S. Investigations of Foes, Top Aide Says*, N.Y. Times (Nov. 13, 2022), https://perma.cc/G2FL-7HCQ. When General Kelly opposed deploying the IRS against Mr.

5

Comey, he recalled President Trump stating that Mr. Comey was writing negatively about him and that he "[didn't] want [Comey] making money." *Id.*

Similarly, in July 2018, the White House Press Secretary announced that President Trump was "exploring" stripping John Brennan, the former director of the Central Intelligence Agency (CIA), of his security clearance in response to Mr. Brennan's criticisms of the President. *White House Daily Briefing*, C-SPAN (July 23, 2018) (video), https://perma.cc/46MQ-PVN7. She added that the President was also looking into stripping the clearances of four others who had criticized the President, including Mr. Comey. *Id.*[2] Soon thereafter, the President officially revoked Mr. Brennan's clearance. Statement on the Revocation of the Security Clearance of Former Director of the CIA John O. Brennan, 2009 Daily Comp. Pres. Doc. 201800534 (Aug. 15, 2018), https://perma.cc/TW4F-JQ6J. The official White House announcement referred to former government officials using their clearances "to validate their political attacks" and stated that the President was "evaluating action with respect to" other individuals, including "James Comey." *Id.*

Leading up to the 2020 presidential election, Mr. Comey advocated against President Trump's re-election, characterizing President Trump's tenure as an "attack on our values." 92NY, *James Comey in Conversation with Nicole Wallace* (YouTube, Dec. 10, 2018), bit.ly/4x9ZClG. He observed that while "Russia is engaged in efforts to undermine all manner of American institutions," President Trump "tweets lies about those institutions nearly every day." Daniel Jativa, *Comey says Trump a bigger threat than Russia*, Wash. Exam'r (Apr. 12, 2019), https://perma.cc/R9KE-XC6W. He authored an op-ed maintaining that "if Trump-style justice becomes our tradition, nobody is safe," urging election of "a president who will reflect the core values of honesty and decency that are the lifeblood of our nation and its institutions." James B.

---

[2] In fact, Mr. Comey no longer had a security clearance at that time.

6

Comey, *If Trump-style justice becomes the norm, nobody is safe*, Wash. Post (Aug. 25, 2020), https://perma.cc/KU44-VFSS. President Trump responded, retweeting attacks calling Mr. Comey "a corrupt piece of garbage," "filth," "a disgraced lier [sic] & leaker," and a "weasel" who should "be in jail." Donald J. Trump, X (Apr. 30, 2020; 8:07 ET) (deleted) (repost), https://perma.cc/24UU-JQCC; *id.* (Sep. 10, 2020; 08:51 ET), https://perma.cc/DL7J-65N2; *id.* (May 25, 2020; 21:07 ET) (repost), https://perma.cc/Y9FR-3EH6; *id.* (Sep. 15, 2020; 12:42 ET) (repost), https://perma.cc/BQ97-QRUQ.

During the Biden presidency, Mr. Trump's attacks on Mr. Comey were sporadic until 2024, when Mr. Comey warned during the election campaign that a second Trump term would have "serious" implications "for the Justice Department and the FBI, because Trump is coming for those institutions." MSNBC, *Comey: Trump is Coming for the FBI, DOJ*, at 06:16 (YouTube, May 22, 2024), https://perma.cc/A692-NVAM. In the months before the presidential election, Mr. Comey also posted numerous messages on social media urging citizens to vote for Kamala Harris instead of Mr. Trump. James Comey, X (Aug. 23, 2024; 9:49 ET), https://perma.cc/9QBQ-5YNW; James Comey (@comey), Instagram (Oct. 10, 2024), https://perma.cc/WUA2-CE5D. Then-candidate Trump responded, calling Mr. Comey a corrupt liar who perpetrated "[h]orrors." Donald J. Trump (@realDonaldTrump), Truth Social (May 24, 2024; 17:57 ET), https://perma.cc/7J9D-PTMB.

**C.      President Trump Begins His Second Term And Retaliates Against Mr. Comey**

Since taking office for a second term in January 2025, President Trump has installed his former personal lawyers and advisors as high-level officials at the DOJ. He has then publicly and repeatedly prodded and directed those officials to investigate and prosecute his perceived political enemies, including Mr. Comey.

7

### 1. Mr. Comey's Instagram post and the President's response

Soon after President Trump's second term began, Americans took to the streets and social media to protest the Administration. Those protests frequently included signs and messages reading "86 47"—a shorthand for political opposition to President Trump, the 47th President. *See* Dkt. 33 at 12-16 (true threats motion).

On May 15, 2025, Mr. Comey was on a walk on a North Carolina beach when he came upon seashells arranged in the same protest message, "86 47." He took a picture of the shells and posted it to his personal Instagram, writing "Cool shell formation on my beach walk." Ryan J. Riley et al., *James Comey indicted over seashell photo that officials say threatened Trump*, NBC News (Apr. 28, 2026), https://perma.cc/J7D7-K9ER. Hours later, Mr. Comey removed the post and shared an explanation: "I posted earlier a picture of some shells I saw today on a beach walk, which I assumed were a political message. I didn't realize some folks associate those numbers with violence. It never occurred to me but I oppose violence of any kind so I took the post down." James Comey, Instagram (May 15, 2025), https://perma.cc/4R6L-6F5E. That same day, FBI Director Kash Patel publicly stated that the FBI was "aware of the recent social media post by former FBI Director James Comey, directed at President Trump," and explained that "[p]rimary jurisdiction is with S[ecret] S[ervice] on these matters." FBI Dir. Kash Patel (@FBIDirectorKash), X (May 15, 2025; 23:01 ET), https://perma.cc/VX4S-6EVW.

The Secret Service interviewed Mr. Comey by phone that same evening. Although the Secret Service agent who interviewed him indicated that a telephonic interview might suffice, Mr. Comey agreed to be interviewed the next day in person in Washington if necessary. Aff. of Patrick J. Fitzgerald filed concurrently herewith (Fitzgerald Aff.) ¶ 4. From that point forward, high-level DOJ and White House officials (including the President) involved themselves in the investigation.

8

Behind the scenes, the Secret Service was closely coordinating with the DOJ and the President himself. The Secret Service sent frequent updates to Air Force One, in response to direct requests from President Trump who wished for an update in advance of speaking to the press. *Id.* ¶¶ 8-9. A Secret Service supervisor who was asked that night about conducting electronic surveillance of Mr. Comey on his drive back to Washington the next day made clear that it was "legally" a "bad idea" because there was no belief of "imminent danger to life" to justify the warrantless surveillance. Another agreed that it was "legally questionable" but indicated they "might do it anyway." *Id.* ¶ 5. The next day, the Secret Service conducted that surveillance—following a request by the "number three" person at the DOJ—as Mr. Comey and his wife returned to Washington, including as they stopped to visit the grave of their deceased son. *See id.* ¶¶ 6-7.

On May 16, President Trump stated on television that Mr. Comey "meant assassination"; that "it's a terrible thing"; and that "if he had a clean history, I could understand if there was [] leniency," but "he doesn't, he's a dirty cop." Roll Call, *Interview: Bret Baier of Fox News Interviews Donald Trump in Abu Dhabi – May 16, 2025*, https://perma.cc/KTP2-U4DL. On May 17, President Trump again accused Mr. Comey of being a "DIRTY COP." Donald J. Trump, Truth Social (May 17, 2025; 08:34 ET), https://perma.cc/JGT9-37P7. Less than two hours later, the Secret Service instituted a new policy, effective immediately, to code "8647" as a threat to the President. *See* Fitzgerald Aff. ¶ 36. But by day's end, the policy needed to be rolled back—the policy resulted in so many potential leads that a Secret Service Assistant Director stated the need to return to "business as usual," which required actual "threatening language." *Id.* ¶ 37.

