IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 4:26-cr-00016-FL-RN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JAMES B. COMEY JR.'S MEMORANDUM IN SUPPORT OF
MOTION FOR DISCLOSURE OF GRAND JURY PROCEEDINGS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 2

    A.     Grand Jury Proceedings Were Rife With Irregularities In The
            Government's Previous Attempt To Prosecute Mr. Comey ................................ 2

    B.     Irregularities Continue Throughout The Government's Second Flawed
            Investigation And Indictment ................................................................... 4

ARGUMENT ..................................................................................................................... 7

I.     THE GOVERNMENT'S CONSTITUTIONAL VIOLATIONS WARRANT
      DISCLOSURE OF GRAND JURY MATERIALS ................................................ 9

    A.     The Prior Defective Indictment Against Mr. Comey Confirms The Pattern ....... 10

    B.     Particularized Evidence Of Vindictive And Selective Prosecution Supports
            Disclosure ...................................................................................... 11

    C.     The "No True Threat" Defect Amplifies The Risk of Irregularity ..................... 12

II.     THE RISK THAT THE GOVERNMENT MISREPRESENTED MATERIAL
      ISSUES OF FACT AND LAW BEFORE THE GRAND JURY WARRANTS
      DISCLOSURE ....................................................................................... 14

    A.     Disclosure Could Establish That The Government Misrepresented
            Material Facts In Its Grand Jury Presentation ........................................ 14

         1.     The search warrant affidavits contain multiple material
               misrepresentations .................................................................. 14

    B.     Disclosure Could Establish That The Government Misstated Essential
            Elements Of Both Counts .................................................................... 17

    C.     The Inherently Suspect Procedures That Led To The Indictment Reinforce
            The Need For Review ........................................................................ 18

III.     THE BALANCE OF INTERESTS WEIGHS STRONGLY IN FAVOR OF
       DISCLOSURE OR IN CAMERA REVIEW ................................................... 19

CONCLUSION ............................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988)...................................................................................................... *passim*

*Counterman v. Colorado*,
600 U.S. 66 (2023)...............................................................................................................13

*In re Grand Jury Proc. GJ-76-4 & GJ-75-3*,
800 F.2d 1293 (4th Cir. 1986) .......................................................................................8, 19

*Richman v. United States*,
2025 WL 3505458 (D.D.C. Dec. 6, 2025)..............................................................................4

*Richman v. United States*,
350 F.R.D. 401 (D.D.C. 2025)...............................................................................................4

*United States v. Abcasis*,
785 F. Supp. 1113 (E.D.N.Y. 1992) .......................................................................................7

*United States v. Comey*,
809 F. Supp. 3d 396 (E.D. Va. 2025) ............................................................................ *passim*

*United States v. Comey*,
810 F. Supp. 3d 768 (E.D. Va. 2025) .............................................................................3, 10

*United States v. Loc Tien Nguyen*,
314 F. Supp. 2d 612 (E.D. Va. 2004) .......................................................................8, 14, 19

*United States v. Lockhart*,
382 F.3d 447 (4th Cir. 2004) ..............................................................................................13

*United States v. Monsoor*,
77 F.3d 1031 (7th Cir. 1996) ..............................................................................................11

*United States v. Naegele*,
474 F. Supp. 2d 9 (D.D.C. 2007).....................................................................................8, 14

*United States v. Peralta*,
763 F. Supp. 14 (S.D.N.Y. 1991)........................................................................................12

*United States v. Procter & Gamble Co.*,
356 U.S. 677 (1958).............................................................................................................20

ii

*United States v. Sanders*,
211 F.3d 711 (2d Cir. 2000).................................................................................11

*United States v. Sells Eng'g, Inc.*,
463 U.S. 418 (1983)...............................................................................................7

*United States v. Stevens*,
771 F. Supp. 2d 556 (D. Md. 2011) .........................................................12, 13, 14

*United States v. Vandevere*,
849 F. App'x 69 (4th Cir. 2021) ..........................................................................13

*United States v. White*,
670 F.3d 498 (4th Cir. 2012) ...............................................................................13

*United States v. Williams*,
504 U.S. 36 (1992)..................................................................................................7

*Watts v. United States*,
394 U.S. 705 (1969)...............................................................................................10

**Statutes**

18 U.S.C.
§ 871........................................................................................................................14
§ 871(a) ........................................................................................................4, 10, 17
§ 875........................................................................................................................14
§ 875(c) ........................................................................................................4, 10, 17

28 U.S.C. § 546.................................................................................................................3

**Other Authorities**

*Apology*, Merriam-Webster...........................................................................................6

Ben Penn, *Top Comey Prosecutor Parroted Trump on Way to Targeting His Foe*,
Bloomberg Law (Apr. 30, 2026)............................................................................5

D. Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged
Like Comey*, N.Y. Times (May 3, 2026)..................................................................18

DOJ, *Acting AG Blanche Announces Federal Grand Jury Indicts Former FBI
Director for Threats to Harm POTUS* (YouTube, Apr. 29, 2026) ...........................5

DOJ, *Federal Grand Jury Indicts Former FBI Director James Comey for Threats
to Harm President Trump* (Apr. 28, 2026) ..............................................................5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Federal Rule of Criminal Procedure

6(e) ...................................................................................................................................19

6(e)(3)(E)(ii) ............................................................................................. *passim*

iv

**<u>INTRODUCTION</u>**

The record in this case raises a significant risk that irregularities in the grand jury process influenced the grand jury to return an indictment. Thus, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), defendant James B. Comey, Jr., respectfully requests that the Court direct the government to disclose the transcripts and audio recordings of all proceedings before the grand jury in this case, or alternatively review them *in camera* to determine if disclosure is warranted. Although grand jury proceedings are typically entitled to a presumption of regularity, the irregularities surrounding the return of the indictment in this case overcome that presumption and warrant disclosure of the grand jury record.

