UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:26-CR-00016-FL-RN

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**JAMES BRIEN COMEY, JR.,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION (DE 35)** |

## INTRODUCTION

Defendant James B. Comey, Jr. moves to dismiss the indictment for vindictive and selective prosecution. *See* DE 35. He does not come close to establishing either.

To prevail on a vindictive prosecution claim at this stage of the proceedings, Comey must show actual (as opposed to presumptive) vindictiveness. That means actual, objective evidence that he was prosecuted for exercising a legal right. Comey cannot do that. To the contrary, Comey does not allege (let alone show) that the prosecutorial decisionmakers in this case had improper motives. Instead, he speculates that they were induced by *others* with improper motives. But legally, that attenuated chain cannot establish actual vindictiveness. And factually, it is simply false—no matter how many speculative news stories Comey cites. Comey also cannot explain how his prosecution could have been solely motivated by legally protected conduct. His acts and speech as FBI Director, which underlie the President's public statements concerning Comey, are not protected by the First Amendment or otherwise. This investigation preceded his challenge to the Virginia indictment. And whether his social media post is protected is a merits issue (addressed separately). Comey resorts to a theory of presumptive vindictiveness that is not available at the initial charging phase of the proceedings and would not apply in any event.

Comey's selective prosecution claim fails for largely the same reasons, and because Comey cannot show that others similarly situated were not prosecuted. Whether or not a statement is a true threat depends heavily on context, and here the context is unique. Among other reasons, at nearly the same time as the post in question, Comey published a novel where the antagonist successfully persuades his followers to kill his political rivals by communicating coded messages online. Needless to say, Comey does not and could not point to similar evidence in any comparator case—let alone a threat against the sitting President of the United States.

The Court should deny Comey's motion to dismiss.

## BACKGROUND

Comey was indicted for threatening our Nation's current President, Donald J. Trump, in violation of 18 U.S.C. §§ 871(a), 875(c). That decision belonged to the charging attorneys in the United States Attorney's Office for the Eastern District of North Carolina ("EDNC"), and particularly U.S. Attorney Ellis Boyle. Comey's contrary narrative is based almost exclusively on misleading, biased media articles and far-fetched inferences drawn from unrelated events.

### I. Comey's Criminal Conduct

Unfortunately, assassination attempts against our Nation's forty-seventh President are not uncommon. At least four high-profile attempts to assassinate President Trump occurred in just the ten months leading up to the events giving rise to this prosecution. On July 13, 2024, Thomas Crooks shot President Trump at a campaign rally in Butler, Pennsylvania. Crooks killed an attendee and seriously injured two others before Secret Service snipers killed him. But because President Trump turned his head just before being struck, the bullet hit his ear and did not kill him. The same month, authorities arrested a Pakistani man, Asif Merchant, who arrived in the United States in April 2024 to arrange for

the assassination of President Trump on behalf of Iran's Islamic Revolutionary Guard Corps. Asif has since been convicted of murder for hire and attempting to commit an act of terrorism transcending national boundaries. And on September 15, 2024, Ryan Routh staked out the Trump International Golf Club with a rifle while President Trump was playing. A secret service agent saved the President's life by spotting the barrel of the rifle in the bushes and opening fire at Routh, who fled and was apprehended. Routh is now serving a life sentence in prison for his attempt to kill President Trump. Later in November 2024, the Justice Department charged three persons with a murder-for-hire plot to kill President Trump as revenge for the U.S. military's killing of Iranian general Qasem Soleimani under President Trump's leadership in January 2020.

In the fourteen months following the events giving rise to these criminal proceedings, there were four other attempts to assassinate President Trump. In February 2026, Austin Tucker Martin intentionally crashed his vehicle into the security perimeter of President Trump's Mar-a-Lago resort while carrying a gas can and shotgun and was fatally shot by secret service agents. In April 2026, Cole Thomas Allen rushed past security at the White House Correspondents' Dinner with a firearm before being apprehended. In May 2026, Nasire Best approached a White House security checkpoint and began shooting a pistol at secret service officers, who killed him. In June 2026, a group of eight men conspired to shoot President Trump and other administration officials during the UFC Freedom 250 event at the White House. And most recently on July 8, 2026, Iran orchestrated a missile attack against Air Force One in an effort to kill President Trump.

As that partial summary of publicly known plots illustrates, and as the Secret Service has confirmed, the threat environment for the President is currently the worst our Nation has ever seen. In the past two years alone, at least seventeen individuals have attempted to kill President Trump.

On May 15, 2025, Comey was staying at a beachfront residence in Emerald Isle, North Carolina. He posted a coded message—"86 47"—to his followers, meaning "kill President Trump" or "get rid of President Trump." He made that post with the caption "Cool shell formation on my beach walk," DE 36 at 19, just two minutes after his wife sent him a screenshot including a definition of "U.S. English slang" indicating that "86" means "to get rid of or refuse service."

There is no serious dispute that an objective viewer of Comey's post could read it to mean "Kill President Trump." Comey has admitted that the "47" referred to President Trump. And Cassell's Dictionary of Slang (2nd edition) defines "86" to mean: (1940s) to throw out, get rid of, (1970) to kill, to murder, to execute judicially, (1980) to be finished ready to leave or out of an item or be exhausted.[1] Additionally, the Wikipedia entry available to anyone who googled it on May 15, 2025 (last updated prior to May 15, 2025, on April 27, 2025), includes this excerpt: "According to Cassell's Dictionary of Slang, 'to 86' also means 'to kill, to murder; to execute judicially,' likely referring to the size of a standard grave being 2.5 feet wide by 8 feet long and 6 feet deep. Other slang dictionaries confirm this definition."[2] It appears that the Wikipedia page for "86" has been modified hundreds of times since May 15, 2025, including over 100 times on May 16, 2025, alone. *Id.* Similarly, on May 15, 2025, Merriam Webster.com had an article available titled "What does 'eighty-six' mean?" that included the following statement: "Among the most recent senses adopted is a logical

[1] At least one court has relied on Cassell's Dictionary of Slang. *See United States v. Parker*, No. 8:09-CR-0162, 2009 WL 2473510, at *12 n.10 (N.D.N.Y. Aug. 7, 2009).

