IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 4:26-CR-00016-FL-RN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JAMES B. COMEY JR.'S REPLY IN SUPPORT OF MOTION TO SUPPRESS AND FOR *FRANKS* HEARING**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 2
I. MR. COMEY IS ENTITLED TO A *FRANKS* HEARING .......... 2
A. The Apple And Google Warrant Affidavits Contained At Least Reckless Misrepresentations And Omissions .......... 2
B. The False Statements And Omissions Were Material .......... 7
CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Counterman v. Colorado*,
600 U.S. 66 (2023) ... 8

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) ... 8

*Franks v. Delaware*,
438 U.S. 154 (1978) ... *passim*

*Jackson v. Carin*,
128 F.4th 525 (4th Cir. 2025) ... 6

*Thompson v. United States*,
604 U.S. 408 (2025) ... 6

*United States v. Bosyk*,
933 F.3d 319 (4th Cir. 2019) ... 8

*United States v. Glass*,
160 F.4th 563 (4th Cir. 2025) ... 4

*United States v. Griffin*,
2026 WL 2357208 (4th Cir. Aug. 14, 2026) ... 7, 9

*United States v. Lopez*,
2026 WL 2086114 (4th Cir. July 20, 2026) ... 6

*United States v. Lull*,
824 F.3d 109 (4th Cir. 2016) ... *passim*

*United States v. Sanders*,
107 F.4th 234 (4th Cir. 2024) ... 8

*United States v. Tate*,
524 F.3d 449 (4th Cir. 2008) ... 2, 4

*United States v. Wharton*,
840 F.3d 163 (4th Cir. 2016) ... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**


U.S. Const. amend. IV .......................................................................................................1, 9

18 U.S.C.

§ 871(a) .........................................................................................................................7

§ 875(c) .........................................................................................................................7

Merriam-Webster, *What Does 'Eighty-Six' Mean?* ..........................................................................3

Sonam Sheth, *What Does '86' Mean? White House Reacts to James Comey's Post*, Newsweek (May 15, 2025, 9:28 PM) ....................................................................5

## INTRODUCTION

The government's response brief reveals a fundamental misunderstanding of what *Franks v. Delaware* requires. Contrary to the government's claims, Mr. Comey's entitlement to a *Franks* hearing is not premised on the government's failure to offer "smoking gun evidence" that Mr. Comey was aware that others would perceive the seashells post as threatening violence. *Cf.* Opp. 16. Instead, Mr. Comey is entitled to a *Franks* hearing because the case agent omitted from the warrant affidavits the significant evidence her own investigation had revealed that affirmatively disproved the government's central theory of Mr. Comey's guilt and eviscerated the credibility of its sole informant, Person-1. On top of those crucial omissions, the case agent falsely portrayed Mr. Comey's wife and lawyer as obstructing the government's investigation. These defects prevented the issuing magistrates from "mak[ing] an independent evaluation of" the existence of probable cause, as the Fourth Amendment demands. *Franks*, 438 U.S. 154, 165 (1978).

The record supports a substantial preliminary showing that the misleading aspects of the affidavits were at least reckless and material. To establish probable cause, the affidavits needed to demonstrate a fair probability that Mr. Comey had threatened the President with the requisite intent. The affidavits relied on statements by Person-1 and the claim that "86" means "kill" in organized crime—yet both were fundamentally undermined by omitted evidence, including that Person-1 is estranged from and biased against Mr. Comey, and that two seasoned FBI veterans did not recall ever hearing "86" while investigating organized crime. Furthermore, the government's multiple efforts to find references to "86" within the FBI database and Mr. Comey's old trial transcripts confirmed he had not been exposed to that phrase. Those omissions and other misrepresentations were material to the magistrates' probable cause determinations—and because their importance should have been obvious to the case agent, the case agent likely acted with at

least recklessness. For these reasons, Mr. Comey is entitled to a *Franks* hearing and suppression of the evidence derived from the warrants.

## ARGUMENT

### I. MR. COMEY IS ENTITLED TO A *FRANKS* HEARING

#### A. The Apple And Google Warrant Affidavits Contained At Least Reckless Misrepresentations And Omissions

The case agent swore to warrant affidavits that omitted the government's many failed attempts to substantiate its theory of the case, omitted Person-1's lack of credibility and bias against Mr. Comey, and falsely implied that Mr. Comey's attorney David Kelley and his wife Patrice Comey obstructed the investigation. As to all of these omissions and misrepresentations, the record supports a "substantial preliminary showing" that the case agent acted with at least reckless disregard for the truth. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). The government's conclusory arguments to the contrary do not rebut this showing.

