IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 4:26-CR-00016-FL-RN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JAMES B. COMEY JR.'S REPLY IN SUPPORT OF MOTION FOR DISCLOSURE OF GRAND JURY PROCEEDINGS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. The Government's Misstatements Of Law And Pattern Of Misconduct Have Vitiated The Presumption Of Regularity ........ 1

A. The Government Repeatedly Confuses Essential Elements Of The Charged Offenses, Raising Doubts About The Instructions Given To The Grand Jury ........ 2

B. The Government's Vindictive And Selective Prosecution Of Mr. Comey Justifies Disclosure Of Grand Jury Materials ........ 5

C. The Cumulative Impact Of Repeated Misrepresentations Of Material Facts Before The Grand Jury May Warrant Dismissal ........ 8

II. The Balance Of Interests Strongly Favors Mr. Comey ........ 9

CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988)....................1, 5

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) ....................3

*Counterman v. Colorado*,
600 U.S. 66 (2023)....................3, 4

*Fed. Educ. Ass'n v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025)....................8

*United States v. Breslin*,
916 F. Supp. 438 (E.D. Pa. 1996) .................... *passim*

*United States v. Butler*,
772 F. Supp. 3d 668 (W.D. Va. 2025) ....................4

*United States v. Comey*,
No. 25-272 (E.D. Va. Nov. 21, 2025)....................7

*United States v. Comey*,
809 F. Supp. 3d 396 (E.D. Va. 2025) ....................6

*United States v. Levy Armstrong*,
No. 26-cr-25 (D. Minn. Aug. 18, 2026)....................7

*United States v. Loc Tien Nguyen*,
314 F. Supp. 2d 612 (E.D. Va. 2004) ....................1, 6

*United States v. Ocon*,
No. 26-cr-39 (D. Wyo. May 15, 2026) ....................7

*United States v. Oregon*,
828 F. Supp. 3d 1092 (D. Or. 2026) ....................8

*United States v. Patillo*,
431 F.2d 293 (4th Cir. 1970) ....................4

*United States v. Peralta*,
763 F. Supp. 14 (S.D.N.Y. 1991)....................2, 3, 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**


*United States v. Rabbitt*,
No. 25-cr-693 (N.D. Ill. May 21, 2026)........................................................................7

*United States v. Rice*,
90 F. App'x 921 (6th Cir. 2004) ...........................................................................5, 8, 9

*United States v. Samango*,
607 F.2d 877 (9th Cir. 1979) ..................................................................................8, 9

*United States v. Stevens*,
771 F. Supp. 2d 556 (D. Md. 2011) .....................................................................2, 3, 4

*United States v. Williams*,
504 U.S. 36 (1992)...................................................................................................5, 8

**Statutes**

18 U.S.C.
§ 871(a) ................................................................................................................3, 4
§ 875(c) ....................................................................................................................4

**Other Authorities**

Fed. R. Crim. P. 6(e)(3)(E)(ii) ..................................................................................1, 10

U.S. Dep't of Justice, Justice Manual § 9-11.233...............................................................9

## INTRODUCTION

The government's filings reflect deep confusion about the true-threat and incitement standards and the *mens rea* requirements of each charged offense. These misconceptions alone raise serious risk that the government misinstructed the grand jury on the law, which would warrant dismissal of the indictment. Beyond that, the government's effort to downplay the cumulative effect of its constitutional errors in the investigation and prosecution of this case fails; that series of violations raises a concrete basis to believe that misconduct infected the grand jury proceedings.

These circumstances outweigh the traditional interests in grand jury secrecy. Those interests are highly attenuated in this case in any event, where the likely sole witness is a federal agent, a critical element of the requested disclosure is the prosecutor's legal instructions, senior government officials have publicly discussed grand jury proceedings, discovery has occurred, and the Court could order limited disclosure under a protective order or *in camera* review.

## ARGUMENT

### I. THE GOVERNMENT'S MISSTATEMENTS OF LAW AND PATTERN OF MISCONDUCT HAVE VITIATED THE PRESUMPTION OF REGULARITY

Through his pre-trial motions, Mr. Comey has established that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment," thus overcoming the strong presumption of regularity afforded to grand jury proceedings. *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004); *see also* Fed. R. Crim. P. 6(e)(3)(E)(ii). Dismissal is appropriate where prosecutorial error or misconduct "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotations omitted).