On May 18, Director Patel attacked Mr. Comey for having supposedly "bastardize[d] the FISA process and lie[d] to the American public" while serving as FBI Director. Nick Koutsobinas, *Patel: FBI Under Comey Covered for Hillary Clinton*, NewsMax (May 18, 2025),

9

https://perma.cc/F3YW-ZRUH. Director Patel also claimed that Mr. Comey's "beachside venture" had inspired copycat posts: "people are popping up on social media . . . because [Mr. Comey] thought it was funny to go out there and make a political stand." Josephine Harvey, *Kash Patel Rages at James Comey Over Cryptic Trump Post*, Daily Beast (May 29, 2025), https://perma.cc/F6SZ-VEAH. And Director Patel revealed that the FBI had opened other investigations involving Mr. Comey. PowerfulJRE, *Joe Rogan Experience #2334: Kash Patel*, at 28:55-29:30 (YouTube, June 6, 2025), http://bit.ly/44Q2xDS.

Less than a week after Mr. Comey's post, on May 21, 2025, an Assistant U.S. Attorney from the Eastern District of North Carolina wrote to a Secret Service agent regarding Mr. Comey's seashells post that "I've been ordered to open this case in EDNC." *See* Fitzgerald Aff. ¶ 15. Around the same time, then-Deputy Attorney General Todd Blanche's deputies were also reportedly pressing prosecutors in the Eastern District of Virginia to open an investigation of the post. *See* Devlin Barrett, *How the Drive to Find a Conspiracy Against Trump Rocked the Justice Department*, N.Y. Times (June 8, 2026), https://perma.cc/8YZP-HEPR. Although the Secret Service had been the first to investigate and even surveil Mr. Comey, at a "level of surveillance that some agents said they felt was overkill," it quickly decided against opening a full investigation. *Id.* Eventually, in October 2025, the U.S. Attorney's Office in the Eastern District of North Carolina asked the FBI to open an investigation, and the FBI obliged. *See* Fitzgerald Aff. ¶ 15.

### 2. The Government obtains a defective indictment of Mr. Comey in the Eastern District of Virginia

Approximately two months after Mr. Comey's Instagram post, public reports emerged that the DOJ was investigating Mr. Comey. *See* Brooke Singman, *FBI Launches Criminal Investigation of John Brennan, James Comey: DOJ Sources*, FOX News (July 8, 2025), https://perma.cc/J25X-C85P. Following those reports, President Trump referred to Mr. Comey

and Mr. Brennan as "crooked as hell" and "truly bad people and dishonest people," noting that "maybe they have to pay a price for that . . . whatever happens, happens." Remarks Prior to a Working Lunch With African Leaders and an Exchange With Reporters, 2009 Daily Comp. Pres. Doc. 202500757 (July 9, 2025), https://perma.cc/EN8R-YDZ4. He also posted a quote from a commentator stating that "James Comey needs daily therapy" and "is so obsessed with his hatred of Trump." Donald J. Trump, Truth Social, (July 10, 2025; 09:13 ET), https://perma.cc/V9HV-SBAP. And he included Mr. Comey alongside a list of "the Losers and Criminals of the Biden Administration." *id.* (July 12, 2025; 17:21 ET), https://perma.cc/2SNF-83VJ.

On July 16, 2025, the DOJ abruptly fired Mr. Comey's daughter, Maurene Comey, a veteran Assistant United States Attorney in the Southern District of New York. *See* Erica Orden, *Maurene Comey, daughter of James Comey and prosecutor of Jeffrey Epstein, is fired*, Politico (July 16, 2025), https://perma.cc/K8UD-8A3A. The DOJ gave no justification for Ms. Comey's firing other than a citation to Article II of the Constitution. *See* Compl. ¶ 3, *Comey v. U.S. Dep't of Justice*, No. 25-cv-7625 (S.D.N.Y. Sep. 15, 2025), Dkt. 1.

Around this same time, a team of career prosecutors from the U.S. Attorney's Office for the Eastern District of Virginia investigated Mr. Comey. *See* Glenn Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sep. 19, 2025), https://perma.cc/Q75E-873N. In September 2025, prosecutors interviewed Mr. Richman, but he was "not helpful" in their efforts to build a case. Glenn Thrush, et al., *Inside the Trump Administration's Push to Prosecute James Comey*, N.Y. Times (Sep. 27, 2025), https://perma.cc/6MFG-8D3U. The government also reportedly interviewed Special Counsel Durham, who stated that his investigation had not uncovered evidence supporting charges against Mr. Comey. *See* Katherine Faulders et al., *Ex-special counsel John Durham undercut case against*

11

*James Comey in Interview with prosecutors: Sources*, ABC News (Oct. 6, 2025), https://perma.cc/EJ4Z-D66B.

Despite the absence of evidence of criminal conduct, the Trump Administration reportedly pressured interim U.S. Attorney for the Eastern District of Virginia Erik Siebert to indict Mr. Comey. *See* Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, *supra*. When Mr. Siebert appeared unwilling, President Trump told reporters that he wanted Mr. Siebert "out." *Id.* Mr. Siebert resigned on September 19, 2025. *Id.*

The next day, President Trump posted a statement on social media explicitly pressing the Attorney General to prosecute Mr. Comey and other perceived political enemies. Donald J. Trump, Truth Social (Sep. 20, 2025; 18:44 ET), https://perma.cc/A7RW-2TEC:

> "Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam 'Shifty' Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT."

Less than 48 hours after President Trump's post, Lindsey Halligan was sworn in as interim U.S. Attorney for the Eastern District of Virginia. Salvador Rizzo, *Trump advisor named interim U.S. attorney in key Virginia office*, Wash. Post (Sep. 22, 2025), https://perma.cc/A3XG-H5AL. Ms. Halligan lacked prosecutorial experience and was a White House official. *See* Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial Experience*, N.Y. Times (Sep. 22, 2025), https://perma.cc/YW66-M3HF. On her fourth day in office, Ms. Halligan secured a grand jury indictment of Mr. Comey, alleging that Mr. Comey made false statements to Congress

12

during a 2020 Senate Judiciary Committee hearing.  Indictment, *United States v. Comey*, No. 1:25-cr-272 (E.D. Va. Sep. 25, 2025), Dkt. 1.

President Trump celebrated the indictment of Mr. Comey on social media. He posted: "JUSTICE IN AMERICA!  One of the worst human beings this Country has ever been exposed to is James Comey, the former Corrupt Head of the FBI.  Today he was indicted by a Grand Jury on two felony counts for various illegal and unlawful acts.  He has been so bad for our Country, for so long, and is now at the beginning of being held responsible for his crimes against our Nation. MAKE AMERICA GREAT AGAIN!"  Donald J. Trump, Truth Social (Sep. 25, 2025; 19:24 ET), https://perma.cc/N9T4-2ZPA.

President Trump also posted a word of thanks to those in the DOJ who had effectuated his wishes: "I'd like to thank Kash Patel, and the outstanding members of the FBI, for their brilliant work on the recent Indictment of the Worst FBI Director in the History of our Country, James 'Dirty Cop' Comey.  The level of enthusiasm by the FBI was incredible, but only caused by the fact that they knew Comey for what he is, and was, a total SLIMEBALL!  Again, thank you to the FBI and, specifically, those that worked on this case with U.S. Attorney Lindsey Halligan, and the DOJ."  Donald J. Trump, Truth Social (Sep. 26, 2025; 18:40 ET), https://perma.cc/V9AS-9NKB. Later, while the Eastern District of Virginia case against Mr. Comey was still pending, President Trump reposted a picture of Mr. Patel holding binoculars next to the words "Who is next?"— above a picture of Mr. Comey with a checkmark on his forehead.  *Id.* (Nov. 17, 2025; 07:02 ET), https://perma.cc/35QP-RZRC (repost).

Ms. Halligan received assistance in her prosecution efforts from Ellis Boyle, installed two months earlier as interim U.S. Attorney for the Eastern District of North Carolina.  Ben Penn, *Top Comey Prosecutor Parroted Trump on Way to Targeting His Foe*, Bloomberg Law (Apr. 30,

13

2026), https://perma.cc/5ZL9-CTSP. After no career prosecutors joined Ms. Halligan's prosecution of Mr. Comey, "[Mr.] Boyle loaned two of [his] office's more seasoned . . . prosecutors" to the Eastern District of Virginia prosecution. *Id.*; *see* Notices of Appearance, *United States v. Comey*, No. 1:25-cr-272 (E.D. Va. Oct. 6, 2025), Dkt. Nos. 17, 18. "At least one" of these prosecutors was investigating Mr. Comey's social-media post while working in the Eastern District of North Carolina. Penn, *supra*; *see supra* p.10.[3]

On November 24, 2025, the district court granted Mr. Comey's motion to dismiss the indictment. *See United States v. Comey*, 810 F. Supp. 3d 768 (E.D. Va. 2025), *appeal docketed*, No. 25-4674 (4th Cir. Dec. 22, 2025). The court held that Ms. Halligan's appointment as interim U.S. Attorney "was invalid" under both 28 U.S.C. § 546 and the Appointments Clause of the Constitution. *Id.* at 771. The court further "conclude[d] that all actions flowing from Ms. Halligan's defective appointment, including securing and signing Mr. Comey's indictment, were unlawful exercises of executive power and must be set aside." *Id.* at 781-82.