Two independent grounds support disclosure. First, as Mr. Comey has argued in concurrent motions, this indictment arises from multiple constitutional violations. Those violations warrant dismissal regardless of any grand jury misconduct, but they also support a reasonable inference of irregularities before the grand jury. Second, the circumstances surrounding the return of the indictment in this case indicate that the government may have misstated key factual and legal issues to the grand jury. Despite the absence of any true threat of violence in Mr. Comey's social media post depicting seashells arranged to state a common political slogan, the government sought a prosecution here in response to President Trump's vindictive campaign against political enemies. Facing mounting pressure from the highest levels of the Department of Justice to indict Mr. Comey and persistent failures to find any evidentiary support for the government's core factual theory, the government misrepresented and omitted key relevant facts to obtain further search warrants. Each of these irregularities independently warrants disclosure of grand jury materials, or in the alternative, *in camera* review.

Indeed, the government has already lost its presumption of regularity in its efforts to indict Mr. Comey. In *United States v. Comey*, 809 F. Supp. 3d 396 (E.D. Va. 2025), Magistrate Judge

1

Fitzpatrick reviewed the grand jury materials from Mr. Comey's prior prosecution in the Eastern District of Virginia and granted disclosure. He found that the government's actions raised "genuine issues of misconduct" that were "inextricably linked to the government's grand jury presentation." *Id.* at 413. The irregularities in this case likewise warrant disclosure, or at minimum, *in camera* review of the grand jury materials.

## STATEMENT OF FACTS

### A. Grand Jury Proceedings Were Rife With Irregularities In The Government's Previous Attempt To Prosecute Mr. Comey

Mr. Comey incorporates by reference the Statements of Facts in his concurrently filed motions and sets forth additional relevant facts to this motion here. *See* Mem. in Support of Mot. to Dismiss for Vindictive and Selective Prosecution at 2–18 (MTD Vindictive Prosecution); Mem. in Support of Mot. to Dismiss for Lack of a True Threat (MTD True Threat) at 3–8; Mot. to Suppress and for *Franks* Hearing at 2–12 (Mot. to Suppress).

On September 25, 2025, Lindsey Halligan secured an indictment of Mr. Comey for alleged false statements to Congress. *See* MTD Vindictive Prosecution at 24–25. It was her fourth day in office. Ms. Halligan had been a special assistant to the President, a former personal attorney for Mr. Trump, and had no prosecutorial experience. Days earlier, President Trump had explicitly pressed then-Attorney General Pam Bondi to prosecute Mr. Comey and other perceived political enemies, noting "Lindsey Halligan is a really good lawyer, and likes you, a lot." *Id.* The grand jury proceedings that produced that indictment were highly irregular. After an initial no-true-bill on a three-count indictment, the grand jury remained well past normal court hours and returned a true bill on a new two-count indictment by a two-vote margin, at 6:47 p.m. *United States v. Comey*, No. 25-cr-272 (E.D. Va. Sept. 26, 2025), Dkt. 10.

In that case, mounting investigative irregularities and persistent issues filtering Mr.

Comey's privileged information led Magistrate Judge Fitzpatrick to review the grand jury materials *in camera*. In doing so, he identified serious irregularities, including: (1) a tainted witness who had been briefed on potentially privileged communications between Mr. Comey and his attorneys on the very day he testified as the sole grand jury witness; (2) two fundamental misstatements of law by the prosecutor to the grand jury; and (3) a transcript that likely did not reflect the full proceedings, given an irreconcilable timeline surrounding the second indictment. *Comey*, 809 F. Supp. 3d at 408–13. Magistrate Judge Fitzpatrick ordered full disclosure, finding Mr. Comey's right to due process greatly outweighed the policies underlying grand jury secrecy. *Id.* at 413–14. Judge Nachmanoff stayed the order and directed further briefing. *United States v. Comey*, No. 25-cr-272 (E.D. Va. Nov. 17, 2025), Dkt. 197. But the matter was never decided on the merits because Judge Currie of the District of South Carolina—who had been designated to resolve the lawfulness of Ms. Halligan's appointment as U.S. Attorney—dismissed the indictment on the grounds that Ms. Halligan's appointment was invalid under 28 U.S.C. § 546 and the Appointments Clause. *United States v. Comey*, 810 F. Supp. 3d 768, 771, 781–82 (E.D. Va. 2025). Judge Currie too noted irregularities in the grand jury record, including that "there appeared to be a gap in the grand jury transcript from 4:28 p.m. to 6:47 p.m., when the indictment was returned to the magistrate judge." *Id.* at 775. In an unsworn statement, Ms. Halligan had represented to the court that "'the period in question consisted solely of the grand jury's private deliberations.'" *Id.* (citations omitted).