[2] *86 (term)*, Wikipedia, https://en.wikipedia.org/w/index.php?title=86_(term)&oldid=12875-85915 (April 27, 2025 entry).

extension of the previous ones, with the meaning of 'to kill.' We do not enter this sense, due to its relative recency and sparseness of use."[3]

Comey's post occurred just five days before his novel "FDR Drive" was set for public release. As Publisher's Weekly described the novel (and as posted on Comey's Instagram account), the protagonist is a federal prosecutor "trying to take down Samuel Buchanan, a far-right media personality with a popular podcast." FDR Drive, *Publisher's Weekly*, https://perma.cc/6V82-HQ9A4. The prosecutor "believes Buchanan went far beyond the protection of the First Amendment when he singled out his enemies by name and suggested 'something should be done' about them. His fans have obliged, killing or grievously injuring some of his foes." *Id.* The novel describes the "stochastic terrorism" theory of Buchanan's offense at length, noting that all a charismatic leader needs to do to rid himself of his enemy is to suggest to his political followers that he wants the enemy gone, and then the followers will certainly "go whack the guy." James Comey, FDR Drive 62–63 (Mysterious Press, May 20, 2025). After all, "That's about as close to an order as you can get. That's the way a Cosa Nostra boss would do it." *Id.*

There was immediate public outcry following Comey's Instagram post. In Emerald Isle, at least two individuals, one an employee at the Police Department, notified the Emerald Isle Chief of Police. At least one relative of Comey also understood the post's apparent meaning, texting Comey's wife: "You guys have really gone off the deep end over the years with your TDS. 8647 is a call for violence no matter how you spin it. You should be ashamed of yourselves . . . . I hope Jim goes to jail for his crimes." And Comey himself notified local

[3] Merriam-Webster, *What does 'eighty-six' mean?*, https://www.merriam-webster.com/wordplay/eighty-six-meaning-origin (last visited Aug. 18, 2026).

law enforcement, calling the Emerald Isle Chief that same night flagging that his post may have angered his neighbors.

Comey deleted the post later that day. He has said he did so in response to the text from his relative. Comey also put up a new post stating: "I posted earlier a picture of some shells I saw today on a beach walk, which I assumed were a political message. I didn't realize some folks associate those numbers with violence. It never occurred to me but I oppose violence of any kind so I took the post down." Comey's statement to Secret Service personnel matched the narrative of his post, claiming he and his wife were on a beach walk and happened upon seashells arranged in an "86 47" pattern. There is no evidence that anyone else arranged, photographed, or even saw the shells.

As the post continued to generate controversy, Comey sent a text message stating: "This is provoking me to be more vocal, which I will start next week in NYC (including a return to Colbert)." The next day, Comey's agent texted him: "Hey Jim, I'm sure you're dealing with a lot of BS right now. I have a message from ABC which I'll forward to you. Let me know if I can be of assistance." Comey responded quickly: "Thanks, it is truly crazy. But I'm not speaking to any media." A few minutes later, his agent wrote: "Also on the bright side you've gone viral." Comey quickly replied: "Not my intention, but I'll be OK if it sells books." The agent responded: "Music to an agent's ears."[4]

On May 20, 2025, Comey appeared as a guest on the Late Show with Stephen Colbert to discuss his book release, among other topics:

> Colbert: "You stirred up a little controversy recently. I was gonna say you landed in hot water, but its just water. Because I don't know if you did this on purpose just to get attention here, but your Instagram this you were

---

[4] Federal Rule of Criminal Procedure 6(e) limits the government's ability to describe what information was presented to the grand jury. The government's recounting of the underlying facts of this case is not an admission as to what was presented to the grand jury.

walking on the beach. What happened? You were walking on the beach, you saw this on the beach?"

COMEY: "Yeah, my wife and I, Patrice, were walking on the beach and saw those numbers in shells on the beach."

Colbert: "You didn't do this? Somebody else did this?"

COMEY: "Yeah, somebody else did it. We were on a walk preparing for this week, the rollout of my book. She looked at it and said, "Why did someone put their address in the sand?" And we stood at it, trying to, looked at it trying to figure out what it was. And she had long been a server in restaurants and she said, "You know what I think it is, a reference to restaurants when you "86" something in a restaurant." And I said, "I would…"

Colbert: "Right, its off the menu."

COMEY: "yeah, nah I remember when I was a kid, you'd say "86" to get out of a place. This place stinks, let's "86" it."

Colbert: "I was a bartender, you would "86" a customer if they were getting drunk. Like, let's "86" him, give him a low proof alcohol or something like that. Yeah."

COMEY: "And so I said, "I think it's a clever political message." And she said, "You should take a picture of it." I said, "sure." And then she said, "You should Instagram that." And BOOM"

Later in the interview, Colbert said: "OK, well congratulations on the attention for, for your book. There you go. That is a hell of a viral campaign."

## II. Investigating Comey's Conduct

Federal law enforcement's response to Comey's post was swift. The Secret Service began an investigation almost immediately. And the investigation transitioned from the Secret Service to the FBI when the current U.S. Attorney for this district, Ellis Boyle, assumed his position.

Ultimately, a grand jury returned an indictment against Comey charging him with violating 18 U.S.C. §§ 871(a), 875(c) for knowingly and willfully threatening to take the life of the President and transmitting that communication in interstate commerce.

Based almost entirely on biased (and in many cases outright untrue) internet articles, Comey attempts to portray the decision to charge him as resulting from a directive by the President and/or the Attorney General. That is simply false. U.S. Attorney Boyle looked into the matter upon assuming his position and made the decision without any influence from the Attorney General, much less the President, whatsoever. Indeed, Boyle did not even discuss the charging decision with the Attorney General until the day before presenting the matter to the grand jury, and did so then so that the Attorney General would be aware of the possibility of publicity relating to the indictment, as the Justice Manual instructs.

Even on its face, Comey's conspiracy theory makes little sense and relies on dubious inferences. Comey's apparent belief that engaging in protected speech critical of the President somehow immunizes a defendant from liability for non-protected criminal conduct is obviously wrong. DE 36 at 4–7. And Comey's description of law enforcement surveillance after his post only underscores the seriousness with which the FBI and Secret Service must take potential threats to the President. *Id.* at 7–8.

Comey's reliance on an Assistant U.S. Attorney's statement that the AUSA had been "ordered to open this case" is also disingenuous. *Id.* at 10. The AUSA was merely informing the Secret Service agent that he was the appropriate contact in the U.S. Attorney's Office for EDNC, as the email thread shows the agent had previously been communicating with the AUSA's supervisor, the Criminal Chief for the office. DE 43-1 at 5.