The warrant affidavits hinged on the case agent's assertion that "86" has an alternative meaning of "kill" in the mafia, which Mr. Comey prosecuted in the early 1990s. But the case agent omitted mention of a series of facts that the case agent had learned through the investigation and that undermined that theory, including that (1) the FBI's searches of its comprehensive investigation database and extensive mafia case files yielded no conclusive mention of "86," Dkt. 43 ¶¶ 22-26; (2) the case agent herself interviewed FBI agents who had spent years investigating organized crime and who did not recall hearing the term "86" used to mean "kill," *id.* ¶¶ 27-28; (3) FBI agents' research revealed that any link between the term "86" and organized crime is "an urban legend," *id.* ¶ 30; and (4) even though Salvatore Gravano, the former mafia member and government cooperator, told government officials that "86" was a mafia term used to mean "kill," he said that mafia members would have avoided using the term in the presence of law enforcement

officers, and indeed, Mr. Gravano never said "86" near Mr. Comey, *id.* ¶ 32.[1] The government's opposition ignores most of these omissions.

Instead, the government cites (at 7-8, 17-19) a grab bag of dictionaries, websites, and an unpublished district court decision to bolster its argument that the case agent truthfully portrayed "86" as meaning "kill." This argument is both factually incorrect and legally irrelevant.

First, to the extent that the government relies on newly discovered sources to bolster the claim that "86" was a term used in organized crime to mean "kill," it is simply wrong. John Gleeson—the very former prosecutor Mr. Gravano identified as an expert—explained the falsity of that claim in his affidavit, which directly refutes the government's contention. *See* Dkt. 40-3. Even the government's newfound sources all support that the primary meaning of "86" is a benign one, as Mr. Comey has consistently explained. *See* Dkt. 55-7; Merriam-Webster, *What Does 'Eighty-Six' Mean?*, https://perma.cc/6EQA-D9DW (last visited Aug. 26, 2026) ("[t]he most common meaning of *eighty-six* encountered today is … 'to refuse to serve a customer,'" and use of the term to mean "kill" is only recently and sparsely used); Dkt. 55-8 (Wikipedia entry confirming that "86" is "used primarily in the hospitality industry"). The government cites (at 19) an unpublished district court decision, but that opinion only underscores that rumors of an organized-crime link to the term are steeped in urban legend—not the stuff of probable cause. The decision claims that "86" refers to the size of a grave, directly contradicting the affidavits' claim that "86" references "taking someone 'eight miles out of town' and putting them 'six feet under.'" *See* Dkt. 40-1 at 30-31; Dkt. 40-2 at 20.

[1] All these inquiries preceded the Google warrant application. And the case agent directed agents to search the *Gambino* case file before applying for the Apple warrant. Mot. 9.

Second, even if it were literally true that the term "86" has a violent meaning in organized crime (and it does not), Mr. Comey would still be entitled to a *Franks* hearing. "When an omission is involved, the question is not whether the affidavit was 'literally true,'" but whether the affiant "omitted facts by design to mislead the issuing judge." *Tate*, 524 F.3d at 456 (emphasis omitted). Even taking as literally true the affidavits' assertions that "86" has been associated with violence, the affidavits were at least recklessly "misleading," *id.*, because they studiously omitted all evidence unearthed during the investigation that Mr. Comey would not have heard the term during his prosecutorial career—and that is the crucial point under *Franks.*

The government claims (at 17) that the case agent did not omit these facts recklessly or with the intent to mislead because she "knew that the term '86' had at least one meaning as murder or kill and is used in organized crime settings." But a case agent cannot hide exculpatory evidence from the issuing magistrates just because, in the agent's estimation, her preferred evidence prevails. The Fourth Circuit reached exactly this conclusion in *United States v. Lull*, where the court held that a case agent had acted at least recklessly when he omitted information based on his own assessment of the informant's credibility— "an assessment that is for the magistrate, not [the investigator], to make." 824 F.3d 109, 116 (4th Cir. 2016). Like the agent in *Lull*, the case agent omitted inconvenient and material facts from the affidavits, despite the "obvious impact" of those facts on the affidavits' ability to show probable cause. *Id.*[2]