### A. The Government Repeatedly Confuses Essential Elements Of The Charged Offenses, Raising Doubts About The Instructions Given To The Grand Jury

The government has offered this Court shifting theories on essential elements of the charged offenses and argues that it may convict Mr. Comey based on any of them. Opp. 19–20. But the government does not and cannot argue that misstating the law to the grand jury would not be grounds for dismissal. "[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction." *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) (quoting *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991)) (citations omitted). Nor can the government argue that it may prosecute a crime for which a grand jury did not find probable cause. *United States v. Breslin*, 916 F. Supp. 438, 446 (E.D. Pa. 1996). Yet the government's changing theories of Mr. Comey's guilt support the inference that it misinstructed the grand jury on the true-threat and incitement standards and the requisite intent for both charged offenses.

First, the record contradicts the government's assertion that the conflation between true threats and incitement came only from "[u]naffiliated individuals' contemporaneous public characterizations of Comey's Instagram post." Opp. 21. In warrant affidavits submitted to this Court in March and May of this year, the case agent attested that "the [Instagram] post was reported to the [Secret Service] as a possible call for violence." Dkt. 40.1 at 30; Dkt. 40.2 at 20. She also repeatedly stated that Person-1 perceived the post as a "call for violence" and communicated that perception to Patrice Comey. Dkt. 40.1 at 36; Dkt. 40.2 at 25–26. In a press release announcing the indictment, the Department of Justice quoted FBI Director Patel stating, "James Comey disgracefully *encouraged* a threat on President Trump's life and posted it on Instagram for the world to see." Mot. at 5.

Moreover, in each of its responses to Mr. Comey's pre-trial motions, the government compares Mr. Comey to a fictional radio host who calls for violence, characterizes his Instagram post as a "coded message" calling for violence against the President, and quotes Person-1 telling Ms. Comey the post was a "call for violence." *See, e.g.,* Opp. 4–8; Dkt. 53 at 2, 4; Dkt. 55 at 3–6, 8–9; Dkt. 54 at 4–7, 9. Three of the government's responses note that Ms. Comey "responded [to Person-1] denying that the post had been a call to violence." Opp. at 8; Dkt. 54 at 9; Dkt. 55 at 9.

True threats require a "serious expression" by the speaker of *his own* intent to "commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). In contrast, incitement involves speech directed at producing "imminent lawless action" by *others*. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam). The government has consistently characterized Mr. Comey's post as incitement by directly and indirectly referring to it as a "call for violence" rather than an expression of *his own* intent to commit violence. This supports a strong inference that the "prosecutor's legal instruction to the grand jury seriously misstate[d]" the applicable law to a degree that would "cast[] 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction." *Stevens*, 771 F. Supp. 2d at 567 (citing *Peralta*, 763 F. Supp. at 21) (citations omitted).

Second, the government's filings confuse the intent requirement for each charged offense. In its opposition, the government for the first time advances a theory that it "need only prove 'that [Mr. Comey] consciously disregarded a substantial risk that his communications would be viewed as threatening violence.'" Opp. 20 (citing *Counterman*, 600 U.S. at 69). It is true that recklessness is the constitutional minimum *mens rea* for a true-threats conviction under *Counterman*. But that First Amendment standard does not displace a statute that requires a higher *mens rea* in defining a threats offense. Here, 18 U.S.C. § 871(a) requires that the threat be made "knowingly and

willfully"—a standard that is "more specific under long-established Fourth Circuit precedent" than recklessness under *Counterman*. *See United States v. Butler*, 772 F. Supp. 3d 668, 685 (W.D. Va. 2025) (citing *Counterman*, 600 U.S. at 69; *United States v. Patillo*, 431 F.2d 293, 297–98 (4th Cir. 1970)). The government's substitution of the *Counterman* standard for the statutory test under Section 871(a) implies that it may have misinstructed the grand jury about intent for Count One. If the government did erroneously instruct the grand jury on the *mens rea* requirement for Count One, that would be the type of misstatement that has served as grounds for dismissal. *See Stevens*, 771 F. Supp. 2d at 566–67; *see also Peralta*, 763 F. Supp. at 19 (dismissing indictment when grand jurors were misinstructed on "the elements of knowledge and intent").

While recklessness suffices for Count Two, alleging a violation of Section 875(c), "the offense is charged by the grand jury, not the prosecutor, based on probable cause grounded in evidence, not the thoughts and theories of the U.S. Attorney's Office." *Breslin*, 916 F. Supp. at 446. That only the higher "knowingly and willfully" standard appears in the indictment raises the specter that the government now seeks to prove guilt on a theory never presented to the grand jury.