**D.      Following Dismissal Of The Eastern District Of Virginia Indictment, The Government Pursues Another Flawed Indictment Of Mr. Comey**

Days after the district court's dismissal of the indictment, Director Patel publicly stated that the FBI and DOJ were "not done" and "ha[d] numerous options to proceed" against Mr. Comey. *Kash Patel Reveals FBI, DOJ Executing 'Multiple' Options on James Comey*, Newsweek (Nov. 29, 2025), http://perma.cc/XV4L-KYRW. Weeks later, President Trump reportedly criticized a group of U.S. Attorneys at a White House event, "complaining they weren't moving fast enough to prosecute his favored targets." Sadie Gurman et al., *Trump Blasted Federal Prosecutors at White House Event, Calling Them Weak*, Wall St. J. (Jan. 13, 2026),

---

[3] Both of these prosecutors resigned from the DOJ in January 2026.

14

https://perma.cc/KLH5-ZW98. And in April 2026, President Trump suggested that the government was continuing to investigate Mr. Comey, stating that Mr. Comey was a "dirty cop" and "we're not gonna stand for it." Jennifer Bowers Bahney, *Trump Says 'I Don't Know' If There's Any Evidence Against Top Dem He Wants to Indict*, Yahoo News (Apr. 13, 2026), https://perma.cc/PH3H-D3RC.

That same month, President Trump fired Attorney General Bondi, reportedly because "she couldn't deliver on his agenda, including the effort to prosecute some of his political enemies." Monica Alba et al., *As Comey is indicted, Trump is said to be happy with acting Attorney General Blanche*, NBC News (Apr. 29, 2026), https://perma.cc/P3W5-8E85. The President named Mr. Blanche as Acting Attorney General. In mid-April 2026, President Trump reportedly told Mr. Blanche that he was "audition[ing]" for a permanent appointment as Attorney General. Katelyn Caralle, *Top White House officials encouraged potential Bondi replacement to make case to Trump for AG job: Sources*, Fox News (Apr. 11, 2026), https://perma.cc/6YM9-FWZ8. Mr. Blanche responded by "ma[king] it clear to senior White House officials that he plans to move more efficiently than Ms. Bondi against Mr. Trump's targets." Glenn Thrush et al., *Todd Blanche Targets Trump's Enemies Amid Jockeying to Lead Justice Dept.*, N.Y. Times (Apr. 24, 2026), https://perma.cc/2EXZ-47SA. He embraced President Trump's September 2025 post, stating the President's instruction to the former Attorney General that "JUSTICE MUST BE SERVED" should make Americans "happy." Laura Jarrett & Ryan J. Reilly, *Todd Blanche Says Americans Should be 'Happy' Trump is Deeply Involved in DOJ*, NBC News (Apr. 14, 2026), https://perma.cc/T8JE-FERA. "At Mr. Blanche's urging," the DOJ moved quickly to effectuate the President's wishes. Thrush et al., *Todd Blanche Targets Trump's Enemies*, *supra*. Mr. Blanche "g[ave] the green light" to investigations into Cassidy Hutchinson (a former White House aide

15

who testified about President Trump's involvement in the January 6, 2021 riot), Democratic fundraising platform ActBlue, and civil rights organization the Southern Poverty Law Center. *Id*.

Mr. Blanche also "plan[ned] to revive" efforts to prosecute Mr. Comey after the "botched attempt" in the Eastern District of Virginia. *Id*. To that end, Mr. Blanche "creat[ed] a special position" within the DOJ for Joseph diGenova, a longtime Trump lawyer who had previously advocated for Mr. Comey's prosecution. Paul Sperry, *Russiagate Prosecutor Calls Audible on 'Grand Conspiracy,'* WFMZ (June 25, 2026), https://perma.cc/JG84-K2WQ. Mr. Blanche "put [Mr. diGenova] in charge" of investigating a supposed grand conspiracy against President Trump involving Mr. Comey. Thrush, *Todd Blanche Targets Trump's Enemies*, *supra*. Previously, Ms. Bondi had "got[ten] in the way" of these efforts. *Id*. This appointment followed the removal of a career prosecutor from the case. Charlie Savage & Alan Feuer, *U.S. Installs a Trump Loyalist to Lead 'Grand Conspiracy' Case Into Trump Foes*, N.Y. Times (Apr. 18, 2026), https://perma.cc/YG9V-MTNQ.

The DOJ also set its sights on prosecuting Mr. Comey for his seashells post from a year earlier. As Attorney General, Ms. Bondi had reportedly "pushed her team to keep pursuing" the Eastern District of Virginia case against Mr. Comey, "concluding that [the] case was significantly stronger than potential charges based in North Carolina." Carol Leonnig & Fallon Gallagher, *'Seashells' Case was on Back Burner Until Bondi Fired as AG, say sources*, MS Now (Apr. 30, 2026), https://perma.cc/S8VG-M89S. As Deputy Attorney General, Mr. Blanche had reportedly urged caution in prosecuting Mr. Comey for his seashells post. Thrush, *Todd Blanche Targets Trump's Enemies*, *supra*. But with Ms. Bondi ousted and Mr. Blanche seeking a permanent appointment as Attorney General, "the 'seashells' case gained new steam," and "Blanche's aides instruct[ed] Boyle to seek a grand jury indictment of Comey." Leonnig & Gallagher, *supra*.

16

On April 28, 2026, U.S. Attorney Boyle followed Mr. Blanche's instructions and secured an indictment of Mr. Comey based on his seashells post. The two-count indictment charges Mr. Comey with "knowingly and willfully mak[ing] a threat" to kill or harm the President, in violation of 18 U.S.C. § 871(a) and 875(c). Dkt. 1. The exclusive basis for each count was that Mr. Comey "publicly posted a photograph on the internet social media site Instagram which depicted seashells arranged in a pattern making out '86 47.'" *Id.* The lone signatory on the indictment was Matthew Petracca, an Assistant U.S. Attorney with a background in state Medicaid fraud and little federal criminal experience. Penn, *supra*. Mr. Petracca was hired by U.S. Attorney Boyle and reportedly joined the office only months before seeking the indictment, "after more experienced lawyers in the office investigating the sea shells post . . . left the case." Penn, *supra*.[4] Mr. Petracca has since withdrawn from the case and transferred to the Civil Division. Dkt. 16.

U.S. Attorney Boyle appeared alongside Acting Attorney General Blanche and Director Patel at a press conference to announce the indictment. *See* DOJ, *Acting AG Blanche Announces Federal Grand Jury Indicts Former FBI Director for Threats to Harm POTUS* (YouTube, Apr. 29, 2026), https://bit.ly/4vQ4MC4. Soon afterwards, Mr. Blanche publicly implied that the government had additional evidence supporting the indictment; "rest assured, it's not just the Instagram post that leads someone to get indicted." Meet the Press, *Acting AG Todd Blanche Says Comey Indictment Looks Beyond 'A Single Instagram Post,'* NBC News (May 3, 2026), https://bit.ly/4vPQTUk. President Trump celebrated the indictment, asserting that Mr. Comey is "a very dirty cop" and "a crooked man." Alba, *supra*; *see Read the Transcript: President Donald Trump Interviewed by NBC News' 'Meet the Press' Moderator Kristen Welker*, NBC News (June

---

[4]Mr. Petracca converted from a Special Assistant U.S. Attorney to Assistant U.S. Attorney in the Criminal Division effective April 26, 2026, two days before the indictment. Fitzgerald Aff. ¶ 42.