Over the course of the government's first attempt to indict Mr. Comey, a years-long pattern emerged of a "cavalier" attitude toward Mr. Comey's entitlement to his constitutional rights. *See Comey*, 809 F. Supp. 3d at 406. As Magistrate Judge Fitzpatrick recounted, the government seized materials from Daniel Richman, a professor at Columbia University and former Special

Government Employee at the FBI, in 2017, 2019, and 2020 pursuant to an investigation into alleged disclosures of classified information. *See id.* at 404–409. The government excluded Mr. Comey from the filter process, even though Mr. Richman had represented Mr. Comey since May 2017. *Id.* at 405. No charges resulted from the various leak investigations. The Richman materials sat dormant until the summer of 2025, when the FBI searched through them pursuant to the EDVA investigation without seeking a new warrant. *Id.* at 407. The lead case agent was briefed on those materials, including that they might contain privileged communications, shortly before he testified as the sole witness before the EDVA grand jury. *Id.* at 407–08. That chain of events contributed significantly to the court's decision to order the disclosure of the grand jury proceedings. *Id.* at 412–13.

Shortly after the dismissal of the EDVA indictment, Mr. Richman obtained a restraining order directing the government to secure the materials and refrain from further access. *Richman v. United* States, 2025 WL 3505458, at *2 (D.D.C. Dec. 6, 2025). On December 12, the court ordered the government to relinquish all copies of the materials, holding that its warrantless 2025 search of Mr. Richman's electronic records violated his Fourth Amendment rights. *Richman v. United States*, 350 F.R.D. 401, 405 (D.D.C. 2025).

B.     **Irregularities Continue Throughout The Government's Second Flawed Investigation And Indictment**

On April 28, 2026, U.S. Attorney W. Ellis Boyle, following recently appointed Acting Attorney General Todd Blanche's instructions, secured an indictment of Mr. Comey for allegedly making a threat to kill or harm the President, in violation of 18 U.S.C. §§ 871(a) and 875(c), based solely on Mr. Comey's Instagram post of seashells depicting the numbers "86 47." Dkt. 1. The indictment was signed only by Matthew Petracca, who became an AUSA two days before seeking

the indictment.[1]  Other prosecutors who had worked on the matter, including one who had been temporarily assigned to the EDVA prosecution, had departed before he arrived.  Ben Penn, *Top Comey Prosecutor Parroted Trump on Way to Targeting His Foe*, Bloomberg Law (Apr. 30, 2026), https://perma.cc/LE5D-4A4E.  Mr. Petracca has since withdrawn as lead prosecutor.[2]  Dkt. 16.

In a press release announcing the indictment, FBI Director Kash Patel stated "James Comey disgracefully *encouraged* a threat on President Trump's life and posted it on Instagram for the world to see," DOJ, *Federal Grand Jury Indicts Former FBI Director James Comey for Threats to Harm President Trump* (Apr. 28, 2026), https://perma.cc/T7PE-K5UM (emphasis added), a theory that is legally distinct from and inconsistent with the "true threat" charges alleged in the indictment.  *See infra* at 12–14; 17–18.  The following day, Director Patel appeared alongside Acting Attorney General Blanche and U.S. Attorney Boyle at a press conference announcing the indictment.  DOJ, *Acting AG Blanche Announces Federal Grand Jury Indicts Former FBI Director for Threats to Harm POTUS* (YouTube, Apr. 29, 2026), https://bit.ly/3TdL85D.  Director Patel stated that after making the seashells post, Mr. Comey issued an "apology" and that the grand jury was told that "James Comey allegedly threatened the life of the President of the United States, and as you all now know, shortly after posting that threat he deleted that threat and then issued an apology."  *Id.* at 05:33–05:48.  The word "apology"

---

[1] Mr. Petracca had previously served as a Special Assistant United States Attorney in the EDNC. His appointment as an Assistant United States Attorney became effective on April 26, 2026.

[2] We note that Mr. Petracca was at all times professional in his interaction with the defense team.  We only note his limited experience in that it is unusual in most circumstances for such a high-profile case to be delegated to a junior attorney.

implies wrongdoing[3] and thus the grand jury appears to have been led to believe that Mr. Comey made an admission of wrongdoing.  Mr. Comey did not.  He withdrew his earlier post in an abundance of caution and clarified that it was not intended to call for violence.