Similarly, Comey relies heavily on the dismissal of an indictment against him in the Eastern District of Virginia ("EDVA"). *Id.* at 14. But he dances around the fact that the indictment was dismissed based only on that court's conclusion that the then-U.S. Attorney for EDVA had not been validly appointed. *See id.* That has nothing to do with the propriety of those (unrelated and substantively unresolved) charges against him, but-for that technicality.

Comey's reliance on a social media post directed to former Attorney General Pam Bondi is even further afield. *See id.* at 12. As Comey elsewhere acknowledges, Bondi was not Attorney General when Comey was charged. *Id.* at 15. There is no evidence beyond media speculation that the President directed then-Acting Attorney General Blanche, let alone the actual prosecutorial decisionmaker (U.S. Attorney Boyle), to prosecute Comey in EDNC. And even if there were, the Chief Executive directing his subordinates to exercise core Executive functions is a feature, not a bug, of our constitutional system. The purported "independence" of DOJ that Comey cites, DE 36 at 2, is antithetical to the constitutional separation of powers (which lodges the Executive power in the President alone). *See Trump v. Slaughter*, 146 S. Ct. 2283, 2303 (2026). And as a matter of historical analysis, it is a myth. *See, e.g.*, John F. Kennedy Presidential Library and Museum, *Robert Kennedy's Attorney General Office* (discussing "President Kennedy's appointment of his 35-year-old brother . . . as the Attorney General").

But none of that matters. As discussed in more detail below, the test for vindictive or selective prosecution is not whether the Chief Executive has an influence on the prosecutorial decisions of his subordinates (as the Constitution plainly contemplates). It is, rather, whether those prosecutors have exercised their power within the constraints of the Due Process and Equal Protection Clauses. Comey's misleading narrative should not distract from the fact he cannot come close to showing any violation.

## ARGUMENT

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotations omitted), "a prosecutor's charging decision is presumptively lawful," *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001). "The presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts

presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15 (1926). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978).

Accordingly, courts must "be cautious not to intrude unduly in the broad discretion given to prosecutors in making charging decisions." *Wilson*, 262 F.3d at 315. Given that Comey has failed to set forth *any* objective evidence showing vindictiveness or impermissible selection, but instead relies on sheer speculation in news reports, the Court should deny Comey's motion to dismiss. DE 36.

## I. The Objective Evidence Shows That The Government Did Not Vindictively Indict Comey.

Under the Due Process Clause, defendants may challenge certain charging decisions for actual or presumptive vindictiveness. *Wilson*, 262 F.3d at 314. But both pathways are limited to scenarios where the government seeks "[t]o punish a person because he has done what the law plainly allows him to do." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). Of course, "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings." *Id.* And "the validity of a pretrial charging decision must be measured against the broad discretion held by the prosecutor to select the charges against an accused." *Id.* at 380 n.11. Accordingly, "[a] charging decision does not levy an improper 'penalty' unless it results *solely* from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *Id.* (emphasis added). Any other approach would negate "the longstanding presumption of regularity accorded to prosecutorial decisionmaking" and the principle that "judicial intrusion into executive

discretion of such high order should be minimal." *Hartman v. Moore*, 547 U.S. 250, 263 (2006); *see Armstrong*, 517 U.S. at 464.

A criminal defendant can seek to prove that the prosecutor was motivated solely by the defendant's exercise of a protected right in two ways. First, a defendant can try to show "the prosecutor acted with genuine animus toward the defendant," meaning the prosecutor "was motivated by actual vindictiveness." *Wilson*, 262 F.3d at 314–15. Second, because "[m]otives are complex and difficult to prove," a defendant may ask a court "to presume an improper vindictive motive," *Goodwin*, 457 U.S. at 373 (quotations omitted), by showing "that the circumstances 'pose a likelihood of vindictiveness,'" *Wilson*, 262 F.3d at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)).

Comey tries both theories. Neither works. He cannot show actual vindictiveness. Lacking is even a bare assertion that the charging prosecutor acted with malicious motive in bringing the indictment. And Comey's attempt to impute purported vindictiveness on the part of the President of the United States to the individual prosecutor fails as a matter of law. The alternative path of presuming vindictiveness is unavailable with respect to initial charging decisions. Even if it were not, the circumstances of this case do not pose a realistic likelihood of vindictiveness. Comey cannot show that—in all cases—indicting a self-proclaimed opponent of the President for threatening the life of that President reeks of malice. Quite the opposite. Regardless, even if Comey could show vindictiveness, he still fails to demonstrate that such animus was the *sole* motivation for the initial charging decision.

**A. The Objective Evidence Fails To Show Actual Malice.**

To establish actual vindictiveness, a defendant must prove with direct evidence that "the prosecutor charging him" "harbored vindictive animus" and that he pursued the prosecution "*solely* to punish" the defendant for exercising his protected rights. *Wilson*, 262

F.3d at 316. In other words, the defendant "must carry the heavy burden of proving that the . . . prosecution 'could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* (quoting *Goodwin*, 457 U.S. at 380 n.12).

Attempting to satisfy that "rigorous" standard, *id.* at 315, Comey contends the sitting President of the United States "harbors genuine animus toward" him as a general matter and based on his "protected speech," DE 36 at 31. But missing is any allegation that the charging prosector acted with animus. Although Comey has cobbled together a seventy-seven-page collection of every public statement President Trump has ever made regarding Comey, spanning back nearly a decade, those statements are irrelevant to the analysis. Even if they were not, they do not show the sort of animus that is legally relevant here.

**1. No Direct Evidence Suggests The Charging Prosecutor Acted With Animus.**

Because "motive [is] personal to the prosecutor who pursues" the charging decision, *United States v. Villa*, 70 F.4th 704, 713 (4th Cir. 2023), "any challenge to the *initial* decision to prosecute as a vindictive prosecution will require proof by the defendant that a vindictive motive *actually* exists," 4 Wayne R. LaFave et al., *Criminal Procedure* § 13.5(a) (second emphasis added). That is why a defendant must prove "with direct evidence," *Wilson*, 252 F.3d at 314, that "the prosecutor charging him with [the relevant crime] harbored vindictive animus" and that the decision to prosecute "could not be justified as a proper exercise of prosecutorial discretion," *id.* at 316. Afterall, the "central figure" in any prosecution is the prosecutor," so it is his motives "that are central" to the analysis. *United States v. S. Poverty L. Ctr., Inc.*, No. 2:26-CR-139-ECM, 2026 WL 2280675, at *10 (M.D. Ala. Aug. 7, 2026).