Furthermore, the facts that the case agent elected to conceal from the magistrates undermined the very basis of the case agent's supposed knowledge of the violent alternative meaning of "86." The agent's own investigation contradicted her assertion that the term was used

[2] The omissions are even more glaring here, where the agent applied for the warrants ten and twelve months after Mr. Comey's post—hardly an "urgent" investigation in which errors might be more excusable. *United States v. Glass*, 160 F.4th 563, 568 (4th Cir. 2025). *Cf.* Opp. 26.

in organized crime at all, let alone that Mr. Comey would have learned that "86" meant "kill" in that context. In the face of this mountain of exculpatory, primary-source evidence about "86," the affidavits had to rely heavily on two secondary sources that were also seriously undermined by facts the agent knew: (1) Person-1's self-admitted "speculation," Dkt. 43 ¶ 12, and (2) a Newsweek article, which reacted to Mr. Comey's Instagram post and claimed without attribution that "86" is a term used "[i]n the mafia." *See* Sonam Sheth, *What Does '86' Mean? White House Reacts to James Comey's Post*, Newsweek (May 15, 2025, 9:28 PM), https://bit.ly/4iyjQ4e (cited at Dkt. 40-1 at 31 n.4 & Dkt. 40-2 at 20 n.4). Especially in light of the comparative weakness of the affidavits' secondary sources, the case agent was at least reckless in omitting probative evidence that fatally undermined her narrative.

The warrant affidavits also contained at least reckless misrepresentations and omissions about Person-1. Both affidavits misrepresented Person-1 as "immediately perceiv[ing] a violent meaning" in Mr. Comey's post, when records available to the case agent revealed that Person-1 told investigators that they first understood the post to refer to its non-violent, food-service meaning. Mot. 18. And the Apple warrant affidavit entirely omitted mention of the severe credibility problems undermining Person-1's claim that "Comey must have known that '86 47' was a call for violence." Dkt. 40-1 at 36. The case agent was aware that Person-1 was estranged from Mr. Comey, thus lacking any personal insight into Mr. Comey's mental state, and that Person-1 was personally biased against Mr. Comey. Dkt. 43 ¶ 12. The "obvious impact" of the informant's lack of credibility "on any assessment of [their] reliability" supports the conclusion that the case agent's omission of these facts was at least reckless. *Lull*, 824 F.3d at 116.

The government now claims (at 22) that Person-1 was not biased against Mr. Comey at all, but merely wanted a crime to be punished, so there was nothing to intentionally omit. A simple

glance at the interview records shows otherwise. *See* Ex. H (sealed). Person-1 claimed that Mr. Comey had committed "crimes" as FBI Director—an unfounded allegation that fueled Person-1's bias against Mr. Comey and was unrelated to the seashells post. Dkt. 43 ¶ 12. And the government ignores that, during interviews with law enforcement, Person-1 levied a series of personal insults against Mr. Comey and his wife that were also unrelated to the post. *See* Ex. H (sealed).

The government also fails (at 14) to distinguish the affidavits' omission of Person-1's unreliability from similar reckless omissions in *Lull*. According to the government, *Lull* held that omissions are reckless when they involve "contemporaneous dishonest behavior by the witness in the immediate presence of the agent," resulting in the informant's termination or arrest. Opp. 14-15. Not so. *Lull* identified several, general factors supporting the agent's recklessness, including the agent's "knowledge" of the facts rendering the informant unreliable, the "temporal proximity" between the revelations of unreliability and the omission, and the "obvious impact" of the omitted facts on "any assessment of [the informant's] reliability." 824 F.3d at 116. Here, all of those factors support finding that the omissions as to Person-1 were at least reckless. Mot. 18-19.

The record also supports concluding that the case agent acted with at least recklessness by suggesting that Mr. Comey's attorney and wife obstructed the investigation by hiding evidence and lying to investigators. That the Apple warrant affidavit did not explicitly accuse Mr. Kelley of hiding metadata from investigators is irrelevant, Opp. 23, because the affidavit was still "misleading," *Jackson v. Carin*, 128 F.4th 525, 534 (4th Cir. 2025). *See United States v. Lopez*, 2026 WL 2086114, at *1 (4th Cir. July 20, 2026) (considering whether an affidavit was "misleading when read in context"). Just as a tennis player claiming to "win" a championship when her opponent forfeited is misleading, *see Thompson v. United States*, 604 U.S. 408, 413 (2025), so too is the case agent's assertion that Mr. Kelley's disclosure of a screenshot comported

with "an attempt to hide metadata," Dkt. 40-1 at 35, when the government concedes (at 23-24) that Mr. Kelley was never asked to share the original image. The case agent's slanted narrative thus supports concluding that she acted with at least "reckless disregard of whether it would make the affidavit misleading." *Lull*, 824 F.3d at 115. The same logic applies to the Google warrant affidavit's misleading implication that Ms. Comey lied to investigators about her Google searches.