Without disclosure of the grand jury materials, it would be impossible to determine how the government characterized its legal theory to the grand jury. And particularized factual grounds support the inference that the grand jury may have been improperly instructed about true threats and *mens rea*. The grand jury materials are thus essential to determining on what legal theory and level of intent the grand jury found probable cause to charge Mr. Comey with either Count One or Count Two and whether probable cause was found based on erroneous instructions. The Court should therefore allow inquiry into whether the government misstated essential elements of the offenses. Such misstatements would cast "grave doubt" on the decision to indict. At minimum, review of the legal instructions and the colloquy with grand jurors is necessary.

### B. The Government's Vindictive And Selective Prosecution Of Mr. Comey Justifies Disclosure Of Grand Jury Materials

Beyond the specific reasons to question the accuracy of the government's legal instructions to the grand jury, the government proposes a categorical rule that is contrary to law: vindictive and selective prosecutions "can never justify disclosure of grand jury materials." Opp. 14. Although prosecutorial misconduct warranting dismissal can involve violation of a specific rule, courts have also dismissed indictments based on the "cumulative effect of . . . many instances of misconduct." *Breslin*, 916 F. Supp. at 446; *see also United States v. Rice*, 90 F. App'x 921, 926 (6th Cir. 2004) (indictments may be dismissed if "misconduct is widespread or extraordinarily serious") (citation modified); *United States v. Williams*, 504 U.S. 36, 46 (1992) (courts have authority to "dismiss an indictment because of misconduct before the grand jury"). Courts may also presume prejudice to the Defendant—thus "substantial influence"—if misconduct affects "structural protections of the grand jury." *See Bank of Nova Scotia*, 487 U.S. at 257.

The undisputed record shows that the Secret Service conducted warrantless electronic surveillance of Mr. Comey's cellphone at the request of a high-level DOJ official, despite an agent's contemporaneous objection that doing so was "legally questionable," Dkt. 43 ¶¶ 5–7; the Secret Service changed its policy to treat "8647" as a threat keyword within hours of the President publicly calling Mr. Comey's post "a call for assassination," only to reverse the policy by day's end, *id.* ¶¶ 36–37; the investigation was opened because an AUSA was "ordered to" do so, *id.* ¶ 15; the investigation repeatedly failed over eight months to substantiate the government's core factual theory, *id.* ¶¶ 22–32; two search warrant affidavits contained misleading statements and omissions uncorrected between the pre- and post-indictment applications, Mot. 38 at 14–17; the government seized and reviewed privileged attorney-client communications without adequate filter protections, despite recent judicial findings criticizing its prior handling of that privilege,

*United States v. Comey*, 809 F. Supp. 3d 396, 406 (E.D. Va. 2025); Dkt. 43 ¶ 40; and the indictment was presented by a prosecutor who became an AUSA two days beforehand and who has since departed the case, Dkt. 43 ¶ 42. These are not "conclusory or speculative allegations." *Loc Tien Nguyen*, 314 F. Supp. 2d at 616. They are documented facts in the government's own discovery.

These irregularities occurred against the backdrop of a decade-long campaign of Presidential animus directed at Mr. Comey. *See* Dkt. 36.1, Ex. A (compiling statements). President Trump personally sought readouts of Mr. Comey's Secret Service interview for use in a press conference. Dkt. 43 ¶ 8. FBI Director Patel publicly stated days after a district court dismissed the EDVA indictment that the FBI and DOJ were "not done" and "ha[d] numerous options to proceed" against Mr. Comey. Dkt. 36 at 14. And Attorney General Blanche publicly signaled that he intends to be "more efficient[]" than his predecessor in pursuing the President's targets. *Id*. at 15. The case was presented to the grand jury weeks later, eleven months after the seashell post.

The selective nature of this prosecution further underscores the irregularity. Prior to Mr. Comey's post, more than 209,000 products featuring the logos "8645," "8646," or "8647" were authorized for sale on Amazon. Dkt. 43 ¶ 38. Amazon located zero federal law enforcement inquiries, including grand jury subpoenas, relating to the purchase or sale of any such products before May 15, 2025. *Id.* ¶ 39. That Mr. Comey alone faces prosecution for communicating a phrase used by hundreds of thousands of others is itself a particularized fact supporting the inference that improper motives infected the grand jury process.