17

7, 2026), https://perma.cc/GDT9-QGUD.  He also reposted social-media posts that tagged Mr. Blanche's X handle: "When the hell are you going to indict" others, "@DAGToddBlance ?? We see Comey. . . . It's time we SEE JUSTICE!"  Donald J. Trump, X (May 11, 2026; 21:21 ET), https://perma.cc/485H-CPHZ (repost).  And he shared an image of several political enemies, including Mr. Comey, in artificial mugshots and prison jumpsuits.  Donald J. Trump, Truth Social (May 24, 2026; 08:01 ET), https://perma.cc/57PM-3323.

## ARGUMENT

The Due Process Clause of the Fifth Amendment protects all persons against federal government action designed to penalize protected speech or to wield government power based on animus.  Those protections are at their zenith when the government invokes the criminal process to deprive a person of liberty.  Established due process principles therefore prohibit vindictive prosecutions to punish the assertion of rights or to express animus.  Similarly, established equal protection principles prohibit selective prosecutions that invidiously impose penalties based on arbitrary classifications.  Here, the government has singled out Mr. Comey for prosecution because President Trump harbors animus toward Mr. Comey and his protected speech, and it has done so in direct response to the President's urgings and Mr. Comey's successful motion to dismiss a prior indictment.  This indictment should thus be dismissed with prejudice on both vindictive and selective prosecution grounds.  At minimum, objective facts justify discovery into the suspect decision-making process that led to this flawed indictment and a hearing at which the government must justify its decision to bring these unfounded and retaliatory charges.

## I.  THE GOVERNMENT HAS VINDICTIVELY PROSECUTED MR. COMEY IN VIOLATION OF THE DUE PROCESS CLAUSE AND THE FIRST AMENDMENT

Objective evidence establishes that the government has prosecuted Mr. Comey—for the second time in less than a year—to retaliate against him for his public criticisms of the President

and to punish him because of the President's personal spite. Such a vindictive prosecution serves no legitimate government interest and contradicts fundamental constitutional values.

## A. The Constitution Prohibits Vindictive Prosecutions

"[V]indictive prosecution has no place in our system of justice." *United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021). It is thus "well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). "[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional'" and "a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citations omitted).

"To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314. A defendant may satisfy the first prong by showing either that "the prosecutor harbored genuine animus toward the defendant," or that the prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (citation omitted). The second prong requires the defendant to show that "he would not have been prosecuted . . . but for the vindictive motive" of the prosecutor or his superiors. *Wilson*, 262 F.3d at 317 (emphasis omitted).

Though a defendant can establish an "improper motive with direct evidence," such a motive can also be "presumed" if the defendant "shows that the circumstances 'pose a realistic likelihood of vindictiveness.'" *Id.* at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)).

19

"[A] presumption of vindictive prosecution . . . must be supported by a showing sufficiently strong to overcome the presumption of prosecutorial regularity" that normally attaches to "charging decisions." *Id.* at 314-15. "If the defendant presents evidence of a reasonable likelihood of vindictiveness, then the district court must allow discovery and an evidentiary hearing on that issue." *United States v. Abrego Garcia* (*Abrego Garcia I*), 802 F. Supp. 3d 1055, 1058 (M.D. Tenn. 2025). The burden then "shifts to the government to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315.

**B.      Objective Evidence Establishes That The Government Vindictively Prosecuted Mr. Comey**

"In the ordinary case," a "prosecutor's charging decision is presumptively lawful" and rests within his "broad discretion." *Wilson*, 262 F.3d at 315 (citation omitted). This is no ordinary case. Here, "direct evidence" establishes that the President harbors "genuine animus toward" Mr. Comey, *id.* at 314, including because of Mr. Comey's protected speech. Based on that animus, President Trump has publicly demanded that the DOJ prosecute Mr. Comey, regardless of the facts or the law. And the DOJ has obeyed, now for the second time, after Mr. Comey successfully moved to dismiss charges in the Eastern District of Virginia. On this record alone, Mr. Comey has established actual "prosecutorial vindictiveness." *Id.*

**1.      The President harbors genuine animus toward Mr. Comey, including because of Mr. Comey's protected speech**

"[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). The First Amendment at its core protects an individual's right to express "dissatisfaction with the policies" and leadership "of this country." *Texas v. Johnson*, 491 U.S. 397, 411 (1989). Indeed, the First Amendment embodies "a profound national

20

commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Where the government prosecutes a defendant to punish him for his protected speech, that action violates the Due Process Clause and the First Amendment. *See Goodwin*, 457 U.S. at 372; *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.").

More broadly, the Due Process Clause forbids vindictive prosecutions motivated by the government's "genuine animus toward the defendant," regardless of whether that animus is connected to the defendant's exercise of his constitutional rights. *Wilson*, 262 F.3d at 314. That is because "the Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citation omitted). And that principle applies with particular force here because the interest of "[t]he United States Attorney in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). Thus, a vindictive prosecution brought to effectuate the President's animus toward a defendant or because the President perceives the defendant as a political foe is "arbitrary," *Lewis*, 523 U.S. at 847, and serves no "legitimate Government end," *Wade v. United States*, 504 U.S. 181, 186 (1992).

Here, the objective evidence establishes that President Trump harbors genuine animus toward Mr. Comey, both based on Mr. Comey's protected speech and based on President Trump's arbitrary personal bias. As explained above, as a private citizen, Mr. Comey has repeatedly spoken out against President Trump's conduct in office and urged Americans to vote against President Trump in the 2020 and 2024 elections. *See supra* pp. 4-7. This very case arises from Mr. Comey's

21

social-media post expressing political opposition to President Trump. Such "[s]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (citation omitted).

In response to Mr. Comey's protected speech, President Trump has resorted to personal attacks and calls to retaliate against Mr. Comey through criminal prosecution. Following Mr. Comey's seashells post, and after privately interceding with the Secret Service to obtain notes of Mr. Comey's interview, President Trump publicly declared that Mr. Comey did not deserve "leniency" because he was a "dirty cop." *See supra* p.9. During his first term, President Trump openly discussed deploying the IRS against Mr. Comey because Mr. Comey was writing critically about him. *See* Schmidt, *supra*. And President Trump has frequently tweeted about prosecuting Mr. Comey and sending him to jail, among other personal attacks and insults. *See supra* pp. 5-7. Overall, the pattern of President Trump's statements and actions demonstrate a clear intent to subject Mr. Comey to "[o]fficial reprisal for [his] protected speech." *Hartman*, 547 U.S. at 256.

Not only has President Trump sought to retaliate against Mr. Comey "for speaking out," *Hartman*, 547 U.S. at 256, but he has also done so based on personal bias—the very definition of "arbitrary" government conduct, *Lewis*, 523 U.S. at 845-46 (citations omitted). Following the indictment of Mr. Comey in the Eastern District of Virginia, President Trump called him "[o]ne of the worst human beings this Country has ever been exposed to." *See supra* p. 13. And for years, President Trump has publicly called Mr. Comey "a corrupt piece of garbage," "a disgraced liar & leaker," a "weasel," "a weak and untruthful slime ball," and "very sick or very dumb." *See supra* pp. 4-6. Those statements reveal a deep personal animus toward a perceived political adversary. *See, e.g.*, *United States v. Avenatti*, 433 F. Supp. 3d 552, 575 (S.D.N.Y. 2020) (finding "ample evidence of the animosity President Trump feels towards" the defendant based on President

22

Trump's statements). Engineering the prosecution of a perceived political enemy because of animus, as President Trump has done here, is the quintessential "abuse[] [of] power" that "the Due Process Clause was intended to prevent." *Lewis*, 523 U.S. at 846 (citations omitted).

A claim of vindictive prosecution in this case does not depend on a showing that U.S. Attorney Boyle himself harbors "genuine animus toward" Mr. Comey. *Wilson*, 262 F.3d at 314. Rather, the claim turns on the animus harbored by the official who prompted the prosecution— here, the President—revealed in repeated expressions of malice. The President translated that malice into action by prodding the DOJ to prosecute Mr. Comey—particularly in the public social-media post claiming that Mr. Comey is "guilty as hell" of some unspecified crime and instructing then-Attorney General Bondi to seek "JUSTICE" against him without "delay." *See supra* p. 12. Through his statements, the President "prevail[ed] upon" his political subordinates in the DOJ "to bring the charges" against Mr. Comey, such that they "could be considered … 'stalking horse[s].'" *Sanders*, 211 F.3d at 717; *see United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) (where another party "in some way prevail[s] upon the prosecutor in making the decision to seek an indictment," the "ill will, whoever its bearer," may be "imputed to federal prosecutors"). Indeed, the prosecutor who opened this case documented in writing that he had done so because he was "ordered to," suggesting a direct linkage between those acting on the presidential directive and the prosecutorial response. *See supra* p.10.