As further detailed in the Motion to Suppress and for a *Franks* Hearing, following the indictment, the government continued to investigate.  Mot. to Suppress at 11–12.  On May 20, 2026, the case agent obtained a warrant requiring Google to disclose information related to Gmail accounts held by Mr. Comey and his wife Patrice Comey.  *See id.* at 12.  As with the earlier affidavit for the Apple warrant, this affidavit claimed that "86" has violent connotations originating in organized crime, noted Mr. Comey's extensive experience prosecuting organized crime, and omitted the government's increasingly extensive (and failed) efforts to substantiate the link between Mr. Comey's government service and his awareness of a violent meaning of the term "86."  *Id.* at 12.  The Google affidavit also repeated the previous affidavit's inaccurate summary of the first interview with Person-1.  And, once again, there was no discussion of Person-1's bias, lack of direct contact with Mr. Comey for years, or their statement about their prior need for rehabilitation.  *Id.*

At the end of May 2026, Mr. Comey learned from reviewing the government's discovery materials that the prosecution team had searched and retained confidential attorney-client communications between Mr. Comey and at least two of his attorneys, David Kelley and Mr. Richman.  *See* Aff. of Patrick Fitzgerald filed concurrently herewith (Fitzgerald Aff.) ¶ 40.  In the government's initial attorney-client filter protocol, it had filtered only for Mr. Kelley's office

---

[3] Merriam-Webster dictionary states that an apology "usually applies to an expression of regret for a mistake or wrong with implied admission of guilt or fault and with or without reference to mitigating or extenuating circumstances." *Apology*, Merriam-Webster, https://perma.cc/X8N2-T5R2.

landline numbers and not his cellphone number. Notwithstanding the prior judicial statements suggesting that the government mishandled Mr. Comey's privileged communications with Mr. Richman, the government made no provision whatsoever to screen Mr. Richman's communications. *Id.*

By emails dated June 3, 2026 and June 5, 2026, the government agreed to quarantine two text conversations with Mr. Kelley and represented that those communications were reviewed by the First Assistant, two AUSAs, the case agent and an FBI supervisor, but only after the indictment was obtained.

## ARGUMENT

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a court may order the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). That rule strikes a balance between two competing principles of criminal law. The first is that courts have the authority to "dismiss an indictment because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988)). That authority would be meaningless if defendants were unable to access grand jury materials to inform the court about potential misconduct. At the same time, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (citation omitted). For that reason, courts must exercise caution when determining whether to order the disclosure of grand jury materials.

After balancing the relevant interests, courts may order disclosure under Rule 6(e)(3)(E)(ii) when defendants "establish[] that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the

7

indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (citing *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992)) (internal quotation marks omitted). That standard prevents fishing expeditions, *id.* at 616–17, but also recognizes that the consensus among district courts that disclosure is appropriate when a defendant demonstrates a "particularized need" for grand jury materials. *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007) (citing cases). The Fourth Circuit has held that this particularized-need inquiry requires the Court to "balance the petitioner's need for release against the traditional public interest reasons for grand jury secrecy," and that disclosure is appropriate only where the need outweighs those interests. *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298 (4th Cir. 1986) (citation omitted).

Nor can this burden "be satisfied with conclusory or speculative allegations of misconduct." *Nguyen*, 314 F. Supp. 2d at 616 (quotations omitted). But the defendant also need not prove misconduct occurred. The standard requires only that grounds "may exist" to dismiss. Fed. R. Crim. P. 6(e)(3)(E)(ii). As Magistrate Judge Fitzpatrick recognized in the prior *Comey* matter, when "the government's actions in [a] case—whether purposeful, reckless, or negligent— raise genuine issues of misconduct" and are "inextricably linked to the government's grand jury presentation," they "deserve to be fully explored by the defense." *Comey*, 809 F. Supp. 3d at 413.

This case presents multiple "particularized and factually based grounds" that warrant disclosure of grand jury materials. *See id.* at 401.

*First*, as Mr. Comey explains in two motions to dismiss, the indictment should be dismissed because it arises from real and substantial improper conduct and that conduct supports a reasonable inference of irregularities before the grand jury—irregularities so severe and pervasive that they at least gave rise to "grave doubt that [the grand jury's] decision to indict was free from [improper]

8

influence." *Bank of Nova Scotia*, 487 U.S. at 263.  More specifically, the chain of events that led to this indictment involved public and prominent evidence that (1) it was driven by improper animus and (2) it seeks to punish conduct protected by the First Amendment and outside the scope of either charged statute.

*Second*, the highly irregular procedures that led to the indictment create a significant risk that the government misrepresented key issues of fact and law to the grand jury.  The search warrant affidavits filed in this case one month before and one month after the indictment contain similar material misrepresentations and omissions about the government's core factual and legal theory, which gives rise to the inference that those misrepresentations carried into the grand jury room.  And all of this occurred in a matter where the initial stages of the investigation involved illegal electronic surveillance of Mr. Comey that occurred following a request for such surveillance by a high-level DOJ official.  Fitzgerald Aff. ¶¶ 5–7.

*Third*, each of these grounds independently warrants the disclosure of grand jury materials under Rule 6(e)(3)(E)(ii) to allow the defense to show that irregularities warrant dismissal of the indictment.  And, taken together, Mr. Comey has demonstrated substantial particularized need for disclosure of grand jury materials that greatly outweighs traditional reasons for grand jury secrecy. *See Comey*, 809 F. Supp. 3d at 413–14.