Comey's motion falters from the start because he does not even attempt to make the required showing. He does not meaningfully suggest—much less provide evidence—that any EDNC prosecutor acted with animus at all. And U.S. Attorney Boyle has affirmed in a sworn

statement that neither he, nor anyone on the prosecution team, acted with animus in investigating the facts giving rise to this prosecution or in electing to seek an indictment. *See* Aff. ¶ 12. Further, the independent arbiter, the grand jury, indicted Comey, showing the prosecutors were right in their pre-indictment belief that probable cause existed. This failure is dispositive given that the Court must "focus[] on the prosecutor's motives, not those of others." *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *11. The Court should deny the motion on this basis alone.

**2. The President's Purported Animus Cannot Be Imputed To The Charging Prosecutor.**

Comey seeks to sidestep the requirement that "U.S. Attorney Boyle himself harbors genuine animus toward Mr. Comey" by contending that the President harbored animus and "prod[ded] the DOJ to prosecute." DE 36 at 34 (quotation omitted). This argument essentially suggests that Mr. Boyle was prevailed upon by DOJ and the President, so his own motive is irrelevant. But that argument fails as a matter of law and fact.

Legally, the Fourth Circuit has *never* found that a defendant may show *actual* vindictiveness by demonstrating the charging prosecutor has been prevailed upon or otherwise influenced by a superior. Comey cites no binding precedent in support of his argument. *See* DE 36 at 23–24. Indeed, the Fourth Circuit has declined to impute the motive of others even when performing a presumptive vindictiveness analysis. *See, e.g.*, *Wilson*, 262 F.3d at 319–20 (declining to "impute the improper motivation"); *Villa*, 70 F.4th at 713 (explaining why courts are cautious to impute improper motivations even in presuming vindictiveness). Even when the charging prosecutor shared a much closer connection to the individual with purported animus, such as with case agents or referring prosecutors, the Fourth Circuit has consistently refused to impute animus. *See, e.g.*, *Wilson*, 262 F.3d at 319–

20 (referring prosecutor); *United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997) (federal agency); *United States v. Lucas*, 62 F. App'x 53, 56 (4th Cir. 2003) (FBI agent).

Ignoring that precedent, Comey looks to out-of-circuit authority finding that in some circumstances, a defendant may establish vindictiveness if he can "connect the animus of a referring agency to a federal prosecutor" by establishing the investigative agency "in some way prevailed upon the prosecutor in making the decision to seek an indictment." *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996). *See also* DE 36 at 23. But that mushy test would convert the evaluation of a prosecutor's motives into an Executive Branch inquisition. The Fourth Circuit has rightly declined to go down that path.

In any event, factually, Comey does not (and could not) show that the President prevailed upon the prosecutors in this case. Even if his attenuated chain of indirect influence were credible, it would not show that anyone "prevailed upon" the prosecutors in the relevant sense. Missing is any evidence that "the ill will, whoever its bearer, actually motivated his prosecution." *Monsoor*, 77 F.3d at 1035.

In reality, U.S. Attorney Boyle is the individual who made the decision to pursue the investigation and seek an indictment. Boyle Aff. ¶ 11. Comey theorizes that it was the President "who prompted the prosecution" or that, at the very least, "those acting on the presidential directive" ordered a prosecutorial response. DE 36 at 34. But Boyle first learned of U.S. Secret Service's initial investigative efforts concerning Comey's threat upon being sworn into office in August 2025. Boyle Aff. ¶ 3. The FBI took over the investigation in coordination with the U.S. Attorney's Office for EDNC, which is not uncommon when threats are investigated and eventually prosecuted. Boyle Aff. ¶¶ 6–7. That investigation continued apace just weeks after Boyle was sworn in, leading to multiple warrants and interviews. Boyle Aff. ¶ 9. Upon collection and review of that evidence, Boyle became convinced that a jury could find beyond a reasonable doubt that Comey committed the offense of threatening

the life of the President and transmitting a communication containing a threat to kill the President under 18 U.S.C. §§ 871(a), 875(c). Boyle Aff. ¶¶ 11–12. That belief is only buttressed by the grand jury returning a true bill on April 28, 2026. *See* Boyle Aff. ¶ 18; DE 1. No one ordered or even suggested that Boyle pursue the ongoing investigation or seek an indictment. Boyle Aff. ¶¶ 10, 14. Nor did Boyle feel pressured in any way to do so. Boyle Aff. ¶ 13. In fact, Boyle did not discuss the indictment with Attorney General Blanche until just the day before grand jury proceedings commenced—so that Main Justice would not be blindsided by the charging decision *he* made in EDNC if the grand jury returned a true bill. Boyle Aff. ¶¶ 15, 19.

Comey's speculation otherwise is just that. Comey points to an email from "the prosecutor who opened this case" informing U.S. Secret Service that he was "ordered to open this case in EDNC." DE 43-1 at 5; *see also* DE 36 at 34. Missing from the face of that communication is who gave the order. But the context of the entire communication chain reveals he was referring to his boss, the criminal chief, who added him to the thread after the Secret Service agent had reached out directly to the Criminal Chief. *See* DE 43-1 at 5. Despite Comey's framing, this communication is no different than the myriad of other occasions where an agent brings an investigation to a supervisor who then parcels it out to a line AUSA. When that happens, the responsible AUSA contacts the investigator. More importantly, there is nothing on the face of the communication that suggests being "ordered" by a superior to open an investigation was motivated by animus, and courts take "legitimate prosecutorial motive" "at face value." *Wilson*, 262 F.3d at 320. At bottom, Comey's conjecture does not amount to "objective evidence to substantiate the link between the agency [or person] with the animus and the prosecutor" who made the charging decision. *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *11.