### B. The False Statements And Omissions Were Material

The omissions and misrepresentations in the warrant affidavits were material, because including the omitted evidence about the meaning of "86" and Person-1's lack of reliability, and correcting the affidavits' misrepresentations, "undermine[s] the foundational core of the affidavit." *United States v. Wharton*, 840 F.3d 163, 169 (4th Cir. 2016). The government's arguments to the contrary misunderstand the nature of the probable-cause standard and mischaracterize the record.

The government's theory that Mr. Comey would have been aware that "86" has a violent connotation from prosecuting organized crime was the lynchpin of its affidavits. Yet the government now appears to claim (at 15-16) that it was not required to disclose *any* evidence regarding Mr. Comey's mental state, because the warrants themselves sought such evidence. That end-run around the probable-cause requirement fails.

The affidavits are not excused from the requisite probable-cause standard simply because they sought evidence of Mr. Comey's state of mind. Opp. 2, 15-16. The probable cause standard requires the case agent to "establish a fair probability that … evidence of a crime would be found" in the Apple and Google accounts. *United States v. Griffin*, 2026 WL 2357208, at *8 (4th Cir. Aug. 14, 2026). Here, establishing that "fair probability" required demonstrating a well-founded probability that a crime had occurred at all. But neither Sections 871(a) nor 875(c) can be violated unless the speaker is "aware 'that others could regard his statements as' threatening violence and

'delivers them anyway.'" *Counterman v. Colorado*, 600 U.S. 66, 79 (2023) (citation omitted). So if the affidavits did not support "a substantial basis for concluding" that Mr. Comey was aware that others would interpret his post as threatening violence, then the affidavits failed to establish probable cause. *United States v. Bosyk*, 933 F.3d 319, 326 (4th Cir. 2019).

Courts frequently focus on evidence of a defendant's state of mind in determining whether the government has established probable cause. In *United States v. Sanders*, for example, the Fourth Circuit held that probable cause could not be established with "a 'single click' of an Internet link … unless there are solid additional facts to suggest that 'the person behind that click plausibly knew about and sought out' child pornography." 107 F.4th 234, 250 (4th Cir. 2024) (quoting *Bosyk*, 933 F.3d at 326). And in *District of Columbia v. Wesby*, there was no dispute that the defendant had entered a house uninvited—but because the defendant argued that nothing suggested that he *knew* he was unwelcome, the Supreme Court evaluated whether the arresting officers made a "reasonable inference" that he had trespassed. 583 U.S. 48, 57 (2018). There, as here, probable cause cannot be presumed absent any indication that the defendant acted with the requisite intent.

This means that a showing that Mr. Comey would have been aware of a violent connotation of the term "86" from his prosecutorial experience was essential for probable cause. Yet once the omitted evidence undercutting the government's theory of Mr. Comey's supposed awareness is included in the affidavit, the basis for finding probable cause vanishes.

Begin with the evidence obtained from the case agent's investigation disproving that Mr. Comey would have understood "86" to connote violence. Far from yielding "inconclusive results" that "disprove nothing," Opp. 20, the investigation produced *affirmative evidence* of the rarity (if not absence) of the term's use in organized-crime circles. *See supra* pp. 2-3. For example, the fact that neither retired FBI agent who specialized in organized-crime investigations recalled

hearing the term "86" as a synonym for "kill" supports the conclusion that Mr. Comey would not have heard the term in that way, either. That conclusion is bolstered by Mr. Gravano's statement that mafia members would have avoided using "86" around law enforcement officials like Mr. Comey, as well as the total absence of the term from the *Gambino* trial transcripts. Dkt. 43 ¶¶ 23, 25-26, 32. Faced with this contrary evidence, the government's "inference becomes, in Fourth Amendment terms, an improbable leap." *Griffin*, 2026 WL 2357208, at *5 (citation omitted).