Accepting the government's position that such irregularities could *never*—individually or cumulatively—give rise to an inference of misconduct before the grand jury would render the structural protections of the grand jury a nullity in the face of vindictive and selective prosecution.

Next, the government is incorrect that Mr. Comey seeks disclosure "to support his arguments that the original, separate decision to indict him . . . was vindictive and selective." Opp. 15. Rather, the government's unconstitutional animus has led to particularized instances of prosecutorial misconduct that give rise to the inference that neither the animus nor the misconduct stopped at the grand jury door. The EDVA case is illustrative. Contrary to the government's argument, Mr. Comey does not contend that misconduct in one grand jury proceeding proves misconduct in another. Instead, Judge Fitzpatrick's decision demonstrates how a vindictive campaign—involving mounting Presidential pressure, the departure of experienced prosecutors, DOJ leadership involvement, and repeated failures to safeguard Mr. Comey's rights—led to irregularities before the grand jury that could warrant dismissal.[1]

The government attempts to support its categorical rule by arguing that Mr. Comey "cites no case in which a successful vindictive or selective prosecution argument . . . formed the basis to disclose" grand jury materials. Opp. 15. But that argument fails to address the growing body of case law finding that this DOJ has forfeited the presumption of regularity in its dealings with grand juries. In recent months, multiple federal courts have dismissed indictments or ordered disclosure of grand jury materials based on prosecutorial misconduct. *See* Tr., *United States v. Rabbitt*, No. 25-cr-693 (N.D. Ill. May 21, 2026), Dkt. 187 at 23 (dismissing all charges with prejudice after *in camera* review revealed misconduct, stating "trust has been broken"); Order, *United States v. Ocon*, No. 26-cr-39 (D. Wyo. May 15, 2026), Dkt. 49 (three judges dismissed nine indictments for improper comments by U.S. Attorney); Order, *United States v. Levy Armstrong*, No. 26-cr-25 (D. Minn. Aug. 18, 2026), Dkt. 631 (ordering *in camera* review of grand jury materials). Courts

[1] Mr. Comey filed a motion to dismiss based on misconduct before the grand jury, *see* Am. Mot. to Dismiss, *United States v. Comey*, No. 25-272 (E.D. Va. Nov. 21, 2025), Dkt. 212, but the case was dismissed before that Court could rule on the motion.

outside the criminal context have reached similar conclusions. *See Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025) ("In just six months, the President of the United States may have forfeited the right to such a presumption."); *United States v. Oregon*, 828 F. Supp. 3d 1092, 1107 (D. Or. 2026) (same). The record here is at least as substantial as those in the cases cited above, and contains particularized facts sufficient to rebut the presumption of regularity.

### C. The Cumulative Impact Of Repeated Misrepresentations Of Material Facts Before The Grand Jury May Warrant Dismissal

The government erroneously argues that factual misrepresentations in the warrant applications are irrelevant to the question of disclosure because the grand jury presented a facially valid indictment. Opp. 21–24. To be sure, a facially valid indictment is not subject to dismissal simply because "there was inadequate or incompetent evidence before the grand jury." *Williams*, 504 U.S. at 54. But the "cumulative effect of . . . many instances of misconduct can be fairly said to have 'substantially influenced the grand jury's decision to indict,'" and thus warrant dismissal even where individual instances alone would be insufficient. *Breslin*, 916 F. Supp. at 446 (quoting *United States v. Samango*, 607 F.2d 877, 884 (9th Cir. 1979)); *see also Rice*, 90 F. App'x at 926.

Here, the record of misrepresentations is both "widespread [and] extraordinarily serious." *Rice*, 90 F. App'x at 926. The government's warrant affidavits advanced the theory that Mr. Comey must have known "86" could mean "kill" based on his experience prosecuting organized crime. But the government's own investigation repeatedly failed to substantiate that theory. Dkt. 43 ¶¶ 22–29, 33. These substantial and repeated failures did not appear in either warrant affidavit. That those failures were never presented to the Magistrate Judges before or after the indictment supports the inference that those failures were also withheld from the grand jury.