That chain of events, grounded in objective facts, is more than sufficient to establish a vindictive prosecution claim. In *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989), for instance, the Sixth Circuit held that the defendant showed "'evidence' of vindictive prosecution" based on the theory that "the EEOC was able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for [the defendant's] exercise of her

23

statutory right to sue." *Id.* at 1146. The same logic applies with even greater force here because the President—the head of the Executive Branch and U.S. Attorney Boyle's ultimate supervisor—instigated a retaliatory prosecution against Mr. Comey that would otherwise not have been brought.[5] That action violates the Due Process Clause, which bars any "agent of the State [from] pursu[ing] a course of action whose objective is to penalize a person's reliance on his legal rights," *Bordenkircher*, 434 U.S. at 363 (citations omitted), or for the arbitrary and lawless reason of personal animosity.[6] President Trump's repeated public statements and private actions leave no doubt as to his genuine animus toward Mr. Comey.

### 2. Mr. Comey would not have been prosecuted but for President Trump's animus

Having shown that President Trump "acted with genuine animus" toward Mr. Comey, the next question is whether Mr. Comey "would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314. The answer is yes. After years of publicly criticizing Mr. Comey's speech and character, President Trump has pursued a campaign of retaliation against Mr. Comey. The causal connection between President Trump's animus and this prosecution is clear.

The President's animus first led to the indictment of Mr. Comey in the Eastern District of Virginia. As explained above, when interim U.S. Attorney Erik Siebert resisted pressures to prosecute Mr. Comey, President Trump publicly stated that he wanted Mr. Siebert "out," prompting Mr. Siebert to resign. *See supra* p. 12. A day later, on September 20, 2025, the

---

[5] A district court recently noted the unusual "influence over the DOJ" wielded by President Trump, *Trump v. IRS*, 2026 WL 2015525, at *12 (S.D. Fla. July 13, 2026), citing a statement by DOJ leadership to U.S. Attorneys nationwide that "the President is the Department's 'chief client.'" *Id.* at 12 n.35 (citation omitted).

[6] So deep is President Trump's animosity that it extends to Mr. Comey's daughter, who was fired as a federal prosecutor for no stated reason other than "Article II"—the source of presidential power. *See supra* p. 11. Targeting a person by punishing a family member provides objective evidence of personal animus that has no place in the exercise of government power.

24

President posted a statement on social media addressed expressly to "Pam," the then-Attorney General. *See supra* p. 12. In the post, the President complained that "[n]othing [was] being done" to "Comey, Adam 'Shifty' Schiff, [and] Leticia," even though "[t]hey're guilty as hell" of unspecified crimes and "there is a GREAT CASE." *Id.* He then emphasized that "[w]e can't delay any longer" because "it's killing our reputation and credibility" and "JUSTICE MUST BE SERVED, NOW!!!" *Id.* That post crystallized an urgent official direction from the President to the DOJ: prosecute Mr. Comey for *something*.

The DOJ then acted swiftly to follow that direction. Within 48 hours of President Trump's post, the Attorney General purported to appoint Lindsey Halligan—a White House aide with no prosecutorial experience—as interim U.S. Attorney for the Eastern District of Virginia. *See supra* p. 12. Just four days later, Ms. Halligan sought and obtained a grand jury indictment against Mr. Comey, which the President publicly celebrated. *See supra* pp. 12-13. But the Eastern District of Virginia prosecution quickly faltered. Within two months, the indictment had been dismissed. Not long after that dismissal, the President fired Ms. Bondi—reportedly in part for her failed attempt to prosecute Mr. Comey. *See supra* p. 15. The President then reportedly told Acting Attorney General Blanche that he was "auditioning" for the job. *Id*. To effectuate the President's wishes, Mr. Blanche sought to do what Ms. Bondi could not: successfully prosecute Mr. Comey.

He thus refocused the DOJ's efforts on the seashells post. By the time Mr. Blanche became Acting Attorney General, eleven months of investigation into that post had failed to produce sufficient evidence to bring charges. Investigators had interviewed Mr. Comey and elected not to arrest or charge him, and the Secret Service decided there was no need to open a full investigation. *See supra* pp. 8-9. Even Ms. Bondi reportedly believed that the government had no viable case against Mr. Comey. *See supra* p. 16. Nonetheless, with the Eastern District of Virginia indictment

25

dismissed and Mr. Blanche needing to please President Trump during his "audition," Mr. Blanche's aides "instruct[ed] Boyle to seek a grand jury indictment of Comey." *See supra* p. 16.

The government's revival of a fruitless investigation based on political expediency evidences the impact of animus on the decision to prosecute. Where the "government ha[s] followed unusual discretionary procedures in deciding to prosecute," those aberrant procedures provide strong evidence that the prosecution was brought for an improper reason. *United States v. Greene*, 697 F.2d 1229, 1236 (5th Cir. 1983). Generally, when law enforcement becomes aware that an individual has threatened the President, officials act quickly to charge and arrest that individual. *See, e.g.*, *United States v. Lang*, No. 3:25-cr-409 (D.S.C. filed Mar. 4, 2025) (15-day delay); *United States v. Carillo*, No. 5:24-cr-16 (W.D. Va. filed Aug. 2, 2024) (6-day delay); *United States v. Butler*, No. 7:22-cr-46 (W.D. Va. filed Dec. 7, 2022) (6-day delay); *United States v. Merryman*, No. 1:22-cr-50 (D. Md. filed Feb. 10, 2022) (1-day delay); *United States v. Henthorn*, No. 5:19-cr-8 (N.D. W. Va. filed Jan. 22, 2019) (4-day delay). Had Mr. Comey's post been assessed as a true threat, the government's normal process would have led it to act quickly here as well. Instead, the indictment took 348 days.

Moreover, federal officials acted irregularly across the course of this investigation. Immediately after Mr. Comey's post, the Secret Service changed its policy to newly treat "86 47" as a threat; Secret Service agents were also ordered to conduct unlawful surveillance of Mr. Comey and share their interview notes with the President. *See supra* pp. 8-9. When the Secret Service declined to open a full investigation, the DOJ instructed the FBI to pick up the baton, which Director Patel eagerly did. *See supra* p. 10. The FBI acted irregularly, too. When the FBI applied for search warrants in March and May 2026—long after the social media post—those applications distorted the facts of the case. *See* Concurrently Filed Mot. to Suppress & Memo. in Support. The

26

government also failed to install effective screens for attorney-client privilege, resulting in the seizure of communications between Mr. Comey and two of his longstanding attorneys. *See* Fitzgerald Aff. ¶ 40. The suspect timing and conduct of this prosecution—and the events that catalyzed it—support the conclusion that some motive besides legitimate prosecutorial interests drove the decision. Here, the inference is clear: the newly installed political officials in the DOJ strove to accomplish what their predecessors could not, namely, effectuating the President's desire to punish Mr. Comey.

The current record shows a clear causal link between President Trump's animus and the prosecution of Mr. Comey. This is thus the rare case in which a defendant can "prove an improper motive" and a causal connection "with direct evidence." *Wilson*, 262 F.3d at 314. Accordingly, Mr. Comey has established that his prosecution "was motivated by *actual* vindictiveness," and the indictment must be dismissed. *Id.* at 316.

### 3. At minimum, the objective evidence establishes a realistic likelihood that the charge was vindictive

At the very least, the circumstances surrounding the government's pursuit of Mr. Comey warrant a presumption of vindictiveness. In the absence of direct evidence, defendants may "present evidence of circumstances from which an improper vindictive motive may be presumed" because they "pose a realistic likelihood of vindictiveness," shifting the burden to the government to justify its conduct. *Ball*, 18 F.4th at 454-55 (citation omitted). Courts consider the "totality of circumstances surrounding the prosecutorial decision at issue" to determine whether they suggest an "appearance of vindictiveness." *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981) (citation omitted); *see United States v. LaDeau*, 734 F.3d 561, 567 (6th Cir. 2013).