I.  **THE GOVERNMENT'S CONSTITUTIONAL VIOLATIONS WARRANT DISCLOSURE OF GRAND JURY MATERIALS**

The constitutional irregularities that pervade this prosecution provide substantial grounds for disclosure.  Mr. Comey has filed two motions to dismiss the indictment based on the government's constitutional violations in this case.  One of those motions argues that the government has singled out Mr. Comey for prosecution because of his protected speech and because of President Trump's personal animus toward Mr. Comey. *See generally* MTD Vindictive

Prosecution. Such a prosecution violates the First Amendment, Due Process Clause, and equal protection principles. *See generally id.* The other argues that the indictment fails to allege a "true threat" within the meaning of 18 U.S.C. §§ 871(a) and 875(c), and that Mr. Comey's post is protected political speech under *Watts v. United States*, 394 U.S. 705 (1969), and its progeny, *see generally* MTD True Threat, and thus the indictment targeted protected speech at the heart of the First Amendment.

Although those motions must be decided on their own merits, the conduct described in both motions raises a strong possibility that there were "irregularities in the grand jury proceedings" that would provide a "basis for dismissal of the indictment." *Nguyen*, 314 F. Supp. 2d at 616 (citations omitted). The record of vindictive prosecution and legal deficiency does not stop at the grand jury door; it is precisely the type of conduct that, if reflected in the grand jury presentation, would warrant dismissal and thus warrants disclosure.

### A. The Prior Defective Indictment Against Mr. Comey Confirms The Pattern

The record in this case shares critical features with the prior prosecution that led Magistrate Judge Fitzpatrick to grant full disclosure of grand jury materials.[4] That history is not mere background. It provides a factual and legal baseline against which this Court can and should assess the government's conduct in this case. In the prior case, Magistrate Judge Fitzpatrick concluded

---

[4] Judge Currie, in assessing the legality of Ms. Halligan's appointment, also ordered the government to produce for *in camera* review "all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts" at the outset of motion practice, before the parties had even fully briefed the disclosure question. *United States v. Comey*, No. 25-cr-272 (E.D. Va. Oct. 28, 2025), Dkt. 95. That order reflected the district court's own recognition that the grand jury record warranted scrutiny given the circumstances of the indictment. Judge Currie later concluded that dismissal of the indictment was necessary in part because Ms. Halligan as an "unconstitutionally appointed prosecutor. . . acted alone in conducting a grand jury proceeding and securing an indictment. In light of the near-complete control that prosecutors wield over the grand-jury process, such an error necessarily 'affect[s] the entire framework within which the proceeding occurs.'" *Comey*, 810 F. Supp. 3d at 784 (internal citations omitted) (alteration in original).

that the procedural irregularities were "inextricably linked to the government's grand jury presentation" and "raise[d] genuine issues of misconduct" that "deserve[d] to be fully explored by the defense." *Comey*, 809 F. Supp. 3d at 413.

The parallels to this case are substantial and specific. In the leadup to both indictments, there was mounting public Presidential pressure to indict Mr. Comey; and career lawyers either departed the government or refused to participate, thus necessitating outsiders to step in and present the case to the grand jury. Moreover, as already explained, there are serious constitutional issues with both prosecutions.

Those parallels, combined with other indicia of potential factual and legal misrepresentations, create further particularized grounds to support a reasonable inference of irregularities before the grand jury.

### B. Particularized Evidence Of Vindictive And Selective Prosecution Supports Disclosure

Disclosure of the grand jury materials would allow the Court to assess whether the same animus that drove the charging decision infected the grand jury presentation. President Trump has spent nearly a decade publicly attacking Mr. Comey's speech and character and calling for his prosecution. *See* MTD Vindictive Prosecution, Ex. A. Through his statements, the President "prevail[ed] upon" his political subordinates in the DOJ—including Acting Attorney General Blanche, Director Patel, and U.S. Attorney Boyle—"to bring the charges" against Mr. Comey, such that they "could be considered … 'stalking horse[s].'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000); *see United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) (where another party "in some way prevail[s] upon the prosecutor in making the decision to seek an indictment," the "ill will, whoever its bearer," may be "imputed to federal prosecutors"). Indeed, the prosecutor who opened this case felt the need to document, in writing, that he had opened this

11

case because he was "ordered to," a telling indication that the line prosecutor took no responsibility for opening an unfounded and vindictive investigation.

That a new AUSA with limited federal criminal experience was brought in to present the case to the grand jury, along with Acting Attorney General Blanche's public signaling that he would be more aggressive against the President's targets, provides additional support for the inference that Mr. Comey would not have been prosecuted but for President Trump's animus. *See* MTD Vindictive Prosecution at 16–17.

Disclosure of the grand jury materials, or *in camera review*, is reasonably calculated to provide additional support for that argument. That the same material misrepresentations of fact and law appeared in warrant affidavits reviewed by senior levels of the U.S. Attorney's Office shortly before and after the indictment raise additional risk that the prosecutor who presented the case to the grand jury—who appears to have joined the case the week before the indictment —was destined to repeat those misrepresentations in his presentation. He was likely unaware of all the information that the people more familiar with the case failed to disclose. Indeed, it would be highly rational for a junior attorney new to a case to familiarize himself or herself with a detailed pleading sworn out under oath one month earlier and assume that it is a reliable accounting of the facts. These circumstances raise "grave doubt that the decision to indict was free from the substantial influence" of erroneous statements that would constitute prejudicial irregularities warranting dismissal. *See United States v. Stevens*, 771 F. Supp. 2d 556, 566–67 (D. Md. 2011) (citing *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991)); *Bank of Nova Scotia*, 487 U.S. at 256; *see infra* at 14–19 (discussing material misrepresentations of fact and law repeated across warrant applications).