Even if the Court were to accept Comey's broad theory and improperly "fill in the blanks" with negative inferences, *id.* at *15, any chain of purported animus breaks down for two reasons. First, at the time U.S. Attorney Boyle made the independent decision to present the case to the grand jury in April 2026, the prosecutor whose email Comey focuses on was not part of the prosecution team and in no way influenced the prosecution decision. Boyle Aff. ¶ 20 n.1. Second, Comey has set forth zero evidence suggesting that any alleged animus reached U.S. Attorney Boyle. *See United States v. Trump*, No. CR 23-257, 2024 WL 3638344, at *4 (D.D.C. Aug. 3, 2024) (declining to impute President Biden's criticism of Trump to the prosecution team absent evidence Biden "expressed any such comments to the Attorney General or Justice Department, much less that such comments actually resulted in politically motivated action"). Unlike in *United States v. Adams*, where there was direct evidence in a sworn affidavit that the agency "instigated the prosecution . . . out of 'revenge,'" 870 F.2d 1140, 1149 (6th Cir. 1989), here Comey relies on conjecture supported only by inaccurate media reports.

In short, "there is no evidence that the government official who actually made the decision to prosecute the case was motivated by impermissible considerations." *Hastings*, 126 F.3d at 314.

### 3. Even If The President's Remarks Were Relevant, They Do Not Establish Impermissible Bias.

The only individual who Comey claims actually possesses an improper motive or animus is President Trump. *See* DE 36 at 31–34. Specifically, Comey argues that the President's animus stems from Comey's "protected speech" and Comey's status "as a political foe." *Id.* at 32. As noted, these theories cannot be imputed to the charging prosecutor. But even if they could, the President's statements do not indicate legally cognizable animus relevant to this prosecution.

Comey's narrative, and extensive accompanying appendix, reveal nothing more than two government officials who are divided over ongoing matters of public debate. Comey's backwards theory suggests that, if a private citizen criticizes the President, and draws the President's ire, then he gets a blank check to engage in criminal conduct. But "critics are not constitutionally immunized solely because they speak frequently." *S. Poverty L. Ctr., Inc.,* 2026 WL 2280675, at *15. Frequently criticizing the President does not immunize him when he also threatens the President in violation of federal law.

What is more, Comey must show that he is being prosecuted solely as punishment for exercising a legal right or legally protected conduct. Here, virtually all of the President's criticisms of Comey relate back to Comey's words and actions as a government employee—*i.e.*, Comey is a "dirty cop," "liar," "corrupt piece of garbage," "disgraced liar & leaker[]," or "weak and untruthful slime ball." DE 36 at 15–16. But anything Comey did while serving as a government official is not protected speech. "Government employees do not have a constitutional 'right to perform their jobs however they see fit.'" *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 584 (4th Cir. 2017) (*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Indeed, even when public employees engage in speech, if they "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421. The President's view of a prior subordinate's performance in conducting his official duties—or lack thereof—can hardly be retaliation in violation of the First Amendment. *See, e.g.*, DE 36-1 at 3–5, 19, 47–48 57 (detailing President Trump's statements noting Comey leaked information from the intelligence community, covered up purported crimes by Hilary Clinton, maintained corrupt bias in his tenure as FBI Director, used official office to smear and frame the President); *see also Trump*, 2024 WL 3638344, at *5 (finding President Biden's public criticisms of Trump irrelevant to prosecution because they were irrelevant to the charged conduct and declining to credit a negative

inference otherwise). And for reasons explained in opposition to Comey's true-threats motion, Comey's social media post at the heart of this case is not protected speech, either. *Contra* DE 36 at 33 (conflating animus with the merits by arguing this prosecution is evidence of animus because the case stems from a "social-media post expressing political opposition to President Trump").

Even putting all that aside, of the roughly 350 statements in the appendix, only six even remotely relate to the instant prosecution. Of those, only three were made before the indictment, and only one by President Trump. *See* DE 36-1 at 51. The day after Comey removed his threat from his Instagram, President Trump stated Comey "was competent enough to know what [his post] meant." DE 36-1 at 50. That is not animus or a directive to prosecute. And again, Comey offers no "evidence that the prosecutors working on this case were in any way motivated by his purported animus" or President Trump's statement. *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *13.[5]

Post-indictment statements are not relevant and do not show animus anyway. Then-Acting Attorney General Blanche appeared at a press conference to announce the charges. "After an indictment is unsealed, federal prosecutors often hold press conferences or release information to the press." *Id.* at *14. And following the indictment, President Trump restated his view that given his prior role as FBI Director, Comey surely knew the meaning of "86 47," which is "kill President Trump." DE 36-1 at 71. Missing from any of these statements is even the slightest suggestion of animus. Discussing the merits of the

[5] The other two statements preceding the indictment were made by FBI Direct Kash Patel. They merely noted the FBI was "aware of the recent social media post by" Comey and would "provide all necessary support" for the investigation, DE 36-1 at 50, and that Director Patel had no animus toward Comey but disagreed with Comey's allegation that this FBI is "the conspiracy theorists," DE 36-1 at 52. Neither supporting a showing of actual vindictiveness.

allegations in an existing indictment can hardly be construed as evidence of animus. *See S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *14.

In sum, Comey's differences with President Trump, which fundamentally stem from Comey's conduct during his tenure as FBI Director, do not come close to providing direct evidence of animus motivating this prosecution on a completely separate matter. If the fact that Comey has "extensively criticized the Trump administration" were sufficient to show vindictiveness, then "an entity could effectively immunize itself from prosecution simply by engaging in protected speech, such as criticizing political figures and their policies." *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *10. That is not the law.

**B. Objective Evidence Does Not Support Presuming Vindictiveness.**

Because Comey cannot show actual vindictiveness, he seeks to invoke a presumption of vindictiveness. This effort fails as well.

"Given the severity of such a presumption," "which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct," the presumption applies "only in cases in which a reasonable likelihood of vindictiveness exists." *Goodwin*, 457 U.S. at 373. "[T]he Supreme Court has limited the application of a presumption to situations involving a specific fact pattern or series of events that would, no matter when or where that pattern or series appeared, *necessarily* give rise to a 'reasonable likelihood of vindictiveness.'" *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *9 (M.D. Ala. Aug. 7, 2026) (quoting *North Carolina v. Pearce*, 305 U.S. 711, 725–26 (1969)). To ensure the "prophylactic" presumption applies only in "narrow circumstances," a defendant must establish facts showing that "the circumstances pose a realistic likelihood of vindictiveness . . . and that the circumstances warrant it for all cases of the type presented." *United States v. Ball*, 18 F.4th 445, 454–55 (4th Cir. 2021) (quotations and citations omitted).

Even if the defendant makes that showing, the government can rebut it by "present[ing] objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315.