Next, the second (and final) category of evidence purporting to support the government's theory—that Person-1 believed Mr. Comey must have known that "86" has violent connotations—is crucially undermined by the omitted fact that Person-1 had no insight into Mr. Comey's thinking. *See supra* p. 5. The government (at 22) now attempts to downplay Person-1's role in the warrant affidavits in two ways. First, the government claims that Person-1's statements were just "opinion" rather than "intimate knowledge," but the case agent described Person-1 in the affidavits as Mr. Comey's relative—supporting an inference that Person-1 would have special knowledge of Mr. Comey's mental state. By omitting Person-1's estrangement from Mr. Comey from the affidavits, the case agent encouraged the magistrates to give improper weight to Person-1's views. But the omitted evidence makes clear that Person-1 had *no* insight into Mr. Comey's knowledge. Second, the government downplays (at 2, 22) the affidavits' references to Person-1 as "short appearances" and just "background."[3] But besides the case agent's disproven claim that Mr. Comey's career would have exposed him to violent connotations of "86," Person-1's statements provided the only other support for the magistrates' necessary inferences as to Mr. Comey's awareness, and Person-1 is the *only* witness described in the affidavits beyond Mr. and Ms. Comey.

[3] The government's multiple interviews of Person-1—including the case agent's April 2026 visit to Person-1's home—belie the government's sudden downplaying of Person-1's importance.

That the warrant affidavits falsely implied that Mr. Kelley and Ms. Comey obstructed the investigation by "hid[ing] metadata," Dkt. 40-1 at 35, and lying to investigators confirms that the affidavits' defects, taken together, were material. These baseless suggestions of foul play contributed to the affidavits' narrative that Mr. Comey had committed a crime, and that his associates were helping him to cover it up.

The government's conjecture (at 24) that the case agent would not have altered the scope of the Apple warrant request had Mr. Kelley provided the original photograph is irrelevant. A misrepresentation is material based on its effect on "the magistrate's finding of probable cause," *Lull*, 824 F.3d at 120—not based on its supposed effect on the government's requested scope of the warrant. Similarly, the government's claim (at 25) that it is immaterial whether Ms. Comey merely omitted mention of her earlier Google search or lied is incorrect. The Google affidavit clearly portrays Ms. Comey to have obscured the timing of her searches to investigators, *see* Mot. 21-22, 24—an inaccuracy that, if true, would have contributed to the affidavit's narrative that Ms. Comey was helping to cover up a crime.

In sum, by including the omitted evidence showing that "86" was not used in organized crime to connote violence and that Person-1 was unreliable, and by excising the misrepresentations about Mr. Kelley and Ms. Comey, the corrected warrant affidavits simply establish that Mr. Comey uploaded the Instagram post and did not understand it to reference violence. That conduct is not a crime, and the corrected affidavits fall far short of establishing probable cause.

## **CONCLUSION**

For the foregoing reasons, Mr. Comey is entitled to a *Franks* hearing, and the evidence derived from the Apple and Google warrants should be suppressed.

Dated: September 1, 2026

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/ Joseph Zeszotarski*
Joseph Zeszotarski
(N.C. Bar No. 21310)
Gammon & Zeszotarski, PLLC
P.O. Box 1127
Raleigh, NC 27602
Telephone: 919-521-5878
jzeszotarski@ghz-law.com

*Local Rule 57.1 Counsel for Defendant*

Patrick J. Fitzgerald*
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell*
(D.C. Bar No. 1631429)
Alexander J. Kasner*
(Cal. Bar No. 310637)
Elias S. Kim*
(D.C. Bar No. 1673678)
Claire Groden*
(D.C. Bar No. 1738682)
Dev P. Ranjan*
(D.C. Bar No. 90019329)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
emcdowell@cooley.com
akasner@cooley.com
ekim@cooley.com
cgroden@cooley.com
dranjan@cooley.com

Rebekah Donaleski*
(N.Y. Bar No. 4986246)
Mikhaila R. Fogel*

(Mass. Bar No. 713095)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
rdonaleski@cooley.com
mfogel@cooley.com

Michael R. Dreeben*
(D.C. Bar No. 370576)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

**Special Appearance pursuant to Local Criminal Rule 57.1(e)*

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of September 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell
*Counsel for Defendant James B. Comey, Jr.*