While the government need not present all exculpatory evidence to the grand jury, it may not mislead the grand jury through an improperly selective presentation or use a summary witness

in a way that discourages independent evaluation of the evidence. *Cf. Rice*, 90 F. App'x at 921; Justice Manual § 9-11.233 (requiring prosecutors personally aware of "substantial evidence that directly negates the guilt" of a subject to disclose it before seeking an indictment). Moreover, the government ignores Mr. Comey's showing that the grand jury may not have been merely presented with insufficient evidence, but that it may have been affirmatively misled. Both warrant affidavits averred that Person-1 "immediately perceived" Mr. Comey's post as a call for violence. But in the recorded interview, Person-1's "first initial thought" was the benign restaurant meaning. Dkt. 43 ¶ 13. Person-1's perception changed after listening to Rudolph Giuliani's online show, where Mr. Giuliani made claims about organized crime tapes that the FBI's own investigation proved false. *Id.* ¶¶ 14, 17–18. Neither affidavit disclosed Person-1's expressed desire that "Jim goes to jail," their estrangement from Mr. Comey, or their acknowledged need for rehabilitation. *Id.* ¶¶ 12, 21. Rather than excusable "inadequate or incompetent evidence," Opp. 18, 20, the record here supports the inference that "[t]he cumulative effect of the above errors and indiscretions, none of which alone might have been enough to tip the scales, operated to [Mr. Comey's] prejudice by producing a biased grand jury." *Samango*, 607 F.2d at 884.

## II. THE BALANCE OF INTERESTS STRONGLY FAVORS MR. COMEY

The government identifies three primary interests underlying grand jury secrecy: protecting witnesses from retaliation, encouraging candid testimony, and safeguarding ongoing investigations. Opp. 27. None is meaningfully implicated here. First, the grand jury presentation likely involved a single witness, the case agent, whose identity is already known and whose testimony would likely be disclosed to the defense if she were to testify at trial. Second, the government itself has disclosed details of grand jury activities involving Mr. Comey: FBI Director Patel made public statements about what this grand jury was told, Mot. 38 at 5–6, and both he and Attorney General Blanche have discussed this indictment and a separate grand jury investigation

of Mr. Comey on television, *see* Dkt. 36 at 16–17. Third, Mr. Comey has already received extensive discovery under a protective order. Fourth, that protective order already provides adequate safeguards for any materials disclosed to protect the integrity of these proceedings.

By contrast, Mr. Comey's interests can only be served by review of the grand jury proceedings. That is particularly true for potentially erroneous legal instructions that may have gravely affected the grand jury proceedings. And the Court can adopt procedures to further strike the appropriate balance. The Court may choose to limit disclosure to transcripts and audio recordings of the legal instructions and colloquy; the government can assert no valid secrecy interest in whether it properly instructed the grand jury on the law. Alternatively, the Court may conduct *in camera* review. Any disclosures could be subject to the existing protective order. The government is correct that courts do not lightly involve themselves with grand jury proceedings. But "it is necessary for the trial judge, when convinced of a grave interference with the independent functioning of the grand jury, to exercise its supervisory role." *Breslin*, 916 F. Supp. at 446–47. That standard is met here.

## **CONCLUSION**

For the foregoing reasons, the Court should direct the government to disclose transcripts and audio recordings of all proceedings before the grand jury in this case, under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). In the alternative, the Court should order disclosure of the transcripts and audio recordings of the legal instructions and colloquy with grand jurors. In the further alternative, the Court should review the grand jury materials *in camera* to determine whether disclosure is warranted.

Dated: September 1, 2026

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/ Joseph Zeszotarski*
Joseph Zeszotarski
(N.C. Bar No. 21310)
Gammon & Zeszotarski, PLLC
P.O. Box 1127
Raleigh, NC 27602
Telephone: 919-521-5878
jzeszotarski@ghz-law.com

*Local Rule 57.1 Counsel for Defendant*

Patrick J. Fitzgerald*
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell*
(D.C. Bar No. 1631429)
Alexander J. Kasner*
(Cal. Bar No. 310637)
Elias S. Kim*
(D.C. Bar No. 1673678)
Claire Groden*
(D.C. Bar No. 1738682)
Dev P. Ranjan*
(D.C. Bar No. 90019329)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
emcdowell@cooley.com
akasner@cooley.com
ekim@cooley.com
cgroden@cooley.com
dranjan@cooley.com

Rebekah Donaleski*
(N.Y. Bar No. 4986246)
Mikhaila R. Fogel*

(Mass. Bar No. 713095)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
rdonaleski@cooley.com
mfogel@cooley.com

Michael R. Dreeben*
(D.C. Bar No. 370576)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

**Special Appearance pursuant to Local Criminal Rule 57.1(e)*

*Counsel for Defendant James B. Comey, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of September 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell
*Counsel for Defendant James B. Comey, Jr.*