Here, the record before the Court readily establishes a "realistic likelihood of 'vindictiveness.'" *Wilson*, 262 F.3d at 314 (citations omitted). That threshold is met based on

27

President Trump's public statements and social media posts alone. Those posts show that President Trump harbors animus and personal bias against Mr. Comey, including because of Mr. Comey's protected speech criticizing the President. And President Trump's post ordering the Attorney General—and by extension, the DOJ—to seek "JUSTICE" against Mr. Comey without "delay" effectively establishes an official policy of retaliation that led directly to this prosecution. Thus, President Trump's public statements provide "objective evidence" giving rise, at a minimum, to "a realistic likelihood of 'vindictiveness.'" *Id.* at 314-15; *see United States v. P.H.E., Inc.*, 965 F.2d 848, 860 (10th Cir. 1992) (holding that defendants established "a presumption of vindictiveness" by "showing that the indictment is the tainted fruit of a prosecutorial attempt to curtail . . . First Amendment protected speech").

That likelihood of vindictiveness gains additional force by the timing of this prosecution. The classic examples of vindictive prosecutions feature government retaliation against a defendant "for exercising a procedural right during his prosecution," such as when the "prosecutor punishes [a defendant] by tacking on more charges" after the defendant successfully appeals his conviction. *United States v. Carey*, 816 F. Supp. 3d 129, 138 (D.D.C. 2026); *see Blackledge*, 417 U.S. at 28-29. Generally, "the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution." *LaDeau*, 734 F.3d at 569. For that reason, courts are especially likely to presume vindictiveness when a defendant's exercise of procedural rights "saddle[s]" the government "with the prospect of restarting [the] prosecution from scratch," *id.*, or brings "embarrassment to the Executive Branch," *Abrego Garcia I*, 802 F. Supp. 3d at 1062.

Those principles strongly support a presumption of vindictiveness here. The DOJ accelerated an investigation that had sputtered and secured this indictment only after Mr. Comey

28

obtained dismissal of the indictment in the Eastern District of Virginia. That dismissal halted the first case against Mr. Comey and could require the government to bring a new "prosecution from square one" (absent a successful appeal). *LaDeau*, 734 F.3d at 570. The dismissal also delivered a blow to the DOJ, resulting in Ms. Halligan's departure and the demotion or departure of several career prosecutors. *See* Perry Stein, *DOJ sees fallout after push to prosecute former FBI director James Comey*, Wash. Post (May 9, 2026), https://bit.ly/4xcxX3A. With the Eastern District of Virginia case moribund, the government jumpstarted a sluggish investigation in this district and ultimately obtained an indictment of Mr. Comey based on a nearly year-old social media post.

The reasons that sometimes counsel against a presumption of vindictiveness do not apply here. As a general matter, "[t]he presumption of vindictiveness 'will rarely, if ever, be applied to prosecutors' pretrial decisions.'" *United States v. Villa*, 70 F.4th 704, 711 (4th Cir. 2023) (citation omitted). But that reluctance applies where the government increases charges in the same case after a defendant has filed a routine "pretrial motion[] asserting rights associated with the suppression of evidence" or "the sufficiency and form of the indictment." *Id.* Mr. Comey's successful motion here was far from routine: it challenged the irregular processes used to install a White House aide as interim U.S. Attorney for the purpose of prosecuting the President's perceived political enemies. The motion thus challenged the White House, the Attorney General, and functioning of an entire U.S. Attorney's Office.

It is also immaterial that the new indictment here charges Mr. Comey with "different conduct than the first" indictment. *Villa*, 70 F.4th at 712. The reliance on new conduct usually means that the new charge "was based on evidence the prosecutor did not have when making the initial charging decision." *Id.* Here, by contrast, the government turned to an aging investigation on stale facts only after dismissal of the indictment in the Eastern District of Virginia. And that

29

revived investigation focused on "the *same conduct*"—the seashells social media post—that "animated" the initial investigation, demonstrating that no "newly discovered evidence" justified the investigation's sudden acceleration. *Id.* at 712-13 (quotation omitted). Nothing in Fourth Circuit precedent precludes application of the presumption of vindictiveness here.

Nor is this a typical multi-district prosecution. In the usual multi-district case, the subsequent prosecutor in a different jurisdiction has no "personal stake" in the unrelated prior prosecution. *Wilson*, 262 F.3d at 319-20. But here, the objective evidence establishes that President Trump, Ms. Bondi, Mr. Blanche, and Director Patel orchestrated a coordinated effort to prosecute Mr. Comey across a variety of jurisdictions. *See supra* pp. 15-16. This case thus resembles *P.H.E.*, where the "government" as a whole "conduct[ed] a campaign against the [defendants] aimed at driving [a] company … out of business entirely, using the primary strategy of forcing [the defendants] to expend massive funds in defense costs in repeated criminal prosecutions." 965 F.2d at 854; *see id.* at 860 (finding "a realistic likelihood of vindictiveness" in those circumstances). As the D.C. Circuit has explained, the vindictive prosecution analysis "focuse[s] on the conduct of the government as a whole, rather than on the conduct or retributive sentiments of a single prosecutor." *United States v. Meyer*, 810 F.2d 1242, 1248 (D.C. Cir. 1987).

The likelihood of vindictiveness here finds further support in the pattern of similar conduct by this same DOJ—and Acting Attorney General Blanche in particular. In *United States v. Abrego Garcia* (*Abrego Garcia II* ), 2026 WL 1454303, at \*1 (M.D. Tenn. May 22, 2026), the Middle District of Tennessee recently dismissed a case against Kilmar Abrego Garcia as a vindictive prosecution. After the government erroneously removed Abrego Garcia from the United States, he successfully challenged his removal. Days later, the government reopened a moribund, three-year-old investigation into a traffic stop of Abrego Garcia and brought charges. *Abrego Garcia I*,

802 F. Supp. 3d at 1059-60.  The district court held that Abrego Garcia was entitled to discovery

and a hearing because "there [was] a realistic likelihood that the prosecution against him may be

vindictive."  *Id.* at 1062.  In so holding, the court specifically relied on the "timing of Abrego's

indictment" and "remarkable statements" by then-Deputy Attorney General Blanche, which "could

directly establish that the motivations for Abrego's criminal charges stem from his exercise of his

constitutional and statutory rights."  *Id.* at 1061, 1064.  Following an evidentiary hearing, the court

held that the government had "failed to rebut the presumption of vindictiveness" and thus

dismissed the indictment.  *Abrego Garcia II*, 2026 WL 1454303, at \*3.

Other cases confirm the DOJ's use of coercive legal process to achieve impermissible ends,

establishing that the presumption of regularity is unwarranted in current circumstances.  Recently,

various federal courts have blocked DOJ subpoenas targeting President Trump's political enemies,

including Minnesota Governor (and former vice-presidential candidate) Tim Walz, the 2020

election workers of Fulton County, Georgia, and former Federal Reserve Chairman Jerome Powell.

*See In re Grand Jury Subpoenas*, 2026 WL 1783899 (D. Minn. June 22, 2026) (Minn. Order);

*Fulton Cnty. Bd. of Registration & Elections v. United States*, 2026 WL 1959461 (N.D. Ga. July

7, 2026) (Ga. Order); *In re Grand Jury Subpoenas*, 823 F. Supp. 3d 1 (D.D.C. 2026) (D.C. Order).

Those courts described the quashed subpoenas as brought by a DOJ "now unquestionably under

the current President's control," Ga. Order, 2026 WL 1959461, at \*1, and designed to "harass

political opponents or to coerce them into taking official action," Minn. Order, 2026 WL 1783899,

at \*6, *see also* D.C. Order, 823 F. Supp. 3d at 4.  The same motivations lay behind this indictment.

To the extent the Court does not dismiss the indictment outright at this juncture, *Abrego*

*Garcia* charts the proper path here.  As there, the timing of this indictment, as well as government

officials' statements and actions raise the specter of vindictiveness.  Accordingly, the government

31

should at least be required to "rebut the presumption of vindictiveness" by "establishing that this prosecution was brought for legitimate, nonvindictive reasons." 2026 WL 1454303, at *7.