### C. The "No True Threat" Defect Amplifies The Risk of Irregularity

The legal defects in the indictment create an independent risk that the grand jury was

12

wrongly instructed on the law it was asked to apply. Mr. Comey's Motion to Dismiss for Lack of a True Threat establishes that his Instagram post was constitutionally protected political speech and not a true threat as a matter of law. A true threat requires a "serious expression" by the speaker of an intent to "commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). And the Fourth Circuit has made clear that a true threat requires the speaker to threaten violence herself. *See United States v. White*, 670 F.3d 498, 513 (4th Cir. 2012). Courts, including the Fourth Circuit, have consistently distinguished between true threats and "legitimate political hyperbole or jest." *United States v. Lockhart*, 382 F.3d 447, 452 (4th Cir. 2004). Under four factors identified by the Fourth Circuit—whether the statement was made in jest, to a public audience, expressed political opposition, and was conditional—Mr. Comey's post falls squarely within protected hyperbole. *See* MTD True Threat at 18–19 (citing *United States v. Vandevere*, 849 F. App'x 69, 70 (4th Cir. 2021)).

Disclosure of the grand jury materials would allow Mr. Comey to determine whether the government properly instructed the grand jury on the true-threat standard or instead used the incitement theory that the government's public statements advanced. If the grand jury was told that it could indict Mr. Comey for speech that "encouraged" violence by others, rather than speech that expressed his own intent to commit violence, that would be a serious misstatement of essential elements requiring dismissal. *See Stevens*, 771 F. Supp. 2d at 566–67.

To be clear, the government has conflated the two theories—threat and incitement—in every one of its search warrant applications and in its public statements both at the time of the seashell post in May 2025 and in announcing the indictment in April 2026. There is thus every reason to believe they did the same in the grand jury. If the FBI Director—with more than a decade of experience as a federal prosecutor and before that as a defense attorney—could not keep straight

13

the difference between a threat offense and an incitement offense in a press release after being involved in the case for eleven months, it would be naive to expect that grand jurors would know that a "potential call for violence" or a call for assassination, even if proved, is not a violation of 18 U.S.C. §§ 871 or 875.

**II.    THE RISK THAT THE GOVERNMENT MISREPRESENTED MATERIAL ISSUES OF FACT AND LAW BEFORE THE GRAND JURY WARRANTS DISCLOSURE**

"[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction." *Stevens*, 771 F. Supp. 2d at 566–67 (citations omitted).  The same principle applies to material misstatements of fact.  If the grand jury materials show that the prosecutor seriously misstated the applicable law and facts, those materials would provide an additional "basis for dismissal of the indictment."  *See Nguyen*, 314 F. Supp. 2d at 616.

**A.    Disclosure Could Establish That The Government Misrepresented Material Facts In Its Grand Jury Presentation**

**1.    The search warrant affidavits contain multiple material misrepresentations.**

The government's warrant affidavits are the most reliable proxy for what was likely presented to the grand jury, and they are materially misleading.  As described in greater detail in Mr. Comey's Motion to Suppress and for a *Franks* Hearing, the two search warrant affidavits filed in this case, the Apple Warrant (March 23, 2026) and the Google Warrant (May 20, 2026), contain a consistent set of factual assertions that are contradicted by the government's own investigation. *See generally* Mot. to Suppress.  The fact that the material misrepresentations and omissions were not cured between the pre- and post-indictment warrants creates the reasonable inference that they reflect the government's presentation to the grand jury.  Where a prosecutor's case rests on a

14

factual theory that the government itself could not substantiate, disclosure is warranted. *Cf. Naegele*, 474 F. Supp. 2d at 10–11.

*First*, both applications omitted information disproving the government's theory that Mr. Comey must have known that "86" can mean "kill" based on his experience prosecuting organized crime. Both affidavits advanced this theory, pointedly noting the purported origins of the violent use of "86" in organized crime and Mr. Comey's specific work experience. Apple Warrant Aff. at 18; Google Warrant Aff. at 18–19. But conspicuously absent from the affidavits was *any* mention of the government's repeated unsuccessful searches of law enforcement and case files to substantiate that connection—perhaps because all of those investigations supported Mr. Comey's assertion that he did not recall ever hearing "86" used to mean "kill" during his prosecutorial days. *See* Fitzgerald Aff. ¶¶ 22–32.