Given the range of prosecutorial considerations at this stage, the Fourth Circuit has *never* presumed vindictiveness pretrial, let alone for initial charging decisions. Even if the presumption were legally appropriate at this early phase, the circumstances of this case do not pose "a realistic likelihood of vindictiveness in all cases of the type presented." *Villa*, 70 F.4th at 710 (quotations omitted).

**1. Presuming Vindictiveness Is Not Appropriate Pretrial.**

A presumption "will rarely, if ever, be applied to prosecutors' pretrial decisions." *Wilson*, 262 F.3d at 315. And, as for initial charging decisions, the leading criminal procedure treatise has explained that "any challenge to the *initial* decision to prosecute as a vindictive prosecution will require proof by the defendant that a vindictive motive *actually* exists." 4 Wayne R. LaFave et al., *Criminal Procedure* § 13.5(a) (second emphasis added).

Evaluating initial charging decisions entails a subjective analysis of a prosecutor's complex motivations. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte v. United States*, 470 U.S. 598, 607 (1985). Before trial, "the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance." *United States v. Goodwin*, 457 U.S. 368, 381 (1982). And applying the presumption at that stage might also entail a freewheeling probe into the intentions and relationships of other government actors involved in past interactions with the defendant—which would undermine the presumption's footing in objective criteria. Thus, "[w]hen a prosecutor makes *an initial charging decision*, that decision is *presumed* to be a legitimate

response to perceived criminal conduct." *Ball*, 18 F.4th at 454 (quotations omitted). That is why the Fourth Circuit has *never* found a set of pretrial circumstances sufficient to invoke presumptive vindictiveness pretrial. *Villa*, 70 F.4th at 711.

Thus, any extension of presumptive vindictiveness doctrine to an initial charging decision by this Court would not only be unprecedented, but also "a result certainly not favored by the Supreme Court," "primarily because of a perceived need to impose some limits on the number of criminal prosecutions in which a defendant would be entitled to put the prosecutor's motivations and intentions into issue." LaFave, *supra*, § 13.5(a).[6]

**2. Even If The Presumption Applies To An Initial Charging Decision, Comey Has Not Shown The Presumption Is Warranted Here.**

The Fourth Circuit has all but foreclosed presuming vindictiveness pretrial, because the "government's first and only action to redress a perceived violation of federal criminal law" is "entitled to the presumption of legitimacy." *Ball*, 18 F.4th at 455. *See also Wilson*, 262 F.3d at 315 ("Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions."). But even if the presumption could apply to initial charging decisions, the circumstances of this case do not warrant presuming vindictiveness. To trigger the presumption, a defendant must set forth objective evidence showing a realistic likelihood of vindictiveness "applicable to all cases presenting the same circumstances," *id.*, which requires showing the prosecutor had a "personal stake" in the defendant's protected conduct, creating a presumption the prosecutor had a "reason to engage in self-vindication," *id.* at 318–19 (quotations omitted). Comey does not come close to meeting this burden.

---

[6] To be clear, rejecting presumptive vindictiveness for initial charging decisions does not leave criminal defendants without recourse to challenge prosecutorial motives. A defendant could still show *actual* vindictiveness, *see* LaFave, *supra* § 13.5(a), or selective prosecution, just as Comey has tried (but failed) to do here. *See* DE 36 at 31–35, 43–49.

In Comey's view, a presumption is warranted based on "President Trump's public statements and social media posts alone." DE 36 at 39. Comey goes further arguing a social media post ordering the Attorney General to "seek JUSTICE" at least gives rise to a realistic likelihood of vindictiveness. And he contends that likelihood grows when considering the timing of the prosecution following his indictment in EDVA being dismissed. He speculates further that following that dismissal, the "DOJ accelerated" the investigation in this case. DE 36 at 39. This argument is wishful thinking and amounts to no more than "submissions stack[ing] speculation upon conjecture, relying upon hypothetical links in assumed chains to show prosecutorial vindictiveness," which fails when faced with the facts. *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *15.

At the outset, Comey's argument fails because he sets forth no evidence showing the charging prosecutor has a personal stake in either Comey's prior prosecution in EDVA, or Comey's exercise of his First Amendment rights. To presume vindictiveness, the evidence must establish the charging prosecutor had a "personal stake" in a defendant's asserted right, otherwise there would be no objective basis to assume the prosecutor engaged in "self-vindication." *Id.* at 319. Comey does not even attempt to do so, nor could he.

U.S. Attorney Boyle was not personally involved in the criminal case against Comey in EDVA. Boyle Aff. ¶ 20. He proceeded independently from that case team. Boyle Aff. ¶¶ 15, 19, 20 n.1. *See United States v. Ball*, 438 F. Supp. 3d 656, 661 (E.D. Va. 2020), *aff'd*, 18 F.4th 445 (4th Cir. 2021) (finding no presumption when "the Government has categorically denied that there were any conversations with the Commonwealth prior to its initiation of the present federal prosecution"). These facts alone dissipate any grounds for presuming vindictiveness as the presence of a different prosecutor "in a different office" than the "prosecutor who brought the [EDVA] charge," dispels the presumption. *Wilson*, 262 F.3d at 305. Nor could U.S. Attorney Boyle have any personal stake in Comey's First Amendment

speech since none of that speech identified or was directed at U.S. Attorney Boyle. This failed showing is fatal to presuming vindictiveness.

Regardless, President Trump's statements and posts do not support a presumption of vindictiveness. President Trump's statements on their face are not linked to the subject matter of this prosecution, nor has Comey put forth any evidence objectively tying those statements to U.S. Attorney Boyle's decision to indict. *See Trump*, 2024 WL 3638344, at *7 (finding no presumptive vindictiveness when the defendant could not "proffer a single evidentiary link" tying President Biden's criticism of Trump and "his indictment"). Comey relies primarily on President Trump's September 20, 2025 post addressing Attorney General Pam Bondi that many have reported "Nothing is being done" and stating "JUSTICE MUST BE SERVED NOW." DE 36 at 23. But that post refers to prosecution based on criminal conduct, not a prior legal right that Comey exercised. Courts decline to read into neutral language requesting prosecution but instead assume "legitimate prosecutorial motive" was "taken at face value." *Wilson*, 262 F.3d at 320. Stripped down, all Comey submits is his own speculation that any purported personal animus must have prompted this prosecution, but "chanting the mantra of prosecutorial vindictiveness" is not enough. *Trump*, 2024 WL 3638344, at *6.