## II. THE GOVERNMENT HAS SELECTIVELY PROSECUTED MR. COMEY, IN VIOLATION OF EQUAL PROTECTION PRINCIPLES

The prosecution of Mr. Comey was not only vindictive, but also selective. Equal protection principles bar the government from selectively prosecuting individuals based on an arbitrary classification. That is what happened here.

### A. The Constitution Prohibits The Government From Selectively Prosecuting A Defendant For Arbitrary Reasons, Including For His Protected Speech

The "equal protection component of the Due Process Clause" prohibits the government from selectively deciding "whether to prosecute . . . based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotations omitted). Defendants most often invoke a selective-prosecution defense when the government has targeted them for membership in a protected class. *Id.* at 470. But a defendant may also raise a "class of one" claim by showing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979).

"To establish a selective-prosecution claim, a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citation omitted). The government has recognized that a defendant may be able to satisfy both selective-prosecution prongs by identifying "direct admissions by" government officials "of discriminatory purpose." *Armstrong*, 517 U.S. at 469 n.3 (citing Brief for United States). Absent such evidence, a defendant must establish "both

32

(1) that 'similarly situated individuals . . . were not prosecuted'" and "(2) that the decision to prosecute was 'invidious or in bad faith.'" *Olvis*, 97 F.3d at 743 (citations omitted).

### B. President Trump Has Directly Admitted That The Government Is Prosecuting Mr. Comey For An Impermissible Discriminatory Purpose

In most cases, "the 'presumption of regularity' that supports prosecutorial decisions" requires the defendant to "support a selective-prosecution claim with 'clear evidence'" that similarly situated individuals were not prosecuted. *Olvis*, 97 F.3d at 743 (citation omitted). But where the record shows that the government's actions reflect "bad faith or improper behavior," the presumption of regularity falls away. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). That is the case here.

The government's decision to prosecute an individual has an impermissible "discriminatory purpose" if it is based on the individual's exercise of constitutional rights or other "arbitrary" factors. *Wayte v. United States*, 470 U.S. 598, 608 (1985). Most relevant here, the government cannot selectively prosecute an individual "because of his exercise of First Amendment rights." *Id.* at 606-07; *see United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997) ("A prosecution . . . cannot be motivated by a suspect's exercise of constitutional rights through participation in political activity."). Nor can the government selectively prosecute an individual based on "personal or political bias" against that individual. *Torquato*, 602 F.2d at 568; *see Goodfellas, Inc. v. Dunkel*, 2016 WL 6599977, at *9 (M.D. Pa. Nov. 8, 2016) (explaining that a "prosecuting body's personal bias unrelated to suspect classifications may serve as a cognizable 'arbitrary factor' for purposes of a selective enforcement claim").

President Trump's own statements make clear that the government is prosecuting Mr. Comey based on such impermissible factors. *See supra* pp. 4-7, 12. Among other things, the

33

President's September 2025 instruction to the Attorney General to seek "JUSTICE" against Mr. Comey is a direct admission that the decision to prosecute Mr. Comey was not based on the DOJ's good-faith application of law to facts. Instead, it was based on President Trump's personal antipathy toward Mr. Comey. For that reason alone, this Court can conclude that the government has selectively prosecuted Mr. Comey in violation of his right to equal protection of the law.

**C.** **In Any Event, Clear Evidence Establishes That The Government Is Selectively Prosecuting Mr. Comey For Impermissible Reasons**

To the extent Mr. Comey must show that similarly situated individuals were not prosecuted, he can readily do so. And the objective evidence establishes an invidious and bad-faith motivation for this prosecution.

**1.** **The Government has declined to prosecute similarly situated individuals**

Absent a direct admission of discriminatory purpose, a defendant must present "evidence that the Government has failed to prosecute others who are similarly situated to the defendant." *Armstrong*, 517 U.S. at 469. That requirement is designed to "isolate the factor allegedly subject to impermissible discrimination." *Olvis*, 97 F.3d at 744 (citation omitted). "If all other things are equal, the prosecution of only those persons [to whom the factor applies] . . . gives rise to an inference of discrimination." *Id.* (alteration in original).

Here, clear evidence establishes that the government "failed to prosecute others who are similarly situated to" Mr. Comey. *Armstrong*, 517 U.S. at 469. As acting Attorney General Blanche recently acknowledged, the "86 47" term is "posted constantly." Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*, N.Y. Times (May 3, 2026), https://perma.cc/XV5W-4FHM. Amazon's records show that, from 2017 to May 15, 2025, approximately 209,052 items were available for sale on its ecommerce platform that displayed the

34

numbers "8645," "8646," or "8647." Fitzgerald Aff. ¶ 38. Yet as Mr. Blanche observed, "every one of those statements do not result in indictments." Barrett, *supra*. That is an understatement—Mr. Comey's prosecution appears to be the first indictment solely for publishing "86" in connection with a public official. Thus, "the Government has failed to prosecute others who are similarly situated to" Mr. Comey insofar as they made the exact same statement—combining "86" with a reference to a public official. *Armstrong*, 517 U.S. at 469. Indeed, the Secret Service attempted to change its policy regarding "8647" the day after the post precisely because the term had not been treated as a threat to the President before then. *See* Fitzgerald Aff. ¶ 36.

In addition, several public figures have recently made statements about government officials that were comparable to, or far more violent than, Mr. Comey's statement here. *None* was charged. *First*, on January 29, 2022, conservative media personality Jack Posobiec tweeted "86 46," a reference to then-President Biden. Jack Posobiec (@JackPosobiec), X (Jan. 29, 2022; 23:23 ET), https://perma.cc/6NUQ-X7LR. Mr. Posobiec, a former Trump campaign official and U.S. Navy Reserve intelligence officer, did not retract his post. He faced no criminal charges.

*Second*, on November 30, 2020, Joe diGenova—a former Trump campaign attorney and U.S. Attorney for the District of Columbia—used explicitly violent language in reference to Chris Krebs, a former Department of Homeland Security cybersecurity official. Mr. diGenova stated that Mr. Krebs "should be drawn and quartered. Taken out at dawn and shot." *Matthew Choi, Trump campaign lawyer says former cybersecurity chief should be 'shot,'* Politico (Nov. 30, 2020), https://perma.cc/6RQ5-WE8R. No criminal charges were brought against Mr. diGenova—instead, he was recently appointed to investigate Mr. Comey and others. *See supra* p. 16.

*Third*, on November 5, 2020, former Trump White House official Steve Bannon used violent language in reference to Dr. Anthony Fauci and then-FBI Director Christopher Wray. Mr.

35

Bannon declared: "I would actually like to go back to the old time of Tudor England. I'd put the[ir] heads on pikes, right. I'd put them at the two corners of the White House as a warning to federal bureaucrats: You either get with the program or you're gone." *Twitter bans a Steve Bannon account after he says Anthony Fauci and Christopher Wray should be beheaded*, CBS News (Nov. 6, 2020), https://perma.cc/45N5-2L5U. Twitter permanently suspended Mr. Bannon's account for "glorification of violence," and Facebook removed the video for violating its policy against violence and incitement. *Id.* No criminal charges were filed against Mr. Bannon.

*Fourth*, Representative Paul Gosar has repeatedly used violent images and rhetoric in reference to his political opponents. On November 8, 2021, Representative Gosar posted an anime video depicting himself stabbing a character resembling Representative Alexandria Ocasio-Cortez with a sword, before attacking a character resembling President Biden. Donie O'Sullivan, *Republican congressman posts video depicting violence against Ocasio-Cortez and Biden*, CNN (Nov. 10, 2021), https://perma.cc/X3LR-Z2UN. Representative Gosar initially deleted the video—but not before it had received more than 3 million views. After being censured by the House of Representatives, he reposted the video and refused to apologize. Melissa Quinn, *Paul Gosar re-shares controversial video after House censure*, CBS News (Nov. 18, 2021), https://perma.cc/H7KY-DQ46. In addition, on September 24, 2023, Representative Gosar wrote in a newsletter that "[i]n a better society, quislings like the strange sodomy-promoting General Milley would be hung." Amanda Macias, *Trump and GOP Rep. Gosar suggest Joint Chiefs boss Mark Milley deserves death*, CNBC (Sep. 25, 2023), https://perma.cc/GJ2T-JNUD. Representative Gosar has faced no criminal charges.