*Second*, both affidavits included slanted retellings of Person-1's statements to government investigators. Both affidavits averred that Person-1 "immediately perceived" Mr. Comey's post to contain a violent meaning. Apple Warrant Aff. at 18; Google Warrant Aff. at 24. But Person-1's own statements, which the case agent omitted from the affidavits, cast doubt on this account. In a transcribed interview from May 21, 2025, Person-1 stated that they had first interpreted "86" as being "out of something on the menu," but that they eventually concluded that Mr. Comey's message must have been "a call of violence." Fitzgerald Aff. ¶ 13. And in that same interview, Person-1 noted that they had listened to an episode of Rudy Giuliani's online show, where Mr. Giuliani claimed that the term "86" appeared in transcripts and tapes from organized-crime cases prosecuted by Mr. Comey—a claim that the FBI had determined to be false, but that Person-1 believed to support their conclusion. Indeed, the case agent reminded Person-1 in the April 2026 interview that Mr. Giuliani's May 2025 statements "referenced specific mob cases that Comey

15

worked on when he was a prosecutor in New York, and that there were several logs of videotapes and phone calls where the mobsters were saying 'we've got to 86 this guy.'" *See* Fitzgerald Aff. ¶ 14. But the case agent did not tell Person-1 that Mr. Giuliani's statement was proven untrue by her own investigation.

The affidavit in support of the Apple warrant included another omission related to Person-1: that affidavit studiously avoided mentioning Person-1's utter lack of credibility. Agent Floyd portrayed Person-1 as someone socially connected to the Comeys—and who therefore might have insight into Mr. Comey's thinking—and who believed Mr. Comey "must have known that '86 47' was a call for violence" due to Mr. Comey's "extensive experience as a lawyer and with the FBI." Apple Warrant Aff. at 18. What the affidavit failed to acknowledge was Person-1's express bias against Mr. Comey—including their pointed desire that "Jim goes to jail," *see* Fitzgerald Aff. ¶ 12—and that Person-1 had not communicated with Mr. Comey in years. Person-1 therefore lacked any personal insight into Mr. Comey's thinking. Nor did the affidavit disclose Person-1's issues leading to their need to enter rehabilitation. *Id.* ¶ 21.

That the government nevertheless proffered Person-1's opinion as probative of intent, while concealing the underlying unreliability, constitutes a material misrepresentation bearing on the only element in serious dispute: whether Mr. Comey knew his post could be interpreted as a threat.

*Third*, the affidavit in support of the Apple warrant falsely implied that Mr. Comey's attorney Mr. Kelley obstructed the investigation. The case agent averred that it was "notabl[e]" that Mr. Kelley responded to an investigator's informal request for "the photograph taken on the beach of the seashells" with a screenshot of the photograph, because the agent was "familiar with the method of sending screenshots of photographs rather than the original photos as an attempt to

16

hide metadata associated with the original images." Apple Warrant Aff. at 17. But Agent Floyd's suggestion that Mr. Kelley—a longtime federal prosecutor and former U.S. Attorney—deliberately concealed evidence from investigators was plainly false. The Secret Service investigator who requested the photograph never asked for the original file, even in response to Mr. Kelley's email containing the screenshot. *See* Mot. to Suppress at 19–20. And the timestamp and location, which are clearly visible in the screenshot itself, are consistent with Mr. Comey telling investigators the truth about when and where he captured the original photograph—on Emerald Isle, at 1:56 p.m. on May 15, 2025. Apple Warrant Aff. at 17.

The May warrant dropped this allegation, but substituted a new misleading insinuation about Ms. Comey's Google searches. *See* Mot. to Suppress at 21–22. This pattern of substituting one misleading allegation for another in a warrant application, while preserving the overarching misrepresentations, is exactly the type of conduct that merits review of the grand jury record. *Cf. Comey*, 809 F. Supp. 3d at 406 (noting the government's "cavalier attitude towards a basic tenet of the Fourth Amendment"). Any false indication to the grand jury that either Mr. Comey's lawyer or his spouse was obstructing justice would be extremely prejudicial.

### B. Disclosure Could Establish That The Government Misstated Essential Elements Of Both Counts

Both counts rest on a legal theory that was publicly described in terms inconsistent with the elements of the charged offenses, raising "grave doubt" that the grand jury was properly instructed. *See Bank of Nova Scotia*, 487 U.S. at 256. The indictment charges Mr. Comey with making a "threat to take the life of . . . or to inflict bodily harm upon" the President under 18 U.S.C. § 871(a) and transmitting that threat through interstate commerce, *see* 18 U.S.C. § 875(c). Both statutes require that the charged statement be a serious expression of the speaker's own intent to commit an act of unlawful violence—a "true threat." As Mr. Comey's Motion to Dismiss

establishes, that theory is legally inapplicable here. *See* MTD True Threat at 20–21.

The government's conduct raises a strong inference that it instead presented a different theory to the grand jury, one that conflates the true-threat standard with an incitement or "call to violence" theory. From the beginning, the public statements by the President, the former Secretary of Homeland Security, the President's son, and ultimately by FBI Director Patel upon the indictment, characterized Mr. Comey's post as a "call for assassination" or a directive to others to act violently. Mot. to Suppress at 5. That characterization describes incitement, not a true threat, and the two are legally distinct. MTD True Threat at 21 n.4. If the prosecution presented the incitement framing rather than the true-threat framing the indictment requires, the grand jury would have been wrongly instructed on essential elements of the offense.