The timing of the indictment does not support presuming vindictiveness either. Comey appears to suggest that the prosecution was retaliation for his successful challenge to the EDVA indictment. *See* DE 36 at 39–40. But this investigation commenced on May 15, 2025, the same day Comey threatened to kill President Trump. Boyle Aff. ¶ 4; *see also* DE 36 at 19 (detailing Secret Service tried to interview Comey the same evening he made the post). Thus, this investigation long predated Comey's indictment in EDVA (September 2025). And after EDVA's case was dismissed, the indictment in this case did not follow until five months later, in April 2026. In other words, the timing of this indictment, stemming from

an investigation that "preceded" not just the EDVA indictment but also "[Comey]'s success in" challenging that indictment, does not plausibly suggest vindictiveness given this indictment followed five months later. *Wilson*, 262 F.3d at 317; *see also Trump*, 2024 WL 3638344, at *7 (explaining "the timing of the charges" does not support a finding of vindictiveness when the investigation "originated long before" the exercise of the defendant's right).

Further, Comey sets forth no evidence that the charging prosecutor initially thought this case was "unworthy of prosecution" before the EDVA indictment was dismissed. *Wilson*, 262 F.3d at 319. To the contrary, U.S. Attorney Boyle pursued this investigation with a suspicion that it may result in an indictment since first learning of it in August 2025, but yet still allowed the investigation to play out, with interviews and warrants returned before reaching an ultimate decision. Boyle Aff. ¶ 11. Boyle also had no involvement in the EDVA indictment and thus lacked a personal stake in anything relating to that proceeding. Boyle Aff. ¶ 20.

Comey cannot show any personal stake on the part of the prosecutorial decisionmakers here. And asserting a broad, speculative theory that the President is out to get him through an interconnected hypothetical, elaborate scheme across the Executive Branch writ large based on nothing more than media gossip, DE 36 at 41, cannot overcome the dearth of actual evidence supporting a presumption here.[7]

[7] For example, Comey asserts now Attorney General Blanche ordered and continued to pressure U.S. Attorney Boyle to indict Comey for his May 15, 2025 threat, relying on nothing more than a news article making bold (and categorically inaccurate) claims based on undisclosed sources. *See* DE 36 at 27–28, 37. Such speculation cannot come close to credible evidence in the light of U.S. Attorney Boyle's unequivocal, sworn statements to the contrary.

### C. Comey Cannot Show That Animus Solely Caused The Prosecution.

Even assuming Comey has set forth sufficient objective evidence showing that "the prosecutor acted with genuine animus toward" him, he fails to show he "would not have been prosecuted but for that animus." *Villa*, 70 F.4th at 710. Comey simply cannot show that U.S. Attorney Boyle sought an indictment "solely to punish" Comey for his success in challenging the EDVA indictment or for speaking out in criticism of President Trump. *Wilson*, 262 F.3d at 316. Comey's contrary argument is, again, sheer speculation: "The suspect timing and conduct of this prosecution" support the inference that "newly installed political officials in the DOJ strove to accomplish what their predecessors could not, namely, effectuating the President's desire to punish Mr. Comey." DE 36 at 38. As noted, neither the law nor the facts support this theory.

Comey's arguments about prosecutorial delay also miss the mark. If anything, such delay militates against any suggestion of vindictiveness, because it confirms this was a genuine investigation. Regardless, courts do not flyspeck the timing of criminal investigations beyond applying (when appropriate) the five-year statute of limitations that Congress established. *See* 18 U.S.C. § 3282(a). That is because separation of powers principles preclude district courts from second-guessing how efficiently criminal investigations have unfolded, at least absent any indication of strategic delay aimed at prejudicing a defendant. And finally, any suggestion federal officials acted irregularly is misplaced. As Comey knows, it is not unusual for the FBI to take over an investigation, particularly when threats are fully investigated requiring time-consuming investigative methods and techniques where FBI agents excel. Boyle Aff. ¶ 6.

* * *

Because Comey failed to present objective evidence "sufficient to rebut the presumption that his federal prosecution was legitimate," *Ball*, 18 F.4th at 456, this Court should deny his claim that the prosecution is vindictive.

## II. Objective Evidence Does Not Show The Government Selectively Prosecuted Comey.

"When acting on probable cause that a crime has been committed, a government prosecutor generally enjoys unfettered discretion in the decision whether to prosecute." *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996). That probable cause determination is clearly supplied in this case by the grand jury returning a true bill indicting Comey for threatening President Trump. *See* DE 1. Comey does not argue otherwise. Thus, he can only rebut "the presumption of regularity that supports [that] prosecutorial decision[ ], by submitting clear evidence of selective prosecution." *Id.* To do so, he must "demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* (quoting *Wayte*, 470 U.S. at, 608). That is a "demanding" and "rigorous" standard to satisfy. *Id.* Once again, Comey does not come close.

### A. Comey Has Not Shown Direct Admission Of Discriminatory Purpose.

Under "the Due Process Clause of the Fifth Amendment," a "decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464 (quoting *Oyler v. Boles,* 368 U.S. 448, 456 (1962)). Comey claims President Trump's statements prove the government prosecuted Comey "because of his exercise of First Amendment rights" or "personal and political bias." DE 36 at 44 (quotations omitted).

Comey again points to the President's September 20th post addressed to former Attorney General Bondi, claiming the post "is a direct admission that the decisions to

prosecute Mr. Comey was not based on the DOJ's good-faith application of law to facts." DE 36 at 45. That is pure assumption standing on negative inference. The post references multiple individuals, not just Comey, none of which have also been indicted, showing the post was not a direct order that the Department then followed. But even if it were plausible to construe the post as a direct order, nothing on the face of the post demonstrates the order stemmed from anything more than criminal culpability. And courts are careful not to second guess legitimate prosecutorial motive in otherwise neutral communications. *See Wilson*, 262 F.3d at 320. More importantly, the post is irrelevant because, for all the reasons already explained, *see supra* Section I.A.2., the charging prosecutor was not directed to seek an indictment, and the President's statements had no bearing on his decision to do so. Boyle Aff. ¶¶ 12–14, 16. Accordingly, Comey's "direct evidence" fails to overcome the presumption of regularity afforded to the charging decision.