These public figures are "prima facie identical" to Mr. Comey "in all relevant respects." *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). Each of them engaged in

the same alleged conduct as Mr. Comey: issuing threatening public statements in reference to government officials—including the sitting President.  One (Mr. Posobiec) used the same "86" language as Mr. Comey; and while Mr. Comey's post was a nonviolent political statement, the statements made by diGenova, Bannon, and Gosar were explicitly violent.

All the other factors that "play important and legitimate roles in prosecutorial decisions" weigh in Mr. Comey's favor or are neutral.  *United States v. Venable*, 666 F.3d 893, 901 (4th Cir. 2012).  As to the "role in the [alleged] crime," *id.*, the comparators and Mr. Comey each conveyed allegedly threatening statements about public officials.  As noted, Mr. Comey's statement was far less overt because he merely posted a picture of someone else's seashell formation, whereas the other individuals themselves delivered their respective messages.  The "evidence against" all the comparators is the same as in Mr. Comey's case—namely, an online posting of the statement in question.  *Id.*  While Mr. Comey deleted the message within hours and explained that he did not intend to invoke violence, the comparators generally resisted removing or disclaiming their statements.  *See id.* at 902 (greater reason to prosecute an "obstreperous" individual).  And it is implausible that the "amount of resources required to convict" the comparators, or "the extent of prosecutorial resources" required to investigate those individuals, would have been materially different than the extensive resources marshalled against Mr. Comey.  *Id.* at 901.

In sum, "no distinguishable legitimate prosecutorial factors . . . might justify making different prosecutorial decisions with respect to" Mr. Comey, Mr. Posobiec, Mr. diGenova, Mr. Bannon, and Representative Gosar.  *Id.* at 900-01.  And yet, the government treated Mr. Comey differently.  "[C]lear evidence" therefore shows that Mr. Comey satisfies the first prong of his selective-prosecution claim.  *Olvis*, 97 F.3d at 743 (citations omitted).

37

### 2. The Government's prosecution of Mr. Comey is invidious and in bad faith

Having established that "similarly situated individuals . . . were not prosecuted," showing that the "decision to prosecute was 'invidious or in bad faith'" is straightforward. *Olvis*, 97 F.3d at 743 (citations omitted). The obvious difference between Mr. Comey and those other individuals is that Mr. Comey has been an outspoken critic of President Trump. *See supra* pp. 4-7. The other individuals, by contrast, are President Trump's political allies and appointees—and the targets of their public statements are President Trump's political opponents.

The prosecution of a defendant is also "invidious or in bad faith" if "it rests upon . . . the desire to prevent his exercise of constitutional rights." *United States v. Greene*, 697 F.2d 1229, 1234 (5th Cir. 1983). Courts have routinely held that a prosecution is arbitrary or invidious where, as here, clear evidence establishes that the government prosecuted an individual "because of his exercise of First Amendment rights." *Wayte*, 470 U.S. at 606; *see, e.g.*, *United States v. Falk*, 479 F.2d 616, 621 (7th Cir. 1973). And courts have held that a prosecution is arbitrary or invidious where, as here, clear evidence establishes that the prosecution is based on "personal or political bias" against the defendant. *Torquato*, 602 F.2d at 568; *see, e.g.*, *Goodfellas, Inc.*, 2016 WL 6599977, at *9. In short, Mr. Comey is being singled out for punishment based on his protected speech and the President's animus, in violation of equal protection principles.

### III. THE PROPER REMEDY IS DISMISSAL WITH PREJUDICE

A dismissal with prejudice is the only remedy that will vindicate constitutional values and deter the government from vindictively and selectively prosecuting perceived political opponents. In criminal cases, a federal court may use its "supervisory powers" to "implement a remedy" aimed at vindicating "recognized rights" and "deter[ring] illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). For instance, "the supervisory power can be used to dismiss an indictment

38

because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992) (citation omitted). As several courts of appeals have explained, such a dismissal may be with prejudice. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000); *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020).

To determine whether "government misconduct" "merit[s] dismissal with prejudice," courts typically consider three factors. They start by asking if "there is '(1) flagrant misbehavior and (2) substantial prejudice.'" *Bundy*, 968 F.3d at 1030-31. If the answer to both is yes, they assess whether (3) a "lesser remedial action" is available to the court that would still "fully address the damage caused by the government's misconduct." *Id.* at 1031, 1043. Here, those factors compel a dismissal with prejudice. The government has flagrantly violated the Constitution by prosecuting Mr. Comey based on his protected speech and based on personal animus and did so using improper means such as illegal electronic surveillance. In turn, that flagrant "misconduct" has caused "substantial prejudice" to Mr. Comey, *id.* at 1031, by forcing him to endure multiple unjustified criminal indictments. And any "lesser remedy" than dismissal with prejudice would fail to "fully address the damage caused by the government's misconduct." *Id.* at 1043. If the Court were to dismiss without prejudice, it would leave the government—led by the same President, Acting Attorney General, FBI Director, and likely the "number three" at the DOJ—free to continue its unconstitutional efforts. To prevent that affront to the integrity of the criminal justice system, dismissal must be with prejudice.

IV.    **AT MINIMUM, DISCOVERY AND A HEARING ARE WARRANTED, AS THERE IS A REALISTIC LIKELIHOOD OF VINDICTIVENESS AND SELECTIVENESS**

A defendant may obtain "discovery on the government's prosecutorial decisions" by "advancing objective evidence tending to show" that the prosecution was motivated by vindictive animus. *Wilson*, 262 F.3d at 315. Similarly, "to obtain discovery" on a selective-prosecution

39

claim, a defendant "must produce some evidence making a credible showing" of a violation. *Venable*, 666 F.3d at 900.

As explained above, the record before the Court readily establishes "a realistic likelihood of 'vindictiveness,'" *Wilson*, 262 F.3d at 314 (citations omitted), and a "credible showing" of selectiveness, *Venable*, 666 F.3d at 900. *See supra* pp. 18-38. In light of those showings, if the Court does not dismiss the indictment on this record, it should order discovery into "the government's prosecutorial decisions" in this case. *Wilson*, 262 F.3d at 315. When such "discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim." *Armstrong*, 517 U.S. at 468. Here, such documents could include evidence of investigations, declination memoranda, or prosecutions of threats against Presidents Trump or Biden using the "86" formulation. It could also include communications between the President, former Attorney General Bondi, Acting Attorney General Blanche, Director Patel, the "number three" at the DOJ, U.S. Attorney Boyle, and the Secret Service relating to the investigation and prosecution of Mr. Comey, including in the Eastern District of Virginia. Following such discovery, the burden must "shift[] to the government to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315; *see Goodwin*, 457 U.S. at 376 n.8. Thus, to the extent the Court concludes that the record does not yet establish actual vindictiveness or selectiveness, it should allow discovery and hold an evidentiary hearing at which appropriate government officials can testify and face cross examination. *See Abrego Garcia I*, 802 F. Supp. 3d at 1065.

## CONCLUSION

For the foregoing reasons, the indictment should be dismissed with prejudice.

40

Dated: July 28, 2026

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/   Joseph Zeszotarski*
Joseph Zeszotarski
(N.C. Bar No. 21310)
Gammon & Zeszotarski, PLLC
P.O. Box 1127
Raleigh, NC 27602
Telephone: 919-521-5878
jzeszotarski@ghz-law.com

*Local Rule 57.1 Counsel for Defendant*

Patrick J. Fitzgerald*
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

*/s/   Ephraim A. McDowell*
Ephraim A. McDowell*
(D.C. Bar No. 1631429)
Alexander J. Kasner*
(Cal. Bar No. 310637)
Elias S. Kim*
(D.C. Bar No. 1673678)
Dev P. Ranjan*
(D.C. Bar No. 90019329)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
emcdowell@cooley.com
akasner@cooley.com
ekim@cooley.com
dranjan@cooley.com

Rebekah Donaleski*
(N.Y. Bar No. 4986246)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000

41

rdonaleski@cooley.com

Michael R. Dreeben*
(D.C. Bar No. 370576)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

*Special Appearance pursuant to Local Criminal Rule 57.1(e)*

*Counsel for Defendant James B. Comey, Jr.*

42

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 28th day of July 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/   *Ephraim A. McDowell*
Ephraim A. McDowell

*Counsel for Defendant James B. Comey, Jr.*