The conflict between the government's public framing and the statutory standard it was required to present is not a minor inconsistency. The Acting Attorney General publicly acknowledged that "86 47" "is used constantly." D. Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*, N.Y. Times (May 3, 2026), https://perma.cc/CP8C-3EJ9. At the same time, the Administration pursued this prosecution solely on the basis of that phrase. If the government told the grand jury that the phrase was a "call for assassination" without clarifying that a true threat requires the speaker's own expression of intent to commit violence, the grand jury was affirmatively misled into returning an indictment.

### C. The Inherently Suspect Procedures That Led To The Indictment Reinforce The Need For Review

The procedures that generated this indictment are themselves a basis for inferring that the grand jury presentation was irregular. The case was opened because an AUSA was "ordered to" open it. The Secret Service's initial investigation concluded without charges and was ultimately transferred to the FBI. The FBI's investigation failed repeatedly over eight months to establish

18

the theory that Mr. Comey had been exposed to a particular violent interpretation of "86."  It was kicked into high gear only after Acting Attorney General Blanche signaled he would be "more efficient[]" than his predecessor against the President's targets.  MTD Vindictive Prosecution at 15.  Within weeks, the case was delegated to a junior prosecutor to indict two days after his appointment as an AUSA, and that prosecutor has since left the case and transferred to the Civil Division.  Fitzgerald Aff. ¶ 42.  Furthermore, in its haste to investigate and indict Mr. Comey, the government gathered and reviewed materials potentially containing privileged communications with two attorneys.  It did so even in the face of recent judicial decisions that found the government's treatment of Mr. Comey's entitlement to attorney-client privilege to be among its activities that "raise[d] genuine issues of misconduct" that were "inextricably linked to the government's grand jury presentation."  *Comey*, 809 F. Supp. 3d at 413.

These circumstances mirror the pattern that Magistrate Judge Fitzpatrick found sufficient to warrant disclosure in the prior case.  He described "a disturbing pattern of profound investigative missteps" led by a Department of Justice with a motive to indict rather than a professional assessment that the evidence supported charges.  *Comey*, 809 F. Supp. 3d at 414.  There is a reasonable inference that "inherently suspect procedures were used before the grand jury."  *Nguyen*, 314 F. Supp. 2d at 616 (internal quotations omitted); *see also Comey*, 809 F. Supp. 3d at 414.

III.    **THE BALANCE OF INTERESTS WEIGHS STRONGLY IN FAVOR OF DISCLOSURE OR *IN CAMERA* REVIEW**

Before ordering disclosure, the Court must balance the secrecy requirements of Rule 6(e) against Mr. Comey's due process rights.  *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d at 1298.  The traditional policies underlying grand jury secrecy, protecting the accused, preventing escape, ensuring witness candor, and insulating deliberations, are only weakly implicated here, as

they were in Mr. Comey's first prosecution.  *See Comey*, 809 F. Supp. 3d at 413 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958)).  Although, as in the prior case, the interests of grand jury secrecy may be afforded some protection by measures such as protective orders or even in the first instance *in camera* review, Mr. Comey's interest in the grand jury materials is substantial and cannot be served by any lesser remedy than disclosure of the full grand jury proceedings.  *See id.* at 413–14.  This record reflects a pattern of unconstitutional retaliation and misconduct, leading to "grave doubt" that the grand jury's decision to indict was free from the "substantial influence" of that pattern.  *Bank of Nova Scotia*, 487 U.S. at 256.

Accordingly, the institutional concerns for grand jury secrecy are greatly outweighed by Mr. Comey's due process rights.  The facts here clear the bar for full disclosure of grand jury materials, or in the alternative, review by the Court *in camera*.

## CONCLUSION

For the foregoing reasons, the Court should permit the defense to examine the transcript and audio recordings of the grand jury proceedings in this case, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), or in the alternative, *in camera* review by the Court.

Dated: July 28, 2026

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/   Joseph Zeszotarski*
Joseph Zeszotarski
(N.C. Bar No. 21310)
Gammon & Zeszotarski, PLLC
P.O. Box 1127
Raleigh, NC 27602
Telephone: 919-521-5878
jzeszotarski@ghz-law.com

*Local Rule 57.1 Counsel for Defendant*

20

Patrick J. Fitzgerald*
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

*/s/   Ephraim A. McDowell*
Ephraim A. McDowell*
(D.C. Bar No. 1631429)
Alexander J. Kasner*
(Cal. Bar No. 310637)
Elias S. Kim*
(D.C. Bar No. 1673678)
Dev P. Ranjan*
(D.C. Bar No. 90019329)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
emcdowell@cooley.com
akasner@cooley.com
ekim@cooley.com
dranjan@cooley.com

Rebekah Donaleski*
(N.Y. Bar No. 4986246)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
rdonaleski@cooley.com

Michael R. Dreeben*
(D.C. Bar No. 370576)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

**Special Appearance pursuant to Local Criminal
Rule 57.1(e)*

*Counsel for Defendant James B. Comey, Jr.*

21

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 28th day of July 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/   *Ephraim A. McDowell*
Ephraim A. McDowell

*Counsel for Defendant James B. Comey, Jr.*