**B. Comey Fails To Show He Was Prosecuted For Impermissible Reasons.**

Because Comey cannot prove that he was impermissibly prosecuted with direct admission, he can prevail only by establishing "both (1) that similarly situated individuals" were not prosecuted, "*and* (2) that the decision to prosecute was "invidious or in bad faith." *Olvis*, 97 F.3d at 743 (quotations and citation omitted) (emphasis added). Comey fails to establish either.

*First*, Comey fails to make a credible showing that other similarly situated individuals were not prosecuted. The required showing "isolate[s] the factor allegedly subject to impermissible discrimination," *Olvis*, 97 F.3d at 744 (quoting *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989)). Here, Comey at most suggests the impermissible consideration is political persuasion, or rather just himself to the extent he is asserting "a class of one" claim. DE 36 at 32, 38. Comey sets forth two theories to make his required showing: 1) this case "is the first indictment solely for publishing '86' in connection with a public official," and

2) at least four other "public figures" have not been indicted for comparable violent statements about public officials. DE 36 at 46. Both theories fail as neither "take[s] into account several factors that play important and legitimate roles in prosecutorial decisions" especially concerning true threats. *Olvis*, 97 F.3d 739.

Begin with Comey's claim that others have not been indicted for using "86" in connection with President Trump or former President Biden. DE 36 at 45–46. In his view, items listed for sale on Amazon containing the phrase "8645," "8646," and "8647," are synonymous with Comey's post. DE 36 at 45–46. Not so. The context and the setting of language matters, especially for a true threats analysis (as explained in opposition to Comey's true-threats motion). Thus, not every statement containing the phrase "8647" is equal, and surrounding context—such as former FBI Director and mob prosecutor Comey's near-contemporaneous publication of a novel in which the antagonist gets his political rivals killed by communicating coded threats online—guides the analysis. Those differences in context go directly to "the strength of the evidence" as to whether those statements are true threats, and strength of evidence is a legitimate prosecutorial factor. *Olvis*, 97 F.3d at 744.

Given that and other context, none of Comey's comparators are similarly situated. Indeed, many of the comparators' posts do not and did not concern the sitting President after a string of assassination attempts. Additionally, many of Comey's alleged comparators' posts by their plain language are dramatized advocacy statements or past tense hypotheticals, *see* DE 36 at 46 ("*should be* drawn and quartered" and "I *would* actually like to *go back* to the olde time." (emphasis added)), differing from Comey's statement that on its face was not accompanied by conditional or past tense language. Instead, it communicated a present tense intention to kill President Trump. Comey fails to account for accompanying evidence that affects prosecutorial responses. Here, there is evidence beyond Comey's public statement supporting the indictment, but he fails to mention any other evidence supporting prosecution

for his four alleged comparators that might aid in whether a reasonable viewer would perceive their statements as true threats. Thus, Comey fails to show that any of his alleged comparators are truly "similarly situated for prosecutorial decisions." *Olvis*, 97 F.3d at 744.

*Second*, Comey contends the instant prosecution is "invidious" or "in bad faith" because he is "being singled out for punishment based on his protected speech and the President's animus." DE 36 at 49. This argument fails for all the reasons already discussed.

Further, Comey's suggestion that the Department declines to prosecute threats targeting "President Trump's political opponents" is simply not true. DE 36 at 49. In April 2025, in this District, the same U.S. Attorney's Office secured an indictment and eventual guilty plea for an individual threatening former President Biden. *See United States v. Ferr*, Case No. 5:25-cr-00085, Nos. 1, 38 (E.D.N.C. 2025). Over the course of the President's second term, the "Department has charged dozens of cases involving threats against all sorts of individuals." *Acting AG Blanche Announces Federal Grand Jury Indicts Former FBI Director for Threats to Harm POTUS*, The Justice Department, at 1:09–18 (YouTube, Apr. 29, 2026), https://www.youtube.com/watch?v=23-SgGJRwp0; *see also* DE 36-1 at 71. Comey's conduct is not unique, "it is the same kind of conduct that we will never tolerate, and that we will always investigate, and regularly prosecute." *Acting AG Blanche Announces Federal Grand Jury Indicts Former FBI Director for Threats to Harm POTUS*, *supra*, at 2:08–16.

In sum, Comey cannot immunize himself from criminality just by noting that he "engag[ed] in protected activity" before indictment. *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *10. Indeed, the "Government's prosecutorial power and the First Amendment's protection of speech come into conflict only where the defendant can show that his prosecution was brought to punish him *for his speech*," which Comey fails to show here with anything beyond conjecture. *Id.* at *8.

Because Comey fails to meet the rigorous standard of showing that he was singled out for prosecution based on impermissible considerations, the Court should deny his request to dismiss for selective prosecution.

* * *

For all the same reasons, Comey also fails to "overcome [the] significant barrier" of "advancing objective evidence tending to show the existence of prosecutorial misconduct" to warrant "discovery on the government's prosecutorial decision[]." *Wilson*, 262 F.3d at 315. That burden "is only slightly lower than for a dismissal of the indictment." *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012). The evidence need not be "clear," but it should be substantial, and there at least must be "some." *Id.* Here, Comey has set forth none. He cannot merely suggest potential motive unsupported by *any* objective evidence to trigger "a fishing expedition based on innuendo or speculation." *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *14. Especially given Comey seeks discovery of communications that are plainly privileged. *See* DE 36 at 51 (requesting production of communications between the President and the Attorney General). Comey's motion fails to make a credible showing of vindictiveness or discriminatory intent, so no discovery or evidentiary hearing is permitted.

## CONCLUSION

For these reasons, the Court should deny Comey's Motion to Dismiss for vindictive and selective prosecution.

Respectfully submitted this 18th day of August, 2026.

STANLEY E. WOODWARD, JR.
Associate Attorney General

W. ELLIS BOYLE
United States Attorney

ANNA L. EDWARDS
Counsel to the Associate Attorney General

*/s/ Timothy M. Severo*
TIMOTHY M. SEVERO
Assistant United States Attorney
Criminal Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Tel: 919-856-4530
tim.severo@usdoj.gov
NC Bar No. 19621

## CERTIFICATE OF SERVICE

I certify that on August 18, 2026, I caused the foregoing document to be filed electronically through the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Timothy M. Severo*
TIMOTHY M. SEVERO
Assistant United States Attorney
Criminal Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Tel: 919-856-4530
tim.severo@usdoj.gov
NC Bar No